No. 22-1733

# In the United States Court of Appeals for the Third Circuit

───────────────

ZACHARY GREENBERG,
*Plaintiff-Appellee,*

*v.*

JERRY M. LEHOCKY, in his official capacity as Board Chair of the
Disciplinary Board of the Supreme Court of Pennsylvania, et al.,
*Defendants-Appellants.*

───────────────

*On Appeal from the United States District Court for the
Eastern District of Pennsylvania, No. 2:20-cv-03822*

───────────────

**BRIEF OF APPELLANTS**

───────────────

LISA S. BLATT
  *Counsel of Record*
AMY MASON SAHARIA
AARON Z. ROPER
PETER S. JORGENSEN
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue SW*
  *Washington, DC 20024*
  *(202) 434-5000*
  *lblatt@wc.com*

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION ........................................................4

STATEMENT OF THE ISSUES ............................................................4

STATEMENT OF RELATED CASES ...................................................4

STATEMENT OF THE CASE ................................................................5

     A.    Pennsylvania's Original Rule 8.4(g) ........................................5

     B.    Pennsylvania's Current Rule 8.4(g) ......................................10

STANDARD OF REVIEW ...................................................................14

SUMMARY OF ARGUMENT ..............................................................14

ARGUMENT ........................................................................................17

I.    Greenberg Lacks Standing .........................................................17

     A.    Rule 8.4(g) Does Not Arguably Cover Greenberg's
            Proposed Presentations and No Credible Threat of
            Prosecution Exists ..................................................................18

     B.    The District Court's Justiciability Analysis Is Flawed ...............23

II.    Rule 8.4(g) Complies with the First Amendment...................26

     A.    The First Amendment Does Not Bar Rules that
            Reasonably Regulate Attorney Speech.........................................26

           1.    *The legal profession is not subject to ordinary First
                 Amendment scrutiny* ........................................................26

i

Page

      2.    *History vindicates States' broad authority to regulate the legal profession* ..................................28

      3.    *The district court erred in analyzing Rule 8.4(g) like a school antiharassment code* ...............................34

  B.    Rule 8.4(g) Reasonably Regulates Attorney Conduct..................37

      1.    *Rule 8.4(g) constitutionally applies to court proceedings, client representations, law-office operations, and judicial advisory bodies* ...........................37

      2.    *Rule 8.4(g) constitutionally applies to CLEs and bench-bar conferences* ......................................40

  C.    Rule 8.4(g) Survives Any Standard of Scrutiny for Attorney Speech Restrictions...........................................49

  D.    Rule 8.4(g) Is Not Facially Invalid..................................56

III.  Rule 8.4(g) Is Not Facially Vague ...........................................61

CONCLUSION....................................................................70

RULES ADDENDUM ........................................................ Add.1

# TABLE OF AUTHORITIES

Page

Cases:

*Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018) ...........................................24

*Adams Outdoor Advert. Ltd. P'ship v. Pa. DOT*,
  930 F.3d 199 (3d Cir. 2019) ...................................................................61

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) ........................................................................18, 20

*Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985)................................58

*Cerame v. Bowler*, 2022 WL 3716422 (D. Conn. Aug. 29, 2022) ..................21

*Citizens United v. FEC*, 558 U.S. 310 (2010)...............................................18

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)................................18, 20

*D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)...............................6, 45

*DeJohn v. Temple Univ.*, 537 F.3d 301 (3d Cir. 2008)............................35, 36

*Del. Riverkeeper Network v. Sec'y of Pa. Dep't of Envt'l Prot.*,
  870 F.3d 171 (3d Cir. 2017) ...................................................................54

*Empower Texans, Inc. v. Nodolf*,
  306 F. Supp. 3d 961 (W.D. Tex. 2018) ....................................................24

*Ex parte Garland*, 71 U.S. 333 (1867) .......................................................45

*Ex parte Secombe*, 60 U.S. 9 (1857) ...........................................................64

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012)............................61

*Fieger v. Mich. Sup. Ct.*, 553 F.3d 955 (6th Cir. 2009) ...........................21, 22

*Fla. Bar v. Went for It, Inc.*, 515 U.S. 618 (1995) ..................................27, 49

*Free Speech Coal., Inc. v. Att'y Gen.*, 974 F.3d 408 (3d Cir. 2020)..............57

*Geness v. Cox*, 902 F.3d 344 (3d Cir. 2018) ................................................14

*Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991)..............................*passim*

*Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975) .....................................26, 49

*Gonzales v. Carhart*, 550 U.S. 124 (2007)..................................................64

*Gonzalez v. Comm'n on Jud. Performance*,
  657 P.2d 372 (Cal. 1983) ..................................................................59, 66

*Green v. Kinney*, 2 Del. 160 (Super. Ct. 1837) ............................................30

*Grievance Adm'r v. Fieger*, 719 N.W.2d 123 (Mich. 2006)..........................65

*Hale v. Comm. on Character & Fitness*,
  335 F.3d 678 (7th Cir. 2003).............................................................30, 46

*Harris v. Quinn*, 573 U.S. 616 (2014)........................................................28

Page

Cases—continued:

*Hill v. Colorado*, 530 U.S. 703 (2000)......................................................64, 67
*Holder v. Humanitarian L. Project*, 561 U.S. 1 (2010) .............20, 61, 62, 64
*Hollingsworth v. Perry*, 570 U.S. 693 (2013)........................................25
*Howell v. State Bar of Tex.*, 843 F.2d 205 (5th Cir. 1988)...........................69
*Hunter v. Troup*, 146 N.E. 321 (Ill. 1924)..........................................33
*In re Abrams*, 488 P.3d 1043 (Colo. 2021)........................................51, 53
*In re Anonymous,* 709 S.E.2d 633 (S.C. 2011)........................................65
*In re Baratki*, 902 N.W.2d 250 (Wis. 2017)..........................................51
*In re Barr*, 13 S.W.3d 525 (Tex. Review Trib. 1998) ...............................66
*In re Cohen*, 159 N.E. 495 (Mass. 1928)..............................................33
*In re Crum*, 75 N.W. 257 (N.D. 1898)..................................................33
*In re Dempsey*, 986 N.E.2d 816 (Ind. 2013) ......................................43, 51
*In re Epstein*, 87 N.E.3d 470 (Ind. 2017)............................................51
*In re Isaacson*, 860 N.W.2d 490 (Wis. 2015)..........................................51
*In re Kratz*, 851 N.W.2d 219 (Wis. 2014)..............................................51
*In re Kendall*, 712 F.3d 814 (3d Cir. 2013)..........................................27
*In re Law Ass'n of Phila.*, 167 A. 579 (Pa. 1933)...................................39
*In re Manheim*, 99 N.Y.S. 87 (App. Div. 1906) .......................................31
*In re Mills*, 1 Mich. 393 (1850) ......................................................30
*In re Robinson*, 92 P. 929 (Wash. 1907) ..............................................31
*In re Rogers*, 212 P. 1034 (N.M. 1923)................................................46
*In re Rothenberg*, 676 N.W.2d 283 (Minn. 2004)........................................42
*In re Rouss*, 116 N.E. 782 (N.Y. 1917) ................................................29
*In re Snyder*, 472 U.S. 634 (1985)................................26, 31, 39, 69
*In re Stevens*, 645 P.2d 99 (Cal. 1982) ..............................................66
*In re Unprofessional Conduct*, 597 N.W.2d 563 (Minn. 1999)....................50
*In re Williams*, 414 N.W.2d 394 (Minn. 1987)..........................................67
*Interactive Media Ent. & Gaming Ass'n v. Att'y Gen.*,
      580 F.3d 113 (3d Cir. 2009) ......................................................61
*Johnson v. State*, 44 So. 671 (Ala. 1907).............................................46
*Keller v. State Bar of Cal.*, 496 U.S. 1 (1990).......................................28
*Konigsberg v. State Bar of Cal.*, 366 U.S. 36 (1961)..................................30
*MacDraw, Inc. v. CIT Grp. Equip. Fin.*, 138 F.3d 33 (2d Cir. 1998) .........66

Page

Cases—continued:

*Matal v. Tam*, 137 S. Ct. 1744 (2017) ..............................................18

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ................................45

*McCauley v. Univ. of V.I.*, 618 F.3d 232 (3d Cir. 2010)...................35, 36

*McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021) ...........................28, 41, 45

*Mirabella v. Villard*, 853 F.3d 641 (3d Cir. 2017).........................27

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361 (2018) .......27

*Ness v. City of Bloomington*,
   2020 WL 4227156 (D. Minn. July 23, 2020).............................24

*Off. of Disciplinary Couns. v. Altman*, 228 A.3d 508 (Pa. 2020)................52

*Off. of Disciplinary Couns. v. Campbell*, 345 A.2d 616 (Pa. 1975)..............65

*Off. of Disciplinary Couns. v. McMahon*,
   No. 159 DB 2019 (Pa. Disc. Bd. Oct. 2, 2019) .....................43, 52

*Off. of Disciplinary Couns. v. Swift*,
   No. 158 DB 2005 (Pa. Disc. Bd. Nov. 30, 2007) ....................52, 66

*Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978)...........................27, 28

*People ex rel. Karlin v. Culkin*, 162 N.E. 487 (N.Y. 1928) .....................39

*People v. Sharpe*, 781 P.2d 659 (Colo. 1989) .................................67

*Principe v. Assay Partners*, 586 N.Y.S.2d 182 (Sup. Ct. 1992).............50, 67

*Redman v. State*, 28 Ind. 205 (1867)..........................................31

*Sample v. Frost*, 10 Iowa 266 (1859).........................................30

*Sanborn v. Kimball*, 64 Me. 140 (1875).......................................45

*Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001) .....35, 50, 55

*Simko v. U.S. Steel Corp.*, 992 F.3d 198 (3d Cir. 2021) .................38

*Smith v. State*, 9 Tenn. 228 (1829) .........................................30

*Stretton v. Disciplinary Bd.*, 944 F.2d 137 (3d Cir. 1991) .................60

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)  ........18, 19, 20, 24

*Turco v. City of Englewood*, 935 F.3d 155 (3d Cir. 2019)....................57

*United States v. Alvarez*, 567 U.S. 709 (2012)..............................47

*United States v. Amirnazmi*, 645 F.3d 564 (3d Cir. 2011) ...................61

*United States v. Hansen*, 40 F.4th 1049 (9th Cir. 2022) ....................56

*United States v. Scarfo*, 263 F.3d 80 (3d Cir. 2001).......................27

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020)....................56

*United States v. Swenson*, 894 F.3d 677 (5th Cir. 2018) .....................52

Page

Cases—continued:

*United States v. Wunsch*, 84 F.3d 1110 (9th Cir. 1996)...............................33
*United States v. Yung*, 37 F.4th 70 (3d Cir. 2022) ..................................54, 55
*Verner v. Colorado*, 716 F.2d 1352 (10th Cir. 1983).....................................41
*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982) ..............................................................61, 62, 67
*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) ...........................................................................62
*Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015) ...................................52, 53
*Wilson v. State Bar of Ga.*, 132 F.3d 1422 (11th Cir. 1998) .......20, 22, 23, 61
*Wis.'s Env't Decade, Inc. v. State Bar of Wis.*,
    747 F.2d 407 (7th Cir. 1984)..............................................................23

Constitution, Statutes, and Rules:

U.S. Constitution
    art. III ...............................................................................*passim*
    amend. I ............................................................................*passim*
    amend. XIV ........................................................................*passim*

Pennsylvania Constitution
    art. V, § 10...........................................................................................5

Federal Statutes:

28 U.S.C.
    § 1291 .................................................................................................4
    § 1331 .................................................................................................4
    § 1343 .................................................................................................4

State Statute:

    Miss. Code ch. 26, art. 8 (1837)......................................................30

Other Statutes:

    2 Geo. 2 c. 23 ...................................................................................29
    4 Hen. 4 c. 18 ...................................................................................29
    Code Theod. 1.29.2, at 32 (Clyde Pharr trans., 2001)..................29

Page

Constitution, Statutes, and Rules—continued:

Federal Rules:

    U.S. Supreme Court Rules

        5.4 ........................................................................................32

        8.1 ........................................................................................46

    3d Cir.

        R. 28.1 ..................................................................................34

        R.A.D.E. 2.1 .........................................................36, 46, 60

    Federal Rule of Civil Procedure 11 ...............................34, 65, 67

    Code of Conduct for U.S. Judges

        Canon 2A ..............................................................................65

        Canon 3 ..................................................................................9

State Rules:

    Ala. Code of Ethics § 9 (1887),

        *reprinted in* 2 Ala. Law. 259 (1941) .............................34, 46

    Cal. S. Ct. R. I, 4 Cal. xv (1854)...........................................30

    Regulae Generales 1, 4 Conn. 119 (Super. Ct. 1809) .............30

    Fla. S. Ct. R. 1, 1 Fla. VII (1846) .......................................30

    Ga. Super. Ct. R. VIII, 2 Ga. 467 (1847) ...........................30

    Ill. S. Ct. R. 52, 22 Ill. 7 (1860) ..........................................30

    Ind. S. Ct. R. XXIV, 4 Ind. viii (1852) ...............................30

    La. S. Ct. R., 15 La. iii (1840) ..............................................30

    Regulae Generales, 1 Me. 411 (1822) ...................................30

    Mo. S. Ct. R. XXV, 4 Mo. 10 (1835) ...................................30

    N.H. R. 37, 38 N.H. 589 (1859)............................................30

    Pa. R.C.L.E.

        105 ..........................................................................6, 40, 41, 57

        107 ........................................................................................41

    Pa. C.L.E. Reg. 3 .................................................................42

Page

Constitution, Statutes, and Rules—continued:

State Rules—continued:

Pa. R.D.E.

203 ................................................................47
204 ..................................................................5
205 ..................................................................5
208 ..................................................................6

Pa. R.P.C.

pmbl. .............................................................11
1.1 .................................................................40
1.3 .................................................................35
1.16 ...............................................................10
2.1 .................................................................65
3.5 .................................................................65
8.4(b) .............................................................59
8.4(c) ........................................................47, 59
8.4(d) ...........................................63, 65, 66, 69
8.4(g) ......................................................*passim*

R.I. S. Ct. R. 1, 4 R.I. 547 (1857) ..........................30
Att'y Admission R. 1, 1 Aik. 406 (Vt. 1827) ............30

Model Rules:

ABA Model C.J.C.

2.3 ...................................................................8
3.1 .................................................................48

ABA Model R.C.L.E. pmbl. ...................................40

ABA Model R.P.C.

1.3 .................................................................36
8.4(d) ...........................................................7, 8
8.4(g) ..............................................................7

Page

Other Authorities:

123 Ann. Rep. ABA, No. 2 (1998) .................................................7

ABA Formal Op. 493 (July 15, 2020) ........................................7, 35

ABA, *Report of the 29th Annual Meeting* (1906) ..........................33

ABA, *Report of the 31st Annual Meeting* (1908).........................34

James M. Altman, *Considering the A.B.A.'s 1908 Canons of Ethics*,
  71 Fordham L. Rev. 2395 (2003) ..................................................33

Carol Rice Andrews, *The Lawyer's Oath*,
  22 Geo. J. Legal Ethics 3 (2009)...........................................31, 32

Carol Rice Andrews, *Standards of Conduct for Lawyers*,
  57 SMU L. Rev. 1385 (2004)........................................................32

Rebecca Aviel, *Rule 8.4(g) and the First Amendment*,
  31 Geo. J. Legal Ethics 31 (2018).........................................47, 53

Lauren Berg, *Buchalter Products Liability Chair Sued for Sex
  Harassment* (July 19, 2022), https://bit.ly/3yUx7fa ...............39

W. Raymond Blackard, *Requirements for Admission to the Bar in
  Revolutionary America*, 15 Tenn. L. Rev. 116 (1938) .....................29, 30

3 William Blackstone, *Commentaries* .............................................29

Ellen Brotman & Amy Coco, *Pennsylvania Lawyers Behaving
  Badly: Is 8.4(g) a Solution?*, 50 Hofstra L. Rev. 521 (2022) ...........44, 52

Warren E. Burger, *The Special Skills of Advocacy*,
  42 Fordham L. Rev. 227 (1973)..................................................40

Margaret Fuller Corneille, *Bar Admissions*,
  52 S.C. L. Rev. 609 (2001) ......................................................30

Richard H. Fallon, Jr., *Sexual Harassment, Content Neutrality,
  and the First Amendment Dog that Didn't Bark*,
  1994 Sup. Ct. L. Rev. 1............................................................53

*Final Report of the Pennsylvania Supreme Court Committee on
  Racial and Gender Bias in the Justice System* (2001)...........................51

Stephen Gillers, *A Rule to Forbid Bias and Harassment in Law
  Practice*, 30 Geo. J. Legal Ethics 195 (2017)............................51

Judi Keller, *Enough Already … Go to Bench-Bar*, Law. J.,
  May 7, 1999................................................................................43

ix

Page

Other Authorities—continued:

Lorelei Laird, *California Approves Major Revision to Attorney Ethics Rules*, ABA J. (Oct. 2, 2018)............................................................33

NALP, *Billable Hours Requirements at Law Firms*, NALP Bull. (May 2006), https://bit.ly/3O5HOku .........................................................57

Pa. Bd. of Law Examiners, *Employment - Performance* (Aug. 2, 2022), https://bit.ly/3ceWuB8......................................................31

46 Pa. Bull. 7519 (Dec. 3, 2016)...............................................................8

49 Pa. Bull. 4941 (Aug. 31, 2019)............................................................8

Phila. Bar Ass'n, *2022 Bench-Bar & Annual Conference*, https://bit.ly/3BgQbqT ...........................................................................43

Deborah L. Rhode, *Moral Character as a Professional Credential*, 94 Yale L.J. 491 (1985).....................................................................29, 30

Andrew E. Taslitz & Sharon Styles-Anderson, *Still Officers of the Court*, 9 Geo. J. Legal Ethics 781 (1996) .............................................6

Third Circuit, *Sponsor's Motion and Oath of Admission*, https://bit.ly/3AOBH12 .........................................................................32

Unified Jud. Sys., *Committees, Boards & Advisory Groups*, https://bit.ly/3czI26t .............................................................................39

Robert N. Weiner, *"Nothing to See Here,"* 41 Harv. J.L. & Pub. Pol'y 125 (2018) ......................................................38

L. Paige Whitaker, *Continuing Legal Education*, Cong. Rsch. Serv. (Mar. 25, 2019) .............................................................40

## INTRODUCTION

Since before the Founding, States have regulated the legal profession in ways that significantly limit what attorneys may say and what viewpoints they may express. From longstanding character-and-fitness rules to the century-old requirement that lawyers avoid conduct "prejudicial to the administration of justice," such regulation has been prolific. Pennsylvania's Rule of Professional Conduct 8.4(g) falls in the heartland of those rules, barring Pennsylvania attorneys "in the practice of law" from "knowingly engag[ing] in conduct constituting harassment or discrimination" against individuals.

Thirty-nine other States, the District of Columbia, and three U.S. territories similarly restrict harassment and/or discrimination by lawyers. Judicial canons, including for this Court and forty-eight States, the District of Columbia, and three U.S. territories, bar such conduct by the judiciary. Until the decision below, no court had ever held one of these rules unconstitutional. Yet the court below facially invalidated Rule 8.4(g) in all applications.

The district court should never even have reached the merits. Plaintiff-appellee Zachary Greenberg asserts Article III standing based on his intent to give continuing legal education (CLE) presentations on topics like campaign

1

finance that he alleges listeners could find objectionable. But none of his plans comes remotely close to harassment or discrimination arguably covered by Rule 8.4(g). Further, he faces zero threat of prosecution. Pennsylvania's Chief Disciplinary Counsel has expressly confirmed that Greenberg cannot and will not be disciplined for his planned presentations.

Regardless, Rule 8.4(g) is facially constitutional. The long history of regulating lawyers' professional conduct reflects States' considerable First Amendment leeway to limit what lawyers can say and do as lawyers. Licensing authorities, acting as both sovereigns and regulators, have always insisted upon baseline levels of decorum and professionalism—thereby restricting attorneys' speech based on content and viewpoint. Those requirements include prohibitions on harassment and/or discrimination, which Pennsylvania and other States have reasonably determined harm public confidence in the legal system.

States' power to require licensed attorneys to attend mandatory professional programs like CLEs includes the power to impose standards of conduct at those events. It would be passing strange if States could compel lawyers to

attend CLEs on bias and prejudice, yet lack the authority to discipline a speaker who tells Jewish attendees he wishes Hitler had finished the job.

The district court thus erred in facially invalidating Rule 8.4(g). Greenberg's facial First Amendment claim should have failed out of the gate because Greenberg does not challenge Rule 8.4(g)'s application to over 99% of what attorneys do:  represent clients.  Nonetheless, the court invalidated the Rule in full, by applying this Court's precedents striking down university and school harassment codes.  But the courtroom is not a schoolroom, and CLEs are not college fraternity parties.  States can regulate attorney speech to ensure the integrity of the legal profession in ways that fundamentally differ from how schools can regulate student speech.

Nor is Rule 8.4(g) facially vague, such that no reasonably intelligent lawyer could figure out what conduct the Rule could possibly cover.  Lawyers undoubtedly understand that the Rule prohibits groping women at bench-bar conferences, relegating Muslim lawyers to the back of CLE presentations, or flinging racial slurs at opposing counsel.  Rule 8.4(g) is far more specific than general ethical rules that courts and States historically have used to discipline harassment and discrimination.  This Court should reverse.

3

## STATEMENT OF JURISDICTION

Greenberg invoked the district court's subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a).  As explained *infra* Part I, the court lacked jurisdiction because Greenberg lacks Article III standing.  The district court entered final judgment on March 24, 2022, and defendants timely noticed appeal on April 20, 2022.  JA126-29.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether Greenberg has standing to challenge Rule 8.4(g).  *See* JA56-78, 363-71; D. Ct. Dkt. 61, at 13-22.

2.      Whether Rule 8.4(g) facially violates the First Amendment.  *See* JA78-114, 329-46; D. Ct. Dkt. 71, at 11-18.

3.      Whether Rule 8.4(g) is facially vague in violation of the Fourteenth Amendment.  *See* JA114-23, 346-50; D. Ct. Dkt. 71, at 18-23.

## STATEMENT OF RELATED CASES

This case was previously before this Court as *Greenberg v. Haggerty*, No. 20-3602, involving an earlier version of Rule 8.4(g).  Defendants-appellants voluntarily dismissed that appeal, and are unaware of any other related cases.

4

## STATEMENT OF THE CASE

### A.    Pennsylvania's Original Rule 8.4(g)

1.    The Pennsylvania Supreme Court regulates the practice of law in Pennsylvania.  Pa. Const. art. V, § 10(c).  One key way that Court does so is by promulgating Pennsylvania's Rules of Professional Conduct.  The Pennsylvania Supreme Court's Disciplinary Board exercises day-to-day disciplinary responsibility.  Pa. R.D.E. 205(c).  The Board's Office of Disciplinary Counsel investigates complaints against Pennsylvania-licensed attorneys.  JA202.  The Office dismisses 87% of such complaints without requesting a formal response from the attorney.  *Id.*

Even when the Office requests a response, "multiple layers of review exist" before the Office refers a matter to the Board.  JA203.  Defendant-appellant Thomas Farrell, Chief Disciplinary Counsel, must give "express approval" for any referral.  JA276.  The Board then decides whether to impose discipline, JA204, which ranges from informal admonition to disbarment, Pa. R.D.E. 204(a).  The Pennsylvania Supreme Court conducts *de novo* review of all discipline when respondents request formal hearings, and may adjust the

proposed sanction.  JA204; *see* Pa. R.D.E. 208(d).  Parties raising federal con-

stitutional challenges can seek further review in the U.S. Supreme Court.  *D.C.*

*Ct. of Appeals v. Feldman*, 460 U.S. 462, 484 n.16 (1983).

Another way the Pennsylvania Supreme Court regulates the practice of

law is by promulgating rules governing CLEs.  Under those rules, all Penn-

sylvania lawyers must attend twelve hours of CLEs annually to maintain their

law license.  Pa. R.C.L.E. 105(a)(3).

2.    In the 1980s and 1990s, State investigations "consistently found

evidence of a wide range of discriminatory conduct by lawyers."  Andrew E.

Taslitz & Sharon Styles-Anderson, *Still Officers of the Court*, 9 Geo. J. Legal

Ethics 781, 781 (1996).  States thus began specifically adopting antiharassment

and antidiscrimination rules as part of their regulation of the legal profession,

although general conduct and decorum requirements stretch back centuries.

Some of those rules barred harassment and/or discrimination "in connection

with the practice of law" (Florida 1994) or "in connection with [a] lawyer's pro-

fessional activities" (Minnesota 1992; Washington 1993).  *Id.* at 836-39.

State adoption of antidiscrimination rules accelerated after 1998, when

the American Bar Association (ABA)—a private organization that formulates

6

model ethical codes—added an antidiscrimination comment to Model Rule 8.4(d), which makes conduct "prejudicial to the administration of justice" subject to discipline. 123 Ann. Rep. ABA, No. 2, at 46 (1998). The comment stated that such misconduct included "knowingly manifest[ing] by words or conduct, bias or prejudice based" on eight protected grounds, "in the course of representing a client." *Id.*

In 2016, the ABA adopted Model Rule 8.4(g), which prohibits "conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of" eleven grounds "in conduct related to the practice of law." Model R.P.C. 8.4(g). The ABA reasoned that harassment (especially sexual harassment) and discrimination occur in "practice-related settings" such as "bar association functions" or "law firm social events." ABA Formal Op. 493, at 4 (July 15, 2020). The ABA explained that such harassment and discrimination "undermine confidence in the legal profession and the legal system." Model R.P.C. 8.4 cmt. [3].

Today, thirty States, the District of Columbia, and three U.S. territories (American Samoa, the Northern Mariana Islands, and the U.S. Virgin Islands) have rules of professional conduct directly prohibiting attorney harassment

and/or discrimination. Ten more States follow the approach taken by the ABA in 1998—the comments to the States' Model Rule 8.4(d) analog make clear that conduct prejudicial to the administration of justice includes harassment and/or discrimination. In sum, *forty-four* U.S. jurisdictions subject attorneys to discipline for harassment and/or discrimination. Add.4-27 (collecting provisions).

3.      The ABA's 2016 amendment spurred Pennsylvania to action. 46 Pa. Bull. 7519 (Dec. 3, 2016). After three years of "deliberation, discussion, and extensive study," in 2019 the Board proposed Pennsylvania's original Rule 8.4(g), which the Pennsylvania Supreme Court adopted in June 2020 after notice and comment. 49 Pa. Bull. 4941 (Aug. 31, 2019); JA205.

Pennsylvania's Rule 8.4(g) brought the rules governing attorneys closer to those already governing the judiciary. Rule 2.3 of the ABA Model Code of Judicial Conduct—which Pennsylvania adopted in 2014—prohibits judges from "by words or conduct manifest[ing] bias or prejudice, or engag[ing] in harassment," based on "race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation." Model C.J.C. 2.3(B). That rule also instructs judges to require "lawyers in proceedings before the court" to do the same. *Id.* 2.3(C).

Today, forty-eight States, the District of Columbia, American Samoa, Guam, and the U.S. Virgin Islands (fifty-two jurisdictions in total) prohibit harassment and/or discrimination by their judges.  All but Michigan and Oregon direct judges to apply that same rule to lawyers under judges' control.  Add.30-105 (collecting provisions).

Likewise, under the Code of Conduct for U.S. Judges, federal judges "should not engage in behavior that is harassing, abusive, prejudiced, or biased."  Code of Conduct for U.S. Judges Canon 3.  Federal judges should also be "patient, dignified, respectful, and courteous" and apply the same rule to lawyers "subject to the judge[s'] control."  *Id.* Canon 3A(3).  By comment, "[t]he duty to be respectful includes the responsibility to avoid comment or behavior that could reasonably be interpreted as harassment, prejudice or bias."  *Id.* Canon 3A(3) cmt.

4.    In August 2020, Greenberg challenged Pennsylvania Rule 8.4(g) as facially unconstitutional under the First Amendment and facially vague under the Fourteenth Amendment.  JA1.  Greenberg sued the Board's members and Chief and Deputy Chief Disciplinary Counsel.  JA201-02.

On December 7, 2020, the day before the Rule was to take effect, the district court denied defendants' motion to dismiss and preliminarily enjoined the Rule.  JA44-45.  The court held that Greenberg had standing to challenge original Rule 8.4(g) and that the Rule violated the First Amendment.  Defendants appealed but withdrew the appeal to revise Rule 8.4(g).  *Greenberg v. Haggerty*, No. 20-3602 (3d Cir. dismissed Mar. 17, 2021).

### B.    Pennsylvania's Current Rule 8.4(g)

1.    In July 2021, the Pennsylvania Supreme Court revised Rule 8.4(g) as follows:

> It is professional misconduct for a lawyer to: …
>
> (g) in the practice of law, ~~by words or conduct,~~ knowingly ~~manifest bias or prejudice, or~~ engage in <u>conduct constituting</u> harassment or discrimination ~~as those terms are defined in applicable federal, state or local statutes or ordinances, including but not limited to bias, prejudice, harassment or discrimination~~ based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, or socioeconomic status.  This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16.  This paragraph does not preclude advice or advocacy consistent with these Rules.

JA205; *see* Add.1-2 (clean text of old and current Rules).

10

That revision also repealed the old Rule's comments (reproduced at Add.2) and inserted three new comments, which offer non-authoritative "guides to interpretation." Pa. R.P.C. pmbl. [21]. The comments define the "practice of law" to include:

> (1) "interacting with witnesses, coworkers, court personnel, lawyers, or others, while appearing in proceedings before a tribunal or in connection with the representation of a client";
>
> (2) "operating or managing a law firm or law practice"; and
>
> (3) "participation in judicial boards, conferences, or committees, continuing legal education seminars, bench bar conferences, and bar association activities where legal education credits are offered."

*Id.* 8.4 cmt. [3]. The definition excludes "speeches, communications, debates, presentations, or publications" outside these contexts. *Id.*

The Rule's comments also define "harassment" to require intentional targeting of a specific person: "conduct that is intended to intimidate, denigrate or show hostility or aversion toward a person on any of the bases set forth in this rule." *Id.* cmt. [4]. "Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other conduct of a sexual nature that is unwelcome." *Id.*

Finally, "discrimination" requires:

11

conduct that a lawyer knows manifests an intention: to treat a person as inferior based on one or more of the characteristics listed in paragraph (g); to disregard relevant considerations of individual characteristics or merit because of one or more of the listed characteristics; or to cause or attempt to cause interference with the fair administration of justice based on one or more of the listed characteristics.

*Id.* cmt. [5].

2.    In August 2021, Greenberg filed an amended complaint seeking to enjoin the current Rule "en toto" on the theory that the Rule facially violated the First Amendment and was facially vague under the Fourteenth Amendment. JA181. He asserted standing based on his intent to present CLEs about current caselaw or due-process and free-speech rights, because "some members of his audience" allegedly will consider his presentations "offensive, denigrating, hostile, and hateful." JA158.

The parties cross-moved for summary judgment. In support of defendants' motion, Thomas Farrell, Pennsylvania's Chief Disciplinary Counsel, submitted a declaration stating that Greenberg's desired presentations "do not violate Rule 8.4(g)." JA276-28. Hence, Pennsylvania "would not pursue discipline for" Greenberg's presentations. *Id.*

3.     In March 2022, the district court granted summary judgment to
Greenberg and permanently enjoined Rule 8.4(g).  The court first held that
Greenberg satisfied Article III standing because the risk that listeners might
complain about Greenberg's presentations to the Office of Disciplinary Coun-
sel would cause Greenberg to "self-censor."  JA59-60.  The court also deter-
mined that the case was not moot, JA78, although defendants had never raised
mootness.

On the merits, the court held that Rule 8.4(g) facially violates the First
Amendment.  JA114.  The court held that the Rule limits what lawyers can say
and thus regulates speech.  JA93.  The court then deemed Rule 8.4(g) view-
point discriminatory and per se invalid on the theory that the Rule prohibits
speech based on its offensiveness.  JA99-100.  The court also held that Rule
8.4(g) is content discriminatory for the same reason and applied strict scrutiny.
JA103.  The court found that Pennsylvania's interest—which the court framed
in part as a "global need to make lawyers better people"—is "unfocused" and
"difficult … to credit."  JA104-05.  The court deemed Rule 8.4(g) not narrowly
tailored because it applies to CLEs and bench-bar conferences.  JA107-09.
The court further held that Rule 8.4(g) is facially overbroad because the Rule

applies to CLEs, does not require actual disruption of justice, and reaches marital- and socioeconomic-status discrimination.  JA112-14.

Finally, the court held that Rule 8.4(g) is facially vague, JA123, reasoning that the definitions of harassment and discrimination in the Rule's comments are "made-up," JA119.

## STANDARD OF REVIEW

This Court reviews the grant of summary judgment *de novo*, taking the facts in the light most favorable to the non-moving party—here, defendants. *Geness v. Cox*, 902 F.3d 344, 354 (3d Cir. 2018).

## SUMMARY OF ARGUMENT

I.     This Court should dismiss the case for want of Article III standing.  Greenberg cannot claim that Rule 8.4(g) objectively chills his speech because he did not allege any intent to engage in conduct arguably proscribed by Rule 8.4(g).  He alleged only a desire to give CLEs on the purportedly "controversial" topics of due-process and free-speech rights and First Amendment caselaw.  That speech in no way arguably constitutes intentional harassment

or discrimination under Rule 8.4(g). Indeed, Pennsylvania's Chief Disciplinary Counsel has authoritatively interpreted Rule 8.4(g) to exclude Greenberg's remarks.

Greenberg also faces no credible threat of prosecution. Pennsylvania's Chief Disciplinary Counsel has expressly guaranteed that Greenberg would not face discipline. Tellingly, Greenberg points to no evidence that the many other jurisdictions with materially similar antiharassment and/or antidiscrimination rules have ever disciplined attorneys for remotely similar conduct.

Greenberg fears that offended audience members might misread Rule 8.4(g) and file complaints anyhow. But Article III requires a credible threat of prosecution, not a credible threat of frivolous complaints.

II.   In any event, Greenberg's First Amendment claim lacks merit.

Ordinary First Amendment rules against viewpoint and content discrimination do not apply when the government regulates the practice of law, as the Supreme Court, this Court, and centuries of history have confirmed. The district court's application of First Amendment doctrine applicable to private citizens and students would cast doubt on the many rules of professional conduct that burden speech.

Rule 8.4(g) is a constitutional regulation of the practice of law. Rule 8.4(g)'s applications to client representations, court proceedings, law-office operations, and judicial advisory bodies—which Greenberg does not challenge—comfortably fall within Pennsylvania's power to regulate its legal profession.

Greenberg challenges Rule 8.4(g)'s applications to CLEs and bench-bar conferences. But CLEs and bench-bar conferences are also part of the practice of law. Pennsylvania's mandatory CLEs teach attorneys how to practice law and how to do so ethically. State regulation of CLEs necessarily entails viewpoint and content discrimination. And bench-bar conferences are the only setting where Pennsylvania judges and attorneys regularly interact outside the courtroom.

Rule 8.4(g) appropriately balances the competing interests at stake. Combatting harassment and discrimination advances States' compelling interest in protecting confidence in the legal system and the legal profession's integrity, as well as ensuring that all lawyers can practice law free from harassment and discrimination. Rule 8.4(g) is appropriately tailored to the most problematic harassment and discrimination. Rule 8.4(g) reaches such behavior only during the practice of law, when targeted at individuals, with intent.

16

In all events, the court erred in holding Rule 8.4(g) facially invalid.  Rule 8.4(g) on its face applies to conduct, *i.e.*, activity not protected by the First Amendment at all.  To the extent the Rule restricts speech, Greenberg concedes that over 99% of Rule 8.4(g)'s applications do not violate the First Amendment.  He thus cannot possibly demonstrate that Rule 8.4(g) has a substantial number of unconstitutional applications relative to constitutional ones.

III.   Nor is Rule 8.4(g) facially vague.  Greenberg cannot show that Rule 8.4(g) is unconstitutional in all applications.  Any reasonably intelligent lawyer would understand that Rule 8.4(g) forbids groping women at CLEs or calling black opposing counsel the n-word.  Moreover, the Rule contains detailed definitions, requires scienter, and proscribes conduct only targeted at individuals.  Rule 8.4(g) provides more guidance than the many existing disciplinary rules that are routinely invoked to discipline the same behavior.

## ARGUMENT

## I.    Greenberg Lacks Standing

To establish Article III standing to bring a pre-enforcement challenge, plaintiffs must demonstrate that their planned conduct is "arguably … proscribed by [the] statute" and that they face "a credible threat of prosecution

17

thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 162 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  A plaintiff's "subjective 'chill'" does not confer standing.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (citation omitted).

Greenberg fails both prongs and thus cannot claim that Rule 8.4(g) objectively chills his desired speech.  He never alleges any intent to engage in conduct even arguably covered by Rule 8.4(g).  And instead of a credible threat of prosecution, he has a guaranteed promise of *non*-prosecution.

### A.    Rule 8.4(g) Does Not Arguably Cover Greenberg's Proposed Presentations and No Credible Threat of Prosecution Exists

1.    Greenberg asserts standing to challenge Rule 8.4(g) based on his plans to give CLE presentations on purportedly controversial topics.  He would like to quote racial epithets when summarizing cases like *Matal v. Tam*, 137 S. Ct. 1744 (2017), involving whether the musical group "The Slants" could register its trademark.  JA158.  He also seeks to "oppose[] hate speech bans"; "advocat[e] for the right of people to express intolerant religious views"; "support[] Due Process protections for students accused of sexual misconduct"; and discuss the campaign-finance decision, *Citizens United v. FEC*, 558 U.S.

310 (2010).  JA160-62.  Greenberg further claims that, after three prior presentations (including only one CLE), attendees told Greenberg that they found his comments "offensive."  JA159.

These allegations are patently insufficient to confer standing.  Greenberg needed to allege plans to engage in conduct "arguably proscribed" by the rule he challenges.  *Driehaus*, 573 U.S. at 162.  He did not.  Rule 8.4(g) reaches only "harassment" or "discrimination" that an attorney *intentionally* targets *at another individual*.  "Harassment" is "conduct that is intended to intimidate, denigrate or show hostility or aversion toward a person."  Pa. R.P.C. 8.4 cmt. [4].  "[D]iscrimination" similarly means "conduct that a lawyer knows manifests an intention … to treat a person as inferior."  *Id.* cmt. [5].  In no sense could quoting recent cases or advocating for due-process and free-speech protections even arguably constitute harassment or discrimination against individuals, regardless of whether listeners find Greenberg's presentations "offensive, denigrating, hostile, and hateful."  JA158.

Confirming the Rule's plain text and common sense, Pennsylvania's Chief Disciplinary Counsel, Thomas Farrell, has averred that Greenberg's

proposed activities "do not violate Rule 8.4(g)." JA276. Greenberg fears Pennsylvania officials could nonetheless "misconstrue[]" Rule 8.4(g) to cover his presentations. JA163. But neither "speculative fear" nor "subjective 'chill'" confers standing. *Clapper*, 568 U.S. at 410, 418 (citation omitted). Greenberg's self-censorship based on speculation that Pennsylvania officials will mistakenly apply the Rule to him is objectively unreasonable.

2.    Greenberg further lacks standing because he faces the opposite of "a credible threat of prosecution." *Driehaus*, 573 U.S. at 159 (citation omitted). He has a sworn guarantee that Pennsylvania will "not pursue discipline" for his planned conduct. JA276. That disavowal cuts strongly against standing for pre-enforcement challenges. *E.g.*, *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428-29 (11th Cir. 1998). By contrast, the Supreme Court has repeatedly relied on failure to disavow enforcement in finding standing. *Driehaus*, 573 U.S. at 165; *Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010); *Babbitt*, 442 U.S. at 302.

Greenberg also points to no evidence that any of the forty-four jurisdictions that proscribe attorney harassment and/or discrimination have sanctioned or threatened to sanction the behavior he wants to engage in. Nor has

20

Greenberg alleged that any state or federal judge has invoked the Code of Judicial Conduct to sanction a lawyer for such conduct. *See supra* pp. 8-9. As far as the record reflects, no disciplinary authority or judge anywhere has ever sanctioned an attorney for anything that Greenberg claims he wants to do.

3.     No other court would hear this case. The U.S. District Court for the District of Connecticut recently dismissed a First Amendment and vagueness challenge to Connecticut's version of Model Rule 8.4(g) for lack of standing. *Cerame v. Bowler*, 2022 WL 3716422, at *5 (D. Conn. Aug. 29, 2022). Similar to this case, the plaintiffs there claimed that Connecticut's rule chilled their speech on "controversial legal issues" like free-speech rights and critical race theory. *Id.* at *8. The court observed that none of the plaintiffs' desired speech "fall[s] within the explanation of what constitutes discrimination or harassment," and that the plaintiffs could not show "a well-founded fear" of disciplinary proceedings or sanctions. *Id.* The plaintiffs' fear that their speech would "be taken out of context and be the basis for a disciplinary proceeding" was too "conjectural" to confer standing. *Id.*

Other circuits have reached the same result in cases involving other disciplinary rules. In *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 959 n.1,

968 (6th Cir. 2009), the Sixth Circuit found that attorneys lacked standing to challenge Michigan's disciplinary rules prohibiting "undignified or discourteous conduct" and mandating "courtesy and respect"—even though one attorney-plaintiff previously had faced discipline under the challenged rules for declaring that appellate judges "should be anally molested," *id.* at 962, 964 (citation omitted).  The court emphasized the lack of allegations "to support an inference that the Michigan Supreme Court is targeting [the plaintiffs], harassing them, or broadly applying the courtesy and civility provisions to Michigan's attorney population for the purpose of stifling fundamental freedoms." *Id.* at 973.  The case for standing is even less compelling here.

*Wilson*, 132 F.3d 1422, is also on point.  There, the Eleventh Circuit dismissed for lack of standing a First Amendment challenge to Georgia's rule governing the activities of disbarred attorneys.  *Id.* at 1429.  The court explained, "[i]f no credible threat of prosecution looms, the chill is insufficient to sustain the burden that Article III imposes." *Id.* at 1428 (citation omitted).  Given the lack of "evidence regarding specific threats" of enforcement, as well

as the state bar's consistent position that it would not sanction disbarred attorneys for speech like the plaintiffs', the attorneys' asserted "self-censorship" was "not objectively reasonable." *Id.* at 1428-29 (citation omitted).

And in *Wisconsin's Environmental Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407 (7th Cir. 1984), the Seventh Circuit held that a non-attorney's First Amendment challenge to a state bar rule prohibiting the unauthorized practice of law was not justiciable. The court highlighted that it was "uncertain whether the Wisconsin Supreme Court would determine that" the plaintiff's activity violated the rule, even though the state bar had already referred the case for prosecution. *Id.* at 412-13. Here, there is no need to speculate: Greenberg's planned conduct will not lead to discipline. JA276. Greenberg points to no other decision that would find standing in circumstances similar to those here.

### B.     The District Court's Justiciability Analysis Is Flawed

1.     Greenberg claims his speech would be chilled based on the risk that "activists" could "misuse" Rule 8.4(g) to file politically motivated complaints against Greenberg. JA163; *see* JA178 (fear his presentations will be "incorrectly perceived"). As proof, Greenberg cites wide-ranging examples of

"the public climate," JA212, like media criticism of Justice Ginsburg for calling Colin Kaepernick's protests "dumb and disrespectful" and Senator Markey's tweeting, "Originalism is racist," JA175, 177.

But standing for pre-enforcement challenges requires "a credible threat of prosecution," *Driehaus*, 573 U.S. at 159 (citation omitted), not a credible threat of meritless complaints. Thus, in a case involving a university harassment policy, the Fourth Circuit explained that "the fact that the University inquired into and then dismissed student complaints … does not by itself translate into a credible threat that the University would sanction the plaintiffs for engaging in protected speech in the future simply because others found it offensive." *Abbott v. Pastides*, 900 F.3d 160, 177 (4th Cir. 2018); *see also Ness v. City of Bloomington*, 2020 WL 4227156, at *7 (D. Minn. July 23, 2020); *Empower Texans, Inc. v. Nodolf*, 306 F. Supp. 3d 961, 968 (W.D. Tex. 2018).

So too here: The risk of specious complaints by offended listeners fundamentally differs from the risk of actual enforcement by public officials. The Office of Disciplinary Counsel dismisses nearly seven out of eight complaints without requesting a formal response. JA190; *cf. Driehaus*, 573 U.S. at 164

(government "ha[d] no system for weeding out frivolous complaints"). Because Greenberg has not shown that complaints translate to prosecution, he lacks standing.

2.    The district court concluded that mootness was the applicable "justiciability doctrine" and deemed the case non-moot. JA56, 78. In the court's view, there was no need to address whether Greenberg had standing at this juncture, because the court had previously held that Greenberg had standing to challenge the now-repealed *old* Rule 8.4(g) based on the same alleged fear of meritless complaints. JA56-57. But plaintiffs must show an injury "fairly traceable to the challenged conduct." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). Because Greenberg's amended complaint challenges the current Rule, JA153-55, Greenberg must demonstrate an injury from the current Rule.

The court likewise dismissed the relevance of Chief Disciplinary Counsel Farrell's declaration, concluding that the declaration did not moot the case. JA74. But defendants did not argue that the declaration mooted an otherwise live controversy over the current Rule. Farrell's declaration instead reaffirms that Greenberg lacks standing in the first place.

25

## II.    Rule 8.4(g) Complies with the First Amendment

Rule 8.4(g) is a rule of professional conduct that the Pennsylvania Supreme Court promulgated in its regulatory capacity over Pennsylvania attorneys.  Since the Founding, professional-conduct standards have restricted attorneys from engaging in speech inconsistent with professional ethics.  Pennsylvania's desire to combat harassment and discrimination in the legal profession is neither unique nor notorious.  The court below thus improperly treated Rule 8.4(g) as an ordinary speech restriction.  JA95-110.

### A.    The First Amendment Does Not Bar Rules that Reasonably Regulate Attorney Speech

#### 1.    *The legal profession is not subject to ordinary First Amendment scrutiny*

One principle cuts across the Supreme Court's cases about attorney disciplinary rules:  Ordinary First Amendment standards do not apply.  Increased burdens on speech are appropriate because "a member of the bar enjoys singular powers that others do not possess; by virtue of admission, members of the bar share a kind of monopoly granted only to lawyers."  *In re Snyder*, 472 U.S. 634, 644 (1985).  "[L]awyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'"  *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975).

26

States thus have more leeway to regulate attorney speech. *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071-76 (1991) (statements to press); *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 624-34 (1995) (advertising); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460-62 (1978) (solicitation). More generally, "States may regulate professional conduct, even though that conduct incidentally involves speech," without triggering heightened scrutiny. *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2372 (2018).

This Court too has recognized that, when the government acts as a "regulator of attorneys," the government "acts in a capacity that goes beyond merely being sovereign" and "gains additional authority to regulate speech." *In re Kendall*, 712 F.3d 814, 825 (3d Cir. 2013). States are "freer to place conditions on speech" when exercising "regulatory authority over … attorney discipline." *Mirabella v. Villard*, 853 F.3d 641, 656 n.10 (3d Cir. 2017) (citation omitted). Accordingly, "[l]awyers should not be surprised when they learn that their chosen professional status … restricts their conduct and speech at times." *United States v. Scarfo*, 263 F.3d 80, 93 (3d Cir. 2001).

Likewise, when considering compelled speech, the Supreme Court has held that different rules apply to attorneys. States may constitutionally compel attorneys to fund bar activities relevant to "regulating the legal profession" or "improving the quality of legal services." *Harris v. Quinn*, 573 U.S. 616, 655 (2014) (quoting *Keller v. State Bar of Cal.*, 496 U.S. 1, 14 (1990)). The Fifth Circuit thus recently held that States may compel attorneys to fund bar activities such as diversity initiatives that some attorneys find "controversial and ideological" and "highly ideologically charged." *McDonald v. Longley*, 4 F.4th 229, 249 (5th Cir. 2021). That court reasoned that such initiatives are "aimed at 'creating a fair and equal legal profession for minority, women, and LGBT attorneys'" and are "a form of regulating the legal profession." *Id.*

## 2. *History vindicates States' broad authority to regulate the legal profession*

The Supreme Court has looked "to the history of the regulation of the practice of law" to gauge constitutional limits on state restrictions. *Gentile*, 501 U.S. at 1066; *e.g.*, *Ohralik*, 436 U.S. at 460-61. History confirms that ordinary First Amendment doctrine does not govern rules of professional conduct, including rules that significantly restrict attorneys' speech based on content and viewpoint.

Governments have long regulated attorney behavior in ways that would be blatantly unconstitutional for non-lawyers. Start with character-and-fitness requirements. "Membership in the bar is a privilege burdened with conditions," including "fair private and professional character." *In re Rouss*, 116 N.E. 782, 783 (N.Y. 1917) (Cardozo, J.). In A.D. 364, Roman co-Emperors Valentinian I and Valens decreed that legal advocates must be "men of suitable character, whose past lives have been praiseworthy." Code Theod. 1.29.1, at 32 (Clyde Pharr trans., 2001). In 1402, Parliament mandated that attorneys "be good and virtuous, and of good Fame." 4 Hen. 4 c. 18; *see* 3 William Blackstone, *Commentaries* *26. And in 1729, Parliament required courts to examine bar applicants' "fitness and capacity to act as an attorney." 2 Geo. 2 c. 23.

In early America, "moral character requirements [became] … a fixed star in an otherwise unsettled regulatory universe." Deborah L. Rhode, *Moral Character as a Professional Credential*, 94 Yale L.J. 491, 496 (1985). Before the First Amendment's ratification, Pennsylvania required attorneys to be "person[s] of integrity." W. Raymond Blackard, *Requirements for Admission to the Bar in Revolutionary America*, 15 Tenn. L. Rev. 116, 125 n.34 (1938). Massachusetts and New Jersey required attorneys to possess "good moral

character." *Id.* at 118, 123.  A majority of States adopted similar requirements before 1868, when the Fourteenth Amendment incorporated the First Amendment against the States.[1]  Given this history, the "validity" of character-and-fitness requirements cannot "be[] drawn in question." *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 40-41 (1961).  Today, every State limits bar admission to persons of good character.  Margaret Fuller Corneille, *Bar Admissions*, 52 S.C. L. Rev. 609, 614 (2001).

Character-and-fitness requirements routinely sweep up protected speech.  Illinois, for example, denied admission to a white supremacist whose racist advocacy put him "on a collision course with the Rules of Professional Conduct." *Hale v. Comm. on Character & Fitness*, 335 F.3d 678, 681 (7th Cir. 2003).  And Pennsylvania asks applicants if they have ever been "questioned

---

[1]    Rhode, *supra*, at 496-97 (New York and South Carolina); Cal. S. Ct. R. I, 4 Cal. xv (1854); Regulae Generales 1, 4 Conn. 119 (Super. Ct. 1809); *Green v. Kinney*, 2 Del. 160, 161 n.(a) (Super. Ct. 1837); Fla. S. Ct. R. 1, 1 Fla. VII (1846); Ga. Super. Ct. R. VIII, 2 Ga. 467 (1847); Ill. S. Ct. R. 52, 22 Ill. 7 (1860); Ind. S. Ct. R. XXIV, 4 Ind. viii (1852); *Sample v. Frost*, 10 Iowa 266 (1859); La. S. Ct. R., 15 La. iii (1840); *In re Mills*, 1 Mich. 393 (1850); Miss. Code ch. 26, art. 8 (1837); Regulae Generales, 1 Me. 411 (1822); Mo. S. Ct. R. XXV, 4 Mo. 10 (1835); N.H. R. 37, 38 N.H. 589 (1859); R.I. S. Ct. R. 1, 4 R.I. 547 (1857); *Smith v. State*, 9 Tenn. 228, 230 (1829); Att'y Admission R. 1, 1 Aik. 406 (Vt. 1827).

… by an employer … about … your ability to maintain the confidentiality of information." Pa. Bd. of Law Examiners, *Employment - Performance* (Aug. 2, 2022), https://bit.ly/3ceWuB8. Maintaining the integrity of the legal profession necessarily requires limiting what lawyers (and would-be lawyers) can say, even though the First Amendment would otherwise restrict States' ability to, say, exclude Nazis from welfare benefits or penalize leakers.

After admission to the bar, courts possess "long recognized … inherent authority" to regulate attorney behavior, *Snyder*, 472 U.S. at 643, including disfavored speech that States could not ban if uttered by non-lawyers. Washington suspended an attorney for repeating "scandalous rumors" in a brief. *In re Robinson*, 92 P. 929, 931-32 (Wash. 1907). Indiana sanctioned an attorney for "undignified and unprofessional" in-court statements. *Redman v. State*, 28 Ind. 205, 211-13 (1867). Outside pending proceedings, New York "severely condemned as eminently improper" an attorney's post-litigation, private letter to a judge "containing reflections upon the integrity of the justice." *In re Manheim*, 99 N.Y.S. 87, 87-88 (App. Div. 1906).

Governments have also required attorneys to take sworn pledges restricting speech whose transgressions could result in discipline. Carol Rice

Andrews, *The Lawyer's Oath*, 22 Geo. J. Legal Ethics 3, 25-27 (2009). Roman attorneys swore not to use "injurious language or malicious declamations against [an] adversary." Carol Rice Andrews, *Standards of Conduct for Lawyers*, 57 SMU L. Rev. 1385, 1393 (2004). Attorneys in the Holy Roman Empire swore to avoid "tergiversation," *i.e.*, evasive speaking, in client representations. Andrews, *Oath*, *supra*, at 10; *see also id.* at 11-15 (collecting English oaths); Andrews, *Standards*, *supra*, at 1392-1409 (same). Today, this Court and the Supreme Court require bar members to pledge to conduct themselves "uprightly" "as an attorney." S. Ct. R. 5.4; Third Circuit, *Sponsor's Motion and Oath of Admission*, https://bit.ly/3AOBH12.

The most common American oath contemporaneous with the Fourteenth Amendment's adoption was especially sweeping. In 1848, American law reformer David Dudley Field proposed requiring attorneys to "abstain from all offensive personality" and "maintain the respect due to" courts. Andrews, *Oath*, *supra*, at 31. By 1900, seventeen States adopted those restrictions in some form. *Id.* at 32. Almost half of States maintain similar provisions today. *Id.* at 45. North Dakota, for example, used its offensive-personality provision to disbar an attorney for "disrespectful and abusive language

32

to opposing counsel in the trial of cases." *In re Crum*, 75 N.W. 257, 260 (N.D. 1898). While courts have divided on whether prohibitions on "all offensive personality" are vague, *United States v. Wunsch*, 84 F.3d 1110, 1120 (9th Cir. 1996), no court has ever held that they violate the First Amendment.

Codified disciplinary rules, like the modern rules of professional conduct, have also long reached speech. Starting with Alabama in 1887, States began "crystalliz[ing] abstract ethical principles" into formal codes. ABA, *Report of the 29th Annual Meeting* 604 (1906); *see Gentile*, 501 U.S. at 1066. By 1924, almost every state and local bar had adopted the ABA's original model, the 1908 Canons of Ethics. James M. Altman, *Considering the A.B.A.'s 1908 Canons of Ethics*, 71 Fordham L. Rev. 2395, 2395-96 (2003). These codes served as a "guide for professional conduct" justifying discipline. *Hunter v. Troup*, 146 N.E. 321, 324 (Ill. 1924); *accord In re Cohen*, 159 N.E. 495, 497 (Mass. 1928). Today, every State has detailed disciplinary rules based on the ABA's Model Rules. Lorelei Laird, *California Approves Major Revision to Attorney Ethics Rules*, ABA J. (Oct. 2, 2018), https://bit.ly/3zLsMg2.

These rules pervasively regulate attorney speech based on content and viewpoint in ways that under the district court's reasoning would be per se

illegal.  *See* JA96-100.  Alabama's 1887 code prohibited an attorney "from avail-
ing himself of any prejudice or popular misconception against lawyers."  Ala.
Code of Ethics § 9 (1887), *reprinted in* 2 Ala. Law. 259, 263 (1941).  The 1908
ABA Canons are replete with content and viewpoint restrictions, including re-
quiring attorneys to avoid "ill feeling and personalities" towards opposing
counsel.  ABA, *Report of the 31st Annual Meeting* 580 (1908) (capitalization
altered).

### 3.    *The district court erred in analyzing Rule 8.4(g) like a school antiharassment code*

The foregoing history should conclusively refute the district court's sug-
gestion that any regulation that directly "limits what a lawyer may say" trig-
gers "full First Amendment protection."  JA78, 95.  But so should the nature
of the legal profession.  Practicing law inherently involves speech.  Everything
lawyers do—oral arguments, drafting wills or contracts, questioning wit-
nesses, settlement conferences, brief-writing—involves speech subject to per-
vasive state regulation, including based on content and viewpoint.

Attorneys in this Circuit, for instance, must display "appropriate profes-
sional behavior in all briefs."  3d Cir. R. 28.1(d).  Attorneys cannot file plead-
ings for "improper" purposes.  Fed. R. Civ. P. 11(b)(1).  Attorneys must act

"with zeal in advocacy upon the client's behalf," and cannot espouse viewpoints contrary to their client's interest.  Pa. R.P.C. 1.3 cmt. [1].  These rules are just a few examples of the many rules that directly "curtail attorney speech but are uniformly understood as proper regulatory measures."  *See* ABA Formal Op. 493, at 9 n.49.

The court below invoked this Court's precedents involving facial restrictions on student speech, JA91-92, 99-100, 111—in particular *Saxe v. State College Area School District*, 240 F.3d 200 (3d Cir. 2001) (Alito, J.), but also *DeJohn v. Temple University*, 537 F.3d 301 (3d Cir. 2008), and *McCauley v. University of the Virgin Islands*, 618 F.3d 232 (3d Cir. 2010).  *Saxe* involved a school district's antiharassment policy that applied to "unwelcome verbal [or] written … conduct which offends, denigrates or belittles an individual" because of identified characteristics, including a person's "values."  240 F.3d at 202-03.  This Court noted that the policy struck "at the heart of moral and political discourse" as well as at "simple acts of teasing and name-calling."  *Id.* at 210-11.  *McCauley* and *DeJohn* held university antiharassment policies invalid under the First Amendment.  The Court emphasized that the university "is peculiarly the marketplace of ideas," and held that universities have even

"less leeway" to regulate student speech than other schools. *McCauley*, 618 F.3d at 242, 247 (citation omitted); *accord DeJohn*, 537 F.3d at 315.

Virtually all attorney regulations would be unconstitutional if viewed through the lens of this Court's school-speech cases. States cannot suspend college freshmen who fail to participate in classroom discussions "with zeal," Model R.P.C. 1.3 cmt. [1], or expel middle schoolers for "conduct unbecoming a [student]," 3d Cir. R.A.D.E. 2.1(e). Different interests and burdens are at stake for attorneys. Regulation of the legal profession is not designed to protect the marketplace of ideas, to give children breathing space to offend on playgrounds or in locker rooms, or to let parents inculcate values in their children free from state interference. And courtrooms and CLEs are not like college campuses where students live 24/7. Attorney conduct rules instead vindicate States' interest in prescribing reasonable standards of professional conduct, at least when licensed lawyers wear their lawyer hats.

The district court thus was manifestly incorrect that Rule 8.4(g) intrudes on attorneys' "daily lives." JA96. Lawyers retain many outlets to express themselves outside Rule 8.4(g)'s coverage: university and law-school

36

speeches, public rallies, school-board meetings, neighborhood parties, and the loudest soapboxes imaginable, the internet and social media.

## B.    Rule 8.4(g) Reasonably Regulates Attorney Conduct

Rule 8.4(g) fits well within States' traditional authority to regulate the legal profession.

### 1.    *Rule 8.4(g) constitutionally applies to court proceedings, client representations, law-office operations, and judicial advisory bodies*

As stated above, Rule 8.4(g) applies to court proceedings, client representations, law-office operations, judicial advisory bodies, CLEs, and bench-bar conferences.  Pa. R.P.C. 8.4 cmt. [3].  Below, Greenberg stated that "[i]f the Pennsylvania Rule were limited to speech uttered in the course of client representations and directed to specific persons in the legal process, we wouldn't be here today."  JA379; *accord* JA380.  The district court likewise seemingly recognized States' authority to regulate client representations and courtroom behavior, as well as the "workplace."  JA94, 113.  Greenberg also did not dispute below that Rule 8.4(g) does not violate the First Amendment as applied to "operating or managing a law firm or law practice" and "participation in judicial boards, conferences, or committees."  Pa. R.P.C. 8.4 cmt. [3].

Greenberg has forfeited any arguments to the contrary. *See Simko v. U.S. Steel Corp.*, 992 F.3d 198, 205 (3d Cir. 2021).

Even if not forfeited, challenges to these applications of the Rule would be meritless. Client representations and legal proceedings are at the core of States' authority over the practice of law. *Gentile*, 501 U.S. at 1071. The integrity of attorneys protects "the confidence of the people" in the rule of law. *In re Law Ass'n of Phila.*, 167 A. 579, 583 (Pa. 1933). Antiharassment and antidiscrimination rules ensure that attorneys, as officers of the court, are worthy of the trust and authority the public places in them.

"Rule 8.4(g) is neither new nor anomalous." Robert N. Weiner, *"Nothing to See Here,"* 41 Harv. J.L. & Pub. Pol'y 125, 125 (2018). Modern antidiscrimination rules do not violate the First Amendment by describing in more detail the kind of inappropriate behavior that has historically been prohibited—and that could preclude bar membership altogether—under even more sweeping rules. *Supra* pp. 28-34.

In rejecting a First Amendment challenge to limits on what lawyers can say to the press in *Gentile*, 501 U.S. at 1068, the Court highlighted that thirty-

one States had similar rules.  Again, forty-four jurisdictions ban attorney harassment and/or discrimination.  Add.1-27.  And fifty-two jurisdictions impose similar antiharassment and antidiscrimination requirements on their local judiciaries.  Add.30-105.  Ethical standards for the judiciary and lawyers often overlap because, "like the court itself," an attorney is "an instrument or agency to advance the ends of justice."  *Snyder*, 472 U.S. at 644 (quoting *People ex rel. Karlin v. Culkin*, 162 N.E. 487, 489 (N.Y. 1928) (Cardozo, J.)).

Similarly, Rule 8.4(g) permissibly extends to lawyers operating law offices, who are practicing law whether or not they are working on client matters.  When a partner writes "I need my cock sucked" on his secretary's whiteboard, he undermines public confidence regardless of whether he simultaneously asks her to type something for a client.  *E.g.*, Lauren Berg, *Buchalter Products Liability Chair Sued for Sex Harassment*, Law360 (July 19, 2022), https://bit.ly/3yUx7fa (reporting such allegations).

Likewise, Rule 8.4(g) reasonably extends to Pennsylvania's judicial boards, conferences, and committees.  Pennsylvania lawyers assist the judiciary with legal functions like drafting court rules.  *See* Unified Jud. Sys., *Committees, Boards & Advisory Groups*, https://bit.ly/3czI26t.  The Disciplinary

39

Board, whose members are defendants here, is one such body.  Pennsylvania can hold its own advisors to the same standards as other officers of the court.

### 2. *Rule 8.4(g) constitutionally applies to CLEs and bench-bar conferences*

Greenberg and the district court trained their fire on Rule 8.4(g)'s applications to CLEs and bench-bar conferences.  Those applications are valid too.

a.    Continuing legal education is inexorably linked to practicing law.  Training lawyers after law school "determine[s] [lawyers'] skills as advocates and ultimately the quality of our justice."  Warren E. Burger, *The Special Skills of Advocacy*, 42 Fordham L. Rev. 227, 227 (1973).  Mandatory CLEs promote "the fair administration of justice" and "public confidence in the legal profession and the rule of law," Model R.C.L.E. pmbl., and ensure lawyers "maintain the requisite knowledge and skill" to do their jobs, Pa. R.P.C. 1.1 cmt. [8].

The Pennsylvania Supreme Court mandates CLE attendance as part of regulating the practice of law.  Pa. R.C.L.E. 105(a).  The vast majority of jurisdictions do the same.  L. Paige Whitaker, *Continuing Legal Education*, Cong. Rsch. Serv. (Mar. 25, 2019).  Courts reject First Amendment challenges

to mandating or funding CLEs. *Verner v. Colorado*, 716 F.2d 1352, 1353 (10th Cir. 1983); *McDonald*, 4 F.4th at 251-52.

States also restrict the viewpoint and content of CLEs. The Pennsylvania Supreme Court limits the subjects on which CLEs may be offered and the viewpoint expressed. Approved subjects include the "rules of professional conduct" (like Rule 8.4(g)), "professionalism," and "substance abuse as it affects lawyers and the practice of law." Pa. R.C.L.E. 105(a)(2)(ii)-(iv). CLEs on professionalism may receive credit; CLEs on unprofessionalism may not. To receive CLE credit, courses must "be of intellectual or practical content," and "contribute directly to lawyers['] professional competence or skills" or "to their education with respect to their professional or ethical obligations." Pa. R.C.L.E. 107(a)-(b).

Mandatory CLE requirements, in other words, necessarily demand some content and viewpoint discrimination. The First Amendment does not require States to approve CLEs devoted to, say, the Beatles' greatest hits, or grant equal time for warring CLEs on "How to Avoid Disbarment" and "How to Get Disbarred."

41

Pennsylvania also mandates that attorneys attend CLEs on certain subjects. Attorneys must attend at least two hours of CLEs on ethics, professionalism, and substance abuse annually. Pa. C.L.E. Reg. 3(d). Other States have long required CLE training on eliminating bias in the legal profession, and courts have upheld those requirements against First Amendment challenges as "germane to the goals of regulating the legal profession." *E.g.*, *In re Rothenberg*, 676 N.W.2d 283, 290 (Minn. 2004).

Rule 8.4(g) reasonably requires that licensed attorneys teaching or learning the law behave ethically and professionally. In Greenberg's world, presenters giving a CLE on courtroom etiquette could taunt black participants about the lynching of their grandparents, spew homophobic slurs at attendees, or tell Muslim attendees their religion renders them unfit to be lawyers. It defies credulity that the First Amendment tolerates disciplining attorneys for such speech if uttered in courtrooms or briefs, yet renders the State powerless to discipline such speech at CLEs that attorneys must attend to retain their licenses.

b.    Bench-bar conferences are also part of Pennsylvania law practice. These conferences, hosted by Pennsylvania's voluntary bar associations, bring

together lawyers and judges to improve "the practice of law" and "the relationship between lawyers and judges."  Judi Keller, *Enough Already … Go to Bench-Bar*, Law. J., May 7, 1999, at 5.  Bench-bar conferences routinely incorporate CLE credits.  *E.g.*, Phila. Bar Ass'n, *2022 Bench-Bar & Annual Conference*, https://bit.ly/3BgQbqT.  As the only organized setting outside the courtroom where lawyers and judges routinely come face-to-face, bench-bar conferences provide important opportunities for lawyers to build relationships with judges and colleagues.

Pennsylvania reasonably considers these events part of Pennsylvania's legal system.  The harm to the profession is similar whether an attorney calls Jewish lawyers "bloodsucking shylocks" directed at opposing counsel during litigation or participants at a bench-bar conference.  *Cf. In re Dempsey*, 986 N.E.2d 816, 816 (Ind. 2013) (attorney remark in public flyers).  And female attorneys can hardly build relationships with judges and colleagues when fending off "inappropriate advances," which occur with unfortunate regularity at bench-bar functions. *E.g.*, *Off. of Disciplinary Couns. v. McMahon*, No. 159

43

DB 2019, slip op. at 2 (Pa. Disc. Bd. Oct. 2, 2019)[2]; *see* Ellen Brotman & Amy Coco, *Pennsylvania Lawyers Behaving Badly:  Is 8.4(g) a Solution?*, 50 Hofstra L. Rev. 521, 539 (2022).

c.    The district court opined that if the Rule were tied to proceedings and representations, disciplinary authorities "could evaluate more objectively the impact of an attorney's conduct on the proceeding or representation and whether it prevented equal access or the fair administration of justice."  JA99-100.  The court believed that outside those settings, the Rule "floats in the sea of whatever the majority finds offensive at the time" and aims "to police attorneys for having undesirable views and bad thoughts."  JA100.  Ultimately, the district court deemed anything outside "the courtroom or related to a pending case" too "tangentially related to the practice of law."  JA94, 102.

But attorney regulation has always extended beyond client representations, underscoring the reasonableness of Pennsylvania's choice to regulate some limited areas inextricably tied to the legal profession.  States have "broad latitude" to set the boundaries of professions.  *Mazurek v. Armstrong*, 520

---

[2]    Disciplinary Board decisions are available at https://www.pacourts.us /courts/supreme-court/committees/supreme-court-boards/disciplinary-board-opinions.

U.S. 968, 973 (1997) (citation omitted).  Although context can inform whether discipline should be imposed or the appropriate sanction, "what best regulates the legal profession … is typically for the Bar to decide."  *See McDonald*, 4 F.4th at 249.  Federal courts should not lightly interfere with the "historic relationship between state judicial systems and the members of their respective bars."  *See Feldman*, 460 U.S. at 484 n.16 (citation omitted).

History overwhelmingly supports Pennsylvania's decision to reach beyond client representations.  Nineteenth-century courts rejected as "mistaken" arguments that an attorney could "only be disbarred for acts done 'in his office as attorney' or 'within the courts.'"  *Sanborn v. Kimball*, 64 Me. 140, 148 (1875).  Instead, "gross immoralities in his private capacity and without the pale of the court" could "render [an attorney] unworthy to minister in the forum of justice."  *Id.*  Maine disbarred an attorney for "disregard[ing] the amenities of the profession" by calling one lawyer "a liar" and threatening "to flog [another] in the street."  *Id.* at 153.

Courts of that era would disbar attorneys "for *moral* or professional delinquency."  *Ex parte Garland*, 71 U.S. 333, 379 (1867) (emphasis added).  And today, this Court and the Supreme Court discipline bar members for "conduct

45

unbecoming a member of the bar" without limiting that authority to pending proceedings or client representations. 3d Cir. R.A.D.E. 2.1(e); S. Ct. R. 8.1. Deeply rooted character-and-fitness requirements also have no such limit. Illinois' denial of admission to a white supremacist rested in part on his "intent to continue discriminating in his private life." *Hale*, 335 F.3d at 681.

So too, attorney disciplinary rules have long applied outside client representations. Alabama's 1887 rule against deploying "popular misconception[s] against lawyers" applied "at all times, and in all relations of life." Ala. Code of Ethics § 9. New Mexico suspended an attorney for a private letter calling a judge a "blockhead" after the judge failed to answer the attorney's letter. *In re Rogers*, 212 P. 1034, 1034-35 (N.M. 1923). And Alabama disbarred an attorney for failing to "maintain the respect due to courts of justice and judicial officers" after the attorney sent a letter to a judge's home criticizing the judge's conduct in a past case. *Johnson v. State*, 44 So. 671, 672-73 (Ala. 1907). Wielding the First Amendment to invalidate all restrictions on attorney conduct outside proceedings or representations would adopt a blinkered, ahistorical view of lawyers' duties to their profession.

46

Other current rules also are not limited to client representations. Rule 8.4(c)'s ban on "dishonesty, fraud, deceit, or misrepresentation," which Greenberg agrees is constitutional, JA378 n.12, applies "whether or not the act or omission occurred in the course of an attorney-client relationship." Pa. R.D.E. 203(a). That ban would be unconstitutional if applied to non-lawyers. *See United States v. Alvarez*, 567 U.S. 709, 722 (2012) (plurality op.); *id.* at 733 (Breyer, J., concurring in judgment). But States may constitutionally punish lawyers for engaging in false speech, even outside pending cases, because dishonesty anywhere "reflect[s] adversely on the lawyer's fitness." Rebecca Aviel, *Rule 8.4(g) and the First Amendment*, 31 Geo. J. Legal Ethics 31, 74 (2018).

Other jurisdictions have made choices similar to Pennsylvania's. The rules of eighteen other States (including New Jersey), plus the District of Columbia and three U.S. territories, extend outside the courtroom or a pending case. Colorado, Minnesota, Washington, and Wisconsin ban harassment and/or discrimination "in connection with [a] lawyer's professional activities." Add.9, 16, 24-25. Hawaiʻi, Indiana, Maryland, New Jersey, and Ohio ban discrimination "in a professional capacity." Add.11, 13, 15, 18, 20. Connecticut,

47

Maine, New Mexico, Vermont, American Samoa, the Northern Mariana Islands, and the U.S. Virgin Islands proscribe harassment and discrimination in conduct "related to the practice of law." Add.3, 9, 14, 18, 24, 26-27; *cf.* Add.10 (Florida: "in connection with the practice of law"). California proscribes harassment and discrimination "[i]n relation to a law firm's operations." Add.6. The District of Columbia bans harassment and discrimination "in conditions of employment." Add.10. New Hampshire bans harassment "while acting as a lawyer in any context." Add.18. And Iowa and New York (like Pennsylvania) ban discrimination "in the practice of law." Add.13, 19. Affirmance would cast constitutional doubt on all of these rules.

The judicial-conduct codes of thirty-seven States (including Pennsylvania and New Jersey), the District of Columbia, and three territories, go even further, regulating judges *anywhere*. A comment to the Model Rule requiring judges to avoid activities that could "undermine the judge's independence, integrity, or impartiality," prohibits judges from expressing "bias or prejudice" "even outside the judge's official or judicial actions." Model C.J.C. 3.1(C) & cmt. [3]. A version of that comment exists in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Hawai'i, Idaho, Illinois, Indiana, Iowa,

48

Kansas, Kentucky, Maryland, Massachusetts, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming, the District of Columbia, American Samoa, Guam, and the U.S. Virgin Islands. Add.31-105.  Pennsylvania's Rule 8.4(g) is narrower.

## C.    Rule 8.4(g) Survives Any Standard of Scrutiny for Attorney Speech Restrictions

In reviewing an ethical rule restricting attorneys' public statements about a pending case, the Supreme Court "balance[d]" the First Amendment interests at stake "against the State's legitimate interest in regulating the activity in question." *Gentile*, 501 U.S. at 1075.  Rule 8.4(g) clears any such balancing inquiry.

1.    Rule 8.4(g) serves Pennsylvania's "especially great," "compelling," *Goldfarb*, 421 U.S. at 792, and "paramount," *Fla. Bar*, 515 U.S. at 624, interest in maintaining the integrity of the profession.  Prohibiting attorney harassment and discrimination directly and materially furthers the integrity of the profession and promotes the equal ability of all lawyers to practice law.

49

Just as States have "a compelling[] government interest" in "preventing discrimination in the workplace," *Saxe*, 240 F.3d at 209, States have a compelling interest in preventing discrimination in forums where attorneys practice law. Attorney misbehavior, particularly discrimination, "tarnishes the image of the legal profession." *Principe v. Assay Partners*, 586 N.Y.S.2d 182, 184 (Sup. Ct. 1992). Because attorneys are "officer[s] of the court," discrimination "undermine[s] confidence in our system of justice, [and] erode[s] the very foundation upon which justice is based." *In re Unprofessional Conduct*, 597 N.W.2d 563, 568 (Minn. 1999).

The district court dismissed Pennsylvania's interests as "untethered to attorneys," but rather as furthering "of-the-moment popular movements that seek to limit [First Amendment] rights." JA104. But it has been fashionable to prohibit discrimination since at least the Civil War, and almost all States apply some form of antiharassment and/or antidiscrimination rule to attorneys and judges. *Supra* pp. 7-9.

Empirical proof that harassment and discrimination occur in the legal profession should be unnecessary. But other States' Rule 8.4(g) analogs offer ample evidence: Colorado applied its version to discipline calling judges

50

"c***" or "gay, fat, fag." *In re Abrams*, 488 P.3d 1043, 1049, 1053 (Colo. 2021).

Indiana applied its version to discipline attorneys for speaking "in pejorative terms" about a client's race and publicly attacking Jews for "their alleged involvement in the 9/11 attacks." *In re Epstein*, 87 N.E.3d 470, 470 (Ind. 2017); *Dempsey*, 986 N.E.2d at 816. And Wisconsin used its version to discipline attorneys for inviting a client to "a 10 or 15 minute pawing"; insulting the court as "ignoramus, bigoted Catholic beasts"; and calling a witness a "young, hot nymph" and promising not to "cum in your mouth." *In re Baratki*, 902 N.W.2d 250, 251 (Wis. 2017); *In re Isaacson*, 860 N.W.2d 490, 495 (Wis. 2015); *In re Kratz*, 851 N.W.2d 219, 221-22 (Wis. 2014); *see also* Stephen Gillers, *A Rule to Forbid Bias and Harassment in Law Practice*, 30 Geo. J. Legal Ethics 195, 238-40 (2017) (collecting additional cases of attorney harassment and discrimination).

The district court further questioned whether "discrimination among attorneys in Pennsylvania is a rampant issue requiring government interference." JA105. But Pennsylvania lawyers are not uniquely angelic. Research has uncovered "numerous accounts" of racism in Pennsylvania courtrooms, like a prosecutor calling a 50-year-old black defendant "boy." *Final Report of*

*the Pennsylvania Supreme Court Committee on Racial and Gender Bias in
the Justice System* 305 (2001).

Under other Rules, Pennsylvania has disciplined attorneys for demand-
ing sexual favors from clients, calling a black judge a "ghetto mentality thug,"
and groping women at a bench-bar conference. *Off. of Disciplinary Couns. v.
Altman*, 228 A.3d 508, 512-13 (Pa. 2020); *Off. of Disciplinary Couns. v. Swift*,
No. 158 DB 2005, slip op. at 29 (Pa. Disc. Bd. Nov. 30, 2007); *McMahon*, No.
159 DB 2019, slip op. at 2-3.  Pennsylvania's Rule 8.4(g) is not a solution in
search of a problem.  *See generally* Brotman & Coco, *supra*.

The court also faulted Pennsylvania for failing to "prove that harass-
ment or discrimination" harms "public trust in the legal system."  JA105.  But
"[t]he concept of public confidence in judicial integrity does not … lend itself
to proof by documentary record."  *Williams-Yulee v. Fla. Bar*, 575 U.S. 433,
447 (2015).  Pennsylvania did not need to commission a survey to prove that
comments like "We didn't let girls do it in the old days" harm public trust.  *Cf.
United States v. Swenson*, 894 F.3d 677, 681 (5th Cir. 2018) (remark by federal
judge to prosecutor).  In rejecting a First Amendment challenge to Colorado's
Rule 8.4(g), that State's Supreme Court found "no question that a lawyer's use

52

of derogatory or discriminatory language that singles out individuals involved in the legal process damages the legal profession and erodes confidence in the justice system." *Abrams*, 488 P.3d at 1053.

2.    Rule 8.4(g) is narrowly tailored to that interest.  The Rule carefully targets harmful harassment and discrimination in the practice of law. Even under strict scrutiny, "perfect tailoring" is not required, especially for a "compelling interest … as intangible as public confidence in the integrity of the judiciary." *Williams-Yulee*, 575 U.S. at 454.

**Coverage.**  Rule 8.4(g) applies only to "the practice of law," even though all harassment and discrimination might reflect poorly on a lawyer's character. Again, throughout history, lawyers have been disciplined for conduct *unconnected* to practicing law.   Rule 8.4(g) is narrower; it targets Pennsylvania's "most pressing concern[]"—the practice of law. *See id.* at 449.

**Targeting.**  As discussed, Rule 8.4(g) reaches only harassment and discrimination directed at specific persons. *Supra* pp. 11-12, 19.  General "[o]ffensive[ness]" does not count.  JA278 (Farrell Declaration).  Rule 8.4(g) is tightly focused on the most "invasive, threatening, or coercive" conduct.  *See* Richard

H. Fallon, Jr., *Sexual Harassment, Content Neutrality, and the First Amendment Dog that Didn't Bark*, 1994 Sup. Ct. L. Rev. 1, 42.  Pennsylvania's targeting requirement protects "serious pronouncements of opinion" while zeroing in on discrimination's "particularized harm."  Aviel, *supra*, at 56.

The district court read Rule 8.4(g) to apply to "whatever the majority finds offensive at the time."  JA100; *accord* JA99 (Rule "extends to simple offensive acts").  Neither the Rule nor comments mentions "offensiveness," and the state official charged with enforcing the Rule has affirmed that Rule 8.4(g) does not reach simple offensiveness.  And on a facial challenge, a court "must adopt" any "textually plausible" reading that will save a statute.  *United States v. Yung*, 37 F.4th 70, 79 (3d Cir. 2022).  The court's contrary analysis turned constitutional avoidance on its head.  Moreover, federal courts interpreting Pennsylvania regulations "are required to defer to the agency's interpretation."  *Del. Riverkeeper Network v. Sec'y of Pa. Dep't of Envt'l Prot.*, 870 F.3d 171, 181 (3d Cir. 2017) (citation omitted).

**Intent.**  Rule 8.4(g) requires bad intent.  The conduct "constituting harassment or discrimination" must occur "knowingly."  Pa. R.P.C. 8.4(g).  Harassment must occur with "intent[] to intimidate, denigrate or show hostility."

54

*Id.* cmt. [4]. And discrimination "means conduct that a lawyer knows manifests an intention" to discriminate. *Id.* cmt. [5]. This Court has previously considered a focused intent requirement in "avoid[ing] the 'strong medicine' of invalidating [an antiharassment] statute as facially overbroad." *Yung*, 37 F.4th at 80-81 (citation omitted).

Citing *Saxe*, the court below thought the Rule's scienter requirements undermined Rule 8.4(g)'s constitutionality. JA99. *Saxe* invalidated a school ban on speech with the "purpose or effect" of interfering with a student's educational performance, because federal law imposes liability on schools only when harassing speech "has a systemic *effect* on educational programs and activities." 240 F.3d at 210-11 (citation omitted). But the primary state interest in regulating attorneys is not to prevent disruption. Intentionally discriminatory or harassing speech by attorneys undermines public confidence in the legal system, whether or not such speech achieves its desired effect.

The court also believed the Rule turned on "the *listener*'s subjective feelings of offense." JA99 (emphasis added). Again, the text says the opposite: the speaker's intent controls. As Pennsylvania's Chief Disciplinary Counsel

has confirmed, a listener's simply being "offended by a speech … does not come within Rule 8.4(g)." JA278.

Other rules reach much further. Judicial-conduct rules in thirty-four States, the District of Columbia, and three U.S. territories, for example, currently define "manifestations of bias or prejudice" to include:

> demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes … ; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to … jurors, the media, and others an appearance of bias or prejudice.

Add.32-104. Rule 8.4(g) is more focused.

### D.   Rule 8.4(g) Is Not Facially Invalid

1.   First Amendment facial invalidation is "'strong medicine' … not to be 'casually employed.'" *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1581 (2020) (citation omitted). As one judge recently put it, "the overbreadth doctrine is the nuclear option of First Amendment law." *United States v. Hansen*, 40 F.4th 1049, 1070 (9th Cir. 2022) (Bumatay, J., dissenting from denial of rehearing en banc). To prevail on a First Amendment facial challenge, Greenberg must show "from the text of the law and from actual fact" that Rule 8.4(g) has a "substantial number" of unconstitutional applications "judged in relation

56

to the [Rule's] plainly legitimate sweep." *Free Speech Coal., Inc. v. Att'y Gen.*, 974 F.3d 408, 427 (3d Cir. 2020) (citations omitted). This Court "vigorously enforce[s] the requirement that … overbreadth be *substantial*." *Turco v. City of Englewood*, 935 F.3d 155, 171 (3d Cir. 2019) (citation omitted).

The Rule facially applies to harassing and discriminatory conduct, *i.e.*, activity not protected by the First Amendment, like charging Hispanic clients more or separating CLE attendees by gender. To the extent the Rule applies to harassing and discriminatory speech, Greenberg does not dispute the Rule's validity as applied to "speech uttered in the course of client representations," JA379, or in the course of operating a law office. Such speech reflects almost 100% of what most lawyers do as professionals. Lawyers spend their days interacting with courts, juries, court staff, co-counsel, opposing counsel, clients, office personnel, and third parties in connection with client matters.

Rule 8.4(g)'s challenged applications to CLEs and bench-bar conferences reflect a tiny sliver of the Rule's ambit. Pennsylvania lawyers complete 12 hours of CLEs annually. Pa. R.C.L.E. 105(a)(3). Law-firm associates in Philadelphia typically bill over 1900 hours annually to client representations. NALP, *Billable Hours Requirements at Law Firms*, NALP Bull. (May 2006),

https://bit.ly/3O5HOku.   Even excluding the substantial time that lawyers spend practicing law in a nonbillable capacity—for example, managing a law office—CLEs represent 0.6% percent of many lawyers' professional time. And Pennsylvania bar associations typically host bench-bar conferences one weekend annually.  In light of Rule 8.4(g)'s uncontested, legitimate application to over 99% of what Pennsylvania attorneys do when practicing law, Rule 8.4(g) is not facially invalid under the First Amendment.

If Greenberg believes Rule 8.4(g)'s limited applications to CLEs and bench-bar conferences are unconstitutional, he should seek "partial invalidation" when and if the Rule is applied to him.  *See Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 506 (1985).  Because Rule 8.4(g) does not apply to anything Greenberg plans to say, it is unlikely that as-applied challenge will ever arise. *Supra* pp. 18-21.  But that is reason to dismiss his claim for lack of standing, not to invalidate in full under the First Amendment a rule that Greenberg contests at the narrowest of margins.

2.     The district court faulted Rule 8.4(g) as overbroad because it (1) applies to CLEs, (2) does not require actual "disruption to the administration

of justice," and (3) covers socioeconomic- and marital-status harassment and discrimination.  JA112-13.

As explained, Pennsylvania legitimately considers CLEs part of the practice of law.  *Supra* pp. 40-42.  As to the second concern, States' authority over lawyers is not limited to actual disruption.  *See Gentile*, 501 U.S. at 1081 (Rehnquist, C.J., dissenting).  For example, States may discipline lawyers for any criminal act that "reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects," Pa. R.P.C. 8.4(b), or for "dishonesty, fraud, deceit or misrepresentation," *id.* 8.4(c).  Lawyers who engage in such conduct undermine trust in the legal system—disruption or not.  Imagine a lawyer who tells a Jewish colleague that she belongs to an "inbreeding" "race of idiots" at a bench-bar conference.  *Cf. Gonzalez v. Comm'n on Jud. Performance*, 657 P.2d 372, 382 (Cal. 1983) (judicial remark at Christmas party).  Those remarks damage confidence in the legal system whether or not a riot ensues or a survey links those slurs to declining respect in the law.

As for the third concern, the court thought Pennsylvania's inclusion of socioeconomic and marital status as protected categories was "ridiculous."  JA112.  But thirty-six other U.S. jurisdictions disagree and reach one or both

categories. Add.5-27. Forty-six jurisdictions (including Pennsylvania) include such categories in their rules of judicial conduct. Add.30-104. This Court at any time could discipline counsel who harass opposing counsel or court personnel for how much money they make or their lack of a spouse under its inherent authority or as "conduct unbecoming a member of the bar of this Court." 3d Cir. R.A.D.E. 2.1(e).

The district court hypothesized that Rule 8.4(g) could prohibit commenting on colleagues' "cheap suits" or hosting couples-only events. JA112. That reasoning violated the "elementary rule … that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Stretton v. Disciplinary Bd.*, 944 F.2d 137, 144 (3d Cir. 1991) (citation omitted). These hypotheticals are not prohibited by Rule 8.4(g)'s plain text, much less a reading informed by constitutional avoidance. Even if the Rule covered the court's hypotheticals (it does not), the Rule's legitimate applications would dwarf any illegitimate ones.

### III.    Rule 8.4(g) Is Not Facially Vague

To prevail on his pre-enforcement facial vagueness challenge, Greenberg must show that the Rule is "impermissibly vague in *all* of its applications." *Interactive Media Ent. & Gaming Ass'n v. Att'y Gen.*, 580 F.3d 113, 116 (3d Cir. 2009) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)). A regulation is vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citation omitted). Vague laws typically require "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meaning." *Holder*, 561 U.S. at 20 (citation omitted). But "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id.* at 19 (citation omitted).

Courts consider the "sophisticated nature of the persons" regulated in evaluating fair notice. *United States v. Amirnazmi*, 645 F.3d 564, 591 (3d Cir. 2011) (citation omitted); *see Wilson*, 132 F.3d at 1430. Courts "must, of course, consider" States' "limiting construction[s]" in assessing vagueness. *Adams*

*Outdoor Advert. Ltd. P'ship v. Pa. DOT*, 930 F.3d 199, 205-06 (3d Cir. 2019) (quoting *Hoffman Estates*, 455 U.S. at 494 n.5). And on facial challenges, courts do not "speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). Under these principles, Rule 8.4(g) is not facially vague.

1.      Greenberg does not challenge as vague the Rule's basic prohibition against "conduct constituting harassment or discrimination." Instead, Greenberg brings a facial vagueness challenge to the nonbinding definitions of those terms in Rule 8.4(g)'s comments. JA347-50.

It is unclear if Greenberg's concession—"we wouldn't be here today" if Rule 8.4(g) was limited to client representations, JA379—applies to his vagueness challenge. If so, that challenge obviously fails. Rule 8.4(g) is not vague in the vast majority of its applications, much less all of them. Moreover, the same definitions could not be sufficiently clear in the courtroom but unconstitutionally ambiguous at CLEs.

Regardless, a law is vague when it is "without statutory definitions." *Holder*, 561 U.S. at 20 (citation omitted). Greenberg admits that Pennsylvania

can constitutionally sanction "[h]arassment and discrimination in legal proceedings" under Rule 8.4(d)'s ban on "conduct prejudicial to the administration of justice."  JA380.  If States can validly discipline attorneys for conduct constituting "harassment" or "discrimination" under that Rule, Rule 8.4(g) is not unconstitutional just because the State offers more detailed guidance on what conduct is prohibited.

The district court thus erred in assailing the comments as "unfamiliar and untenable" "made-up definitions that do not comport with the definitions of similar terms in similar contexts."  JA119, 121.  A rule is not vague just because its definitions differ from those applicable in other contexts such as criminal statutes or Title VII.  *Contra* JA119-20.  The relevant question in this facial challenge is whether no attorney of ordinary intelligence could have fair notice of *any* conduct that *this* Rule prohibits.

Moreover, Rule 8.4(g)'s definition of "harassment" is almost identical to the definition that thirty-five jurisdictions apply to state judges and that state judges, in turn, are required to apply to lawyers appearing before them.  Add.32-105.  No one has questioned that definition as beyond the comprehension of judges or lawyers.

More generally, Rule 8.4(g)'s definitions provide "narrowing context." *Holder*, 561 U.S. at 20 (citation omitted).  Both incorporate scienter requirements.  *Supra* pp. 54-55.  "[S]cienter requirements alleviate vagueness concerns." *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007); *accord Hill v. Colorado*, 530 U.S. 703, 732 (2000).  Furthermore, the definitions require conduct directed towards individuals.  *Supra* pp. 11-12, 19, 53-54.

Attorneys of ordinary intelligence surely understand what the Rule and its definitions "as a whole prohibit[]," *Hill*, 530 U.S. at 733 (citation omitted): Molesting women at bench-bar conferences.  Telling gay lawyers to sit in the back of the CLE room.  Telling jurors not to trust opposing counsel because they are black.  And so on.  No reasonably intelligent attorney engaging in such conduct should be remotely surprised to face discipline under Rule 8.4(g).

2.      It would be particularly perverse to strike Rule 8.4(g) as facially vague when the Rule is vastly more specific than many other attorney-conduct rules.  Attorney-conduct rules are necessarily broad because "it is difficult, if not impossible, to enumerate and define, with legal precision, every offence for which an attorney or counsellor ought to be removed." *Ex parte Secombe*, 60 U.S. 9, 14 (1857).

64

To take a few examples, a Pennsylvania attorney must "exercise independent professional judgment and render candid advice," Pa. R.P.C. 2.1; must not "engage in conduct intended to disrupt a tribunal," including "abusive or obstreperous conduct," *id.* 3.5(d) & cmt. [4]; and must not engage in "conduct that is prejudicial to the administration of justice," *id.* 8.4(d). U.S. district courts may sanction attorneys who file papers "for any improper purpose, such as to harass." Fed. R. Civ. P. 11(b)(1). And judges of this Court must "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Code of Conduct for U.S. Judges Canon 2A. Courts have routinely upheld more general professional-conduct rules against as-applied vagueness challenges. *E.g., Off. of Disciplinary Couns. v. Campbell*, 345 A.2d 616, 621-22 (Pa. 1975) (rules against conduct "prejudicial to the administration of justice" or adversely reflecting on fitness to practice law); *Grievance Adm'r v. Fieger*, 719 N.W.2d 123, 139 (Mich. 2006) (decorum and courtesy rules); *In re Anonymous,* 709 S.E.2d 633, 637 (S.C. 2011) (civility oath).

Rule 8.4(g) is more specific than other existing rules under which States and courts routinely discipline lawyers for harassment and discrimination.

Courts and disciplinary authorities have long sanctioned such conduct as "prejudicial to the administration of justice" under Rule 8.4(d). Pennsylvania sanctioned a lawyer who called a black judge a "ghetto mentality thug" in a brief. *Swift*, No. 158 DB 2005, slip op. at 29. The Second Circuit affirmed discipline against an attorney who sent a letter to a judge accusing the judge of bias based on his race. *MacDraw, Inc. v. CIT Grp. Equip. Fin.*, 138 F.3d 33, 38 (2d Cir. 1998).

Judges have been disciplined under analogous rules of judicial conduct. *E.g.*, *In re Barr*, 13 S.W.3d 525, 531 (Tex. Review Trib. 1998) (judge called female prosecutors "babes" and told one, "if you leave, all I'll have to look at all afternoon are swinging dicks"); *Gonzalez*, 657 P.2d at 382 (racist comments by judge, including, upon learning of black woman's miscarriage, stating, "Oh good, one less minority"); *In re Stevens*, 645 P.2d 99, 99-100 (Cal. 1982) (Kaus, J., concurring) (judge called counsel "Mexican jumping bean" in settlement conference and referred to Hispanic people as "cute little tamales" and black people as "jungle bunn[ies]" with court personnel).

Similar misconduct is already sanctionable under other broad rules. Under rules prohibiting undignified and discourteous conduct, a court sanctioned

a lawyer for accusing opposing counsel of "sheeny Hebrew tricks" in a deposition. *In re Williams*, 414 N.W.2d 394, 397 (Minn. 1987).  Under a rule prohibiting conduct adversely reflecting on fitness to practice law, another court sanctioned a prosecutor who called Hispanic defendants "chili-eating bastards." *People v. Sharpe*, 781 P.2d 659, 660-61 (Colo. 1989).  And a court invoked its analog to Federal Rule of Civil Procedure 11 to sanction a lawyer who called opposing counsel "little girl" and "little mouse."  *Principe*, 586 N.Y.S.2d at 184.  No reasonably intelligent attorney could fail to understand that Rule 8.4(g)'s ban on harassment and discrimination would prohibit similar conduct.

The above discussion refutes the district court's conclusion that Rule 8.4(g) "invite[s] arbitrary or discriminatory enforcement," JA121, and that the Rule's interpretation "will necessarily vary depending on the member of [the Office of Disciplinary Counsel] reviewing the complaint," JA122.  "[T]he exercise of some degree of … judgment" does not render a rule unconstitutionally vague.  *Hill*, 530 U.S. at 733 (citation omitted).  Even "extensive reliance" on enforcing officers' "judgment" "to give meaning" to a rule does not warrant facial invalidation.  *Hoffman Estates*, 455 U.S. at 503.  Greenberg identified

below no examples of arbitrary enforcement under other States' similar rules; this brief, by contrast, catalogs ample evidence that States appropriately sanction harassing and discriminatory conduct that nearly everyone would condemn.

3.    Greenberg complains that Rule 8.4(g)'s detailed terminology has "no settled usage or tradition of interpretation."  JA385 (quoting *Gentile*, 501 U.S. at 1049).  Again, that is simply untrue as to the harassment definition. Thirty-four jurisdictions apply materially identical standards to their judges. *Supra* p. 63.  Regardless, Pennsylvania should not be faulted for giving attorneys *more* guidance in detailed definitions.  Plenty of statutes contain detailed definitions with no "settled usage," but that alone does not render the statutes vague.  Otherwise, any law introducing new terminology would be void *ab initio*.

*Gentile*, which Greenberg invoked below, involved an as-applied vagueness challenge to a rule that permitted attorneys to discuss the "general" nature of a pending case without "elaboration."  501 U.S. at 1048.  Those "classic terms of degree" provided "insufficient guidance" to attorneys.  *Id.* at 1048-49. Attorneys, the Court concluded, "must guess at [the provision's] contours."

68

*Id.* at 1048.  Indeed, the challenger there spent  "several hours" researching the provision and guessed wrong.  *Id.* at 1044 (plurality op.).  No guessing is required here.

Greenberg also argued that rules other than Rule 8.4(g) (such as Rule 8.4(d)) are not vague because attorneys can "rely on 'guidance provided by case law, court rules, and the lore of profession.'"  JA385 (quoting *Howell v. State Bar of Tex.*, 843 F.2d 205, 208 (5th Cir. 1988)).  But Rule 8.4(g) is a court rule, and a defined one at that.  Moreover, the "lore of the profession" is what is "embodied in codes of professional conduct," *Snyder*, 472 U.S. at 645, including Rule 8.4(g).  In all events, caselaw is replete with examples of harassing and discriminatory behavior that reasonably intelligent attorneys would understand to be covered by Rule 8.4(g) and its definitions.  Rule 8.4(g) is no more problematic under the Due Process Clause than any other existing rule that can be invoked to reach harassing and discriminatory attorney behavior.

## CONCLUSION

The district court's decision should be reversed with instructions to dismiss the case for lack of standing or, alternatively, enter summary judgment for defendants.

Respectfully submitted,

 /s/ Lisa S. Blatt
LISA S. BLATT
  *Counsel of Record*
AMY MASON SAHARIA
AARON Z. ROPER
PETER S. JORGENSEN
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue SW*
  *Washington, DC 20024*
  *(202) 434-5000*
  *lblatt@wc.com*

Dated: September 6, 2022

ADDENDUM

# TABLE OF CONTENTS

Page

## **Attorney Rules of Professional Conduct**

Pennsylvania Rule of Professional Conduct 8.4(g) & cmts. [3]-[5] ........... Add.1

Former Pennsylvania Rule of Professional Conduct 8.4(g) & cmts. [3]-[4]
  (superseded July 26, 2021)........................................................................ Add.2

ABA Model Rule of Professional Conduct 8.4(g) &
  cmts. [3]-[5]................................................................................................ Add.3

Alaska Rule of Professional Conduct 8.4(f)-(g) .......................................... Add.4

Arizona Rule of Professional Conduct 8.4 cmt. [3] ..................................... Add.5

Arkansas Rule of Professional Conduct 8.4 cmt. [3] ................................... Add.6

California Rule of Professional Conduct 8.4.1 ............................................. Add.6

Colorado Rule of Professional Conduct 8.4(g), (i) ...................................... Add.8

Connecticut Rule of Professional Conduct 8.4(7) ....................................... Add.9

Delaware Rule of Professional Conduct 8.4 cmt. [3] ................................... Add.9

District of Columbia Rules of Professional Conduct
  Rule 8.4 cmt. [3] ....................................................................................... Add.10
  Rule 9.1 ..................................................................................................... Add.10

Florida Rule of Professional Conduct 4-8.4(d) ............................................ Add.10

Hawai'i Rule of Professional Conduct 8.4(h) ............................................... Add.11

Idaho Rules of Professional Conduct
  Rule 4.4(a)(1) ............................................................................................ Add.11
  Rule 8.4 cmt. [3] ....................................................................................... Add.12

Illinois Rule of Professional Conduct 8.4(j) & cmt. [3] .............................. Add.12

Indiana Rule of Professional Conduct 8.4(g) ............................................... Add.13

Iowa Rule of Professional Conduct 32:8.4(g) & cmt. [3] ........................... Add.13

Maine Rule of Professional Conduct 8.4(g) ................................................. Add.14

Maryland Rule of Professional Conduct 19-308.4(e) .................................. Add.15

Page

Massachusetts Rules of Professional Conduct
    3.4(i) ........................................................................... Add.15
    4.4(a) .......................................................................... Add.16

Michigan Rule of Professional Conduct 6.5(a) ........................... Add.16

Minnesota Rule of Professional Conduct 8.4(g)-(h) ................... Add.16

Missouri Rule of Professional Conduct 4-8.4(g) ......................... Add.17

Nebraska Rule of Professional Conduct 3-508.4(d) .................... Add.17

New Hampshire Rule of Professional Conduct 8.4(g) ............... Add.18

New Jersey Rule of Professional Conduct 8.4(g) ........................ Add.18

New Mexico Rule of Professional Conduct 16-804(G) .............. Add.19

New York Rule of Professional Conduct 8.4(g) ......................... Add.19

North Carolina Rule of Professional Conduct 8.4 cmt. [5] ....... Add.20

North Dakota Rule of Professional Conduct 8.4(f) .................... Add.20

Ohio Rule of Professional Conduct 8.4(g) .................................. Add.21

Oregon Rule of Professional Conduct 8.4(a)(7) .......................... Add.21

Rhode Island Rule of Professional Conduct 8.4(d) .................... Add.21

South Carolina Rule of Professional Conduct 8.4 cmt. [3] ....... Add.22

South Dakota Rule of Professional Conduct 8.4 cmt. [3] .......... Add.22

Tennessee Rule of Professional Conduct 8.4 cmt. [3] ............... Add.23

Texas Rule of Professional Conduct 5.08 ................................... Add.23

Utah Rule of Professional Conduct 8.4 cmt. [3] ........................ Add.24

Vermont Rule of Professional Conduct 8.4(g) ........................... Add.24

Washington Rule of Professional Conduct 8.4(g)-(h) ............... Add.25

West Virginia Rule of Professional Conduct 8.4 cmt. [3] ......... Add.25

Wisconsin Rule of Professional Conduct 8.4(i) .......................... Add.26

Wyoming Rule of Professional Conduct 8.4 cmt. [3] ................ Add.26

American Samoa High Ct. Rule 104 ........................................... Add.27

Page

Northern Mariana Islands Rule of Attorney Discipline &
   Procedure 3(1) ................................................................. Add.27

U.S. Virgin Islands Supreme Ct. Rule 203(a) ........................... Add.27

**<u>Codes of Judicial Conduct</u>**

Code of Conduct for United States Judges Canon 3 & cmt. .................. Add.28

ABA Model Code of Judicial Conduct
   Rule 2.3 & cmt. ............................................................ Add.28
   Rule 3.1 cmt. [3] .......................................................... Add.30

Alaska Code of Judicial Conduct
   Canon 3 ..................................................................... Add.30
   Canon 4 cmt. ............................................................... Add.31

Arizona Code of Judicial Conduct
   Rule 2.3 & cmt. ............................................................ Add.32
   Rule 3.1 cmt. 3 ............................................................ Add.33

Arkansas Code of Judicial Conduct
   Rule 2.3 & cmt. ............................................................ Add.33
   Rule 3.1 cmt. [3] .......................................................... Add.34

California Code of Judicial Ethics
   Canon 3 ..................................................................... Add.35
   Canon 4 cmt. ............................................................... Add.36

Colorado Code of Judicial Conduct
   Rule 2.3 & cmt. ............................................................ Add.36
   Rule 3.1 cmt. [3] .......................................................... Add.38

Connecticut Code of Judicial Conduct
   Rule 2.3 & cmt. ............................................................ Add.38
   Rule 3.1 cmt. (3) .......................................................... Add.39

Delaware Judges' Code of Judicial Conduct
   Rule 2.3 & cmt. ............................................................ Add.40
   Rule 2.8 & cmt. ............................................................ Add.40

District of Columbia Code of Judicial Conduct
   Rule 2.3 & cmt. ........................................................... Add.41
   Rule 3.1 cmt. [3] .......................................................... Add.42

Page

Florida Code of Judicial Conduct
    Canon 3 .................................................................... Add.42
    Canon 5 cmt. ............................................................. Add.43

Georgia Code of Judicial Conduct Rule 2.3 & cmt. [5] ............................ Add.44

Hawaiʻi Code of Judicial Conduct
    Rule 2.3 & cmt. .......................................................... Add.45
    Rule 3.1 cmt. [3] ........................................................ Add.46

Idaho Code of Judicial Conduct
    Rule 2.3 & cmt. .......................................................... Add.47
    Rule 3.1 cmt. [3] ........................................................ Add.48

Illinois Code of Judicial Conduct
    Rule 2.3 & cmt. .......................................................... Add.48
    Rule 3.1 cmt. [3] ........................................................ Add.50

Indiana Code of Judicial Conduct
    Rule 2.3 & cmt. .......................................................... Add.50
    Rule 3.1 cmt. [3] ........................................................ Add.51

Iowa Code of Judicial Conduct
    Rule 51:2.3 & cmt. ....................................................... Add.52
    Rule 51:3.1 cmt. [3] ..................................................... Add.53

Kansas Rules Relating to Judicial Conduct
    Rule 2.3 & cmt. .......................................................... Add.53
    Rule 3.1 cmt. [3] ........................................................ Add.55

Kentucky Code of Judicial Conduct
    Rule 2.3 & cmt. .......................................................... Add.55
    Rule 3.1 cmt. [3] ........................................................ Add.56

Louisiana Code of Judicial Conduct Canon 3 ................................. Add.57

Maine Code of Judicial Conduct Rule 2.3 ................................... Add.58

Maryland Code of Judicial Conduct
    Rule 18-102.3 & cmt. ..................................................... Add.58
    Rule 18-103.1 cmt. [3] ................................................... Add.59

Page

Massachusetts Code of Judicial Conduct
    Rule 2.3 & cmt............................................................................ Add.60
    Rule 3.1 cmt. [3] ...................................................................... Add.61

Michigan Code of Judicial Conduct
    Canon 2 .................................................................................... Add.61
    Canon 3 .................................................................................... Add.62

Minnesota Code of Judicial Conduct
    Rule 2.3 & cmt............................................................................ Add.62
    Rule 3.1 cmt. [3] ...................................................................... Add.63

Mississippi Code of Judicial Conduct Canon 3........................................ Add.64

Missouri Code of Judicial Conduct Rule 2-2.3 & cmt. .............................. Add.65

Montana Code of Judicial Conduct
    Rule 2.3 .................................................................................... Add.66
    Rule 3.1 cmt. [3] ...................................................................... Add.67

Nebraska Revised Code of Judicial Conduct
    § 5-302.3 & cmt. ...................................................................... Add.68
    § 5-303.1 cmt. [3] .................................................................... Add.69

Revised Nevada Code of Judicial Conduct
    Rule 2.3 & cmt............................................................................ Add.69
    Rule 3.1 cmt. [3] ...................................................................... Add.71

New Hampshire Code of Judicial Conduct
    Rule 2.3 & cmt............................................................................ Add.71
    Rule 3.1 cmt. [3] ...................................................................... Add.72

New Jersey Code of Judicial Conduct
    Rule 3.6 .................................................................................... Add.73
    Rule 3.13 .................................................................................. Add.74
    Rule 3.14 .................................................................................. Add.74

New Mexico Code of Judicial Conduct
    Rule 21-203 & cmt..................................................................... Add.74
    Rule 21-301 cmt. [3] ................................................................ Add.76

New York Code of Judicial Conduct § 100.3 & cmt. ................................. Add.76

Page

North Dakota Code of Judicial Conduct
    Rule 2.3 & cmt .................................................................. Add.78
    Rule 3.1 cmt. [3]. ............................................................. Add.79

Ohio Code of Judicial Conduct
    Rule 2.3 & cmt. ................................................................ Add.79
    Rule 3.1 cmt. [3] .............................................................. Add.81

Oklahoma Code of Judicial Conduct
    Rule 2.3 & cmt. ................................................................ Add.81
    Rule 3.1 cmt. [3] .............................................................. Add.82

Oregon Code of Judicial Conduct Rule 3.3 ............................... Add.83

Pennsylvania Code of Judicial Conduct
    Rule 2.3 & cmt. ................................................................ Add.83
    Rule 3.1 cmt. (3) .............................................................. Add.85

Rhode Island Code of Judicial Conduct
    Rule 2.3 & cmt. ................................................................ Add.85
    Rule 3.1 cmt. [3] .............................................................. Add.86

South Carolina Code of Judicial Conduct
    Canon 3 & cmt. ................................................................ Add.87
    Canon 4 cmt. .................................................................... Add.88

South Dakota Code of Judicial Conduct
    Canon 3 & cmt. B(6) ....................................................... Add.88
    Canon 4A cmt. ................................................................. Add.90

Tennessee Code of Judicial Conduct
    Rule 2.3 & cmt. ................................................................ Add.90
    Rule 3.1 cmt. [3] .............................................................. Add.91

Texas Code of Judicial Conduct Canon 3 ................................. Add.92

Utah Code of Judicial Conduct
    Rule 2.3 & cmt. ................................................................ Add.92
    Rule 3.1 cmt. [3] .............................................................. Add.94

Vermont Code of Judicial Conduct
    Rule 2.3 & cmt. ................................................................ Add.94
    Rule 3.1 cmt. [3] .............................................................. Add.95

Page

Virginia Canons of Judicial Conduct
    Canon 1H ................................................................. Add.96
    Canon 2R ................................................................. Add.96

Washington Code of Judicial Conduct
    Rule 2.3 & cmt. ........................................................ Add.96
    Rule 3.1 cmt. [2] ...................................................... Add.98

West Virginia Code of Judicial Conduct
    Rule 2.3 & cmt. ........................................................ Add.98
    Rule 3.1 cmt. [4] ...................................................... Add.99

Wisconsin Code of Judicial Conduct
    Rule 60.04 & cmt. ................................................... Add.100
    Rule 60.05 cmt. ...................................................... Add.101

Wyoming Code of Judicial Conduct
    Rule 2.3 & cmt. ...................................................... Add.101
    Rule 3.1 cmt. [3] .................................................... Add.103

American Samoa High Ct. Rule 103 .................................... Add.103

7 Guam Code Ann. § 6103 ............................................. Add.103

U.S. Virgin Islands Code of Judicial Conduct
    Rule 213.2.3 & cmt. ................................................. Add.103
    Rule 213.3.1 cmt. [3] .............................................. Add.105

# ATTORNEY RULES OF PROFESSIONAL CONDUCT

## Pennsylvania Rules of Professional Conduct

## Rule 8.4.  Misconduct.

It is professional misconduct for a lawyer to:

\*       \*       \*

(g)    in the practice of law, knowingly engage in conduct constituting harassment or discrimination based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, or socioeconomic status.  This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16.  This paragraph does not preclude advice or advocacy consistent with these Rules.

Comment:

\*       \*       \*

[3]    For the purposes of paragraph (g), conduct in the practice of law includes (i) interacting with witnesses, coworkers, court personnel, lawyers, or others, while appearing in proceedings before a tribunal or in connection with the representation of a client; (ii) operating or managing a law firm or law practice; or (iii) participation in judicial boards, conferences, or committees, continuing legal education seminars, bench bar conferences, and bar association activities where legal education credits are offered.  The term "the practice of law" does not include speeches, communications, debates, presentations, or publications given or published outside the contexts described in (i)-(iii).

[4]    "Harassment" means conduct that is intended to intimidate, denigrate or show hostility or aversion toward a person on any of the bases set forth in this rule.  Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other conduct of a sexual nature that is unwelcome.

[5]    "Discrimination" means conduct that a lawyer knows manifests an intention:  to treat a person as inferior based on one or more of the characteristics listed in paragraph (g); to disregard relevant considerations of individual characteristics or merit because of one or more of the listed

characteristics; or to cause or attempt to cause interference with the fair administration of justice based on one or more of the listed characteristics.

## Former Pennsylvania Rules of Professional Conduct (superseded July 26, 2021)

### Rule 8.4.  Misconduct.

It is professional misconduct for a lawyer to:

\*     \*     \*

(g)    in the practice of law, by words or conduct, knowingly manifest bias or prejudice, or engage in harassment or discrimination, as those terms are defined in applicable federal, state or local statutes or ordinances, including but not limited to bias, prejudice, harassment or discrimination based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, or socioeconomic status.  This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16.  This paragraph does not preclude advice or advocacy consistent with these Rules.

\*     \*     \*

Comment:

\*     \*     \*

[3]    For the purposes of paragraph (g), conduct in the practice of law includes participation in activities that are required for a lawyer to practice law, including but not limited to continuing legal education seminars, bench bar conferences and bar association activities where legal education credits are offered.

[4]    The substantive law of antidiscrimination and anti-harassment statutes and case law guide application of paragraph (g) and clarify the scope of the prohibited conduct.

\*     \*     \*

## American Bar Association Model Rules of Professional Conduct

## Rule 8.4.  Misconduct.

It is professional misconduct for a lawyer to:

\*    \*    \*

(g)    engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16.  This paragraph does not preclude legitimate advice or advocacy consistent with these Rules.

Comment:

\*    \*    \*

[3]    Discrimination and harassment by lawyers in violation of paragraph (g) undermine confidence in the legal profession and the legal system.  Such discrimination includes harmful verbal or physical conduct that manifests bias or prejudice towards others.  Harassment includes sexual harassment and derogatory or demeaning verbal or physical conduct.  Sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other unwelcome verbal or physical conduct of a sexual nature.  The substantive law of antidiscrimination and anti-harassment statutes and case law may guide application of paragraph (g).

[4]    Conduct related to the practice of law includes representing clients; interacting with witnesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and participating in bar association, business or social activities in connection with the practice of law. Lawyers may engage in conduct undertaken to promote diversity and inclusion without violating this Rule by, for example, implementing initiatives aimed at recruiting, hiring, retaining and advancing diverse employees or sponsoring diverse law student organizations.

[5]    A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of paragraph (g). A lawyer does not violate paragraph (g) by limiting the scope or subject matter of the lawyer's practice or by limiting the lawyer's practice to members of

underserved populations in accordance with these Rules and other law. A lawyer may charge and collect reasonable fees and expenses for a representation. Rule 1.5(a). Lawyers also should be mindful of their professional obligations under Rule 6.1 to provide legal services to those who are unable to pay, and their obligation under Rule 6.2 not to avoid appointments from a tribunal except for good cause. See Rule 6.2(a), (b) and (c). A lawyer's representation of a client does not constitute an endorsement by the lawyer of the client's views or activities. See Rule 1.2(b).

\*    \*    \*

## Alaska Rules of Professional Conduct

**Rule 8.4.  Misconduct.**

It is professional misconduct for a lawyer to:

\*    \*    \*

(f)    engage in conduct that the lawyer knows is harassment or invidious discrimination during the lawyer's professional relations with (1) officers or employees of a tribunal; (2) lawyers, paralegals, and others working for other law firms; (3) parties, regardless of whether they are represented by counsel; (4) witnesses; or (5) seated jurors.

In addition, it is professional misconduct for a lawyer to knowingly engage in harassment or invidious discrimination in the lawyer's dealings with the lawyers, paralegals, and others working for that lawyer or for that lawyer's law firm, if the lawyer's conduct results in a final agency or judicial determination of employment misconduct or discrimination.

This rule does not prohibit a lawyer from engaging in legitimate counseling or advocacy when a person's membership in a protected class is material. This rule does not limit the ability of a lawyer to accept or decline representation in any matter. Nor does it limit the ability of a lawyer to withdraw from a representation in accordance with Rule 1.16.

(g)    For purposes of paragraph (f):

(1)    "Harassment" means unwelcome conduct, whether verbal or physical, that has no reasonable relation to a legitimate purpose and is so severe or sustained that a reasonable person would consider the conduct intimidating or abusive.

Add.4

(2)   "Invidious discrimination" means unequal treatment of a person because of their membership in a protected class when that unequal treatment has no reasonable relation to a legitimate purpose.

(3)   "Protected class" refers to a person's race, color, sex, gender identity, sexual orientation, religion, ethnicity or national origin, disability, age, marital status, pregnancy or parenthood, or status as a veteran.

(4)   "Witness" includes any person who is contacted in connection with a matter because that person may have knowledge or information pertinent to the matter.

## Arizona Rules of Professional Conduct

### Rule 8.4.  Misconduct.

*       *       *

Comment:

*       *       *

[3]    A lawyer who in the course of representing a client, knowingly manifests by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, gender identity or socioeconomic status, violates paragraph (d) when such actions are prejudicial to the administration of justice.  This does not preclude legitimate advocacy when race, sex, religion, national origin, disability, age, sexual orientation, gender identity or socioeconomic status, or other similar factors, are issues in the proceeding.  A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of this Rule.

*       *       *

## Arkansas Rules of Professional Conduct

**Rule 8.4.  Misconduct.**

*    *    *

Comment:

*    *    *

[3]    Subdivision (d) of this rule proscribes conduct that is prejudicial to the administration of justice.  Such proscription includes the prohibition against discriminatory conduct committed by a lawyer while performing duties in connection with the practice of law.  The proscription extends to any characteristic or status that is not relevant to the proof of any legal or factual issue in dispute.  Such discriminatory conduct, when directed towards litigants, jurors, witnesses, other lawyers, or the court, including race, sex, religion, national origin, or any other similar factors, subverts the administration of justice and undermines the public's confidence in our system of justice, as well as notions of equality.  Legitimate advocacy respecting the foregoing factors does not violate paragraph (d).  A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of this rule.  This subdivision does not prohibit a lawyer from representing a client accused of committing discriminatory conduct.

*    *    *

## California Rules of Professional Conduct

**Rule 8.4.1.  Prohibited Discrimination, Harassment and Retaliation.**

(a)    In representing a client, or in terminating or refusing to accept the representation of any client, a lawyer shall not:

    (1)    unlawfully harass or unlawfully discriminate against persons on the basis of any protected characteristic; or

    (2)    unlawfully retaliate against persons.

(b)    In relation to a law firm's operations, a lawyer shall not:

    (1)    on the basis of any protected characteristic,

        (i)    unlawfully discriminate or knowingly permit unlawful discrimination;

Add.6

(ii)    unlawfully harass or knowingly permit the unlawful harassment of an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract; or

(iii)    unlawfully refuse to hire or employ a person, or refuse to select a person for a training program leading to employment, or bar or discharge a person from employment or from a training program leading to employment, or discriminate against a person in compensation or in terms, conditions, or privileges of employment; or

(2)    unlawfully retaliate against persons.

(c)    For purposes of this rule:

(1)    "protected characteristic" means race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, sexual orientation, age, military and veteran status, or other category of discrimination prohibited by applicable law, whether the category is actual or perceived;

(2)    "knowingly permit" means to fail to advocate corrective action where the lawyer knows of a discriminatory policy or practice that results in the unlawful discrimination or harassment prohibited by paragraph (b);

(3)    "unlawfully" and "unlawful" shall be determined by reference to applicable state and federal statutes and decisions making unlawful discrimination or harassment in employment and in offering goods and services to the public; and

(4)    "retaliate" means to take adverse action against a person because that person has (i) opposed, or (ii) pursued, participated in, or assisted any action alleging, any conduct prohibited by paragraphs (a)(1) or (b)(1) of this rule.

(d)    A lawyer who is the subject of a State Bar investigation or State Bar Court proceeding alleging a violation of this rule shall promptly notify the State Bar of any criminal, civil, or administrative action premised,

whether in whole or part, on the same conduct that is the subject of the State Bar investigation or State Bar Court proceeding.

(e)    Upon being issued a notice of a disciplinary charge under this rule, a lawyer shall:

(1)    if the notice is of a disciplinary charge under paragraph (a) of this rule, provide a copy of the notice to the California Department of Fair Employment and Housing and the United States Department of Justice, Coordination and Review Section; or

(2)    if the notice is of a disciplinary charge under paragraph (b) of this rule, provide a copy of the notice to the California Department of Fair Employment and Housing and the United States Equal Employment Opportunity Commission.

(f)    This rule shall not preclude a lawyer from:

(1)    representing a client alleged to have engaged in unlawful discrimination, harassment, or retaliation;

(2)    declining or withdrawing from a representation as required or permitted by rule 1.16; or

(3)    providing advice and engaging in advocacy as otherwise required or permitted by these rules and the State Bar Act.

## Colorado Rules of Professional Conduct

**Rule** 8.4.  **Misconduct.**

It is professional misconduct for a lawyer to:

*        *        *

(g)    engage in conduct, in the representation of a client, that exhibits or is intended to appeal to or engender bias against a person on account of that person's race, gender, religion, national origin, disability, age, sexual orientation, or socioeconomic status, whether that conduct is directed to other counsel, court personnel, witnesses, parties, judges, judicial officers, or any persons involved in the legal process; [or]

*        *        *

(i)    engage in conduct the lawyer knows or reasonably should know constitutes sexual harassment where the conduct occurs in connection with the lawyer's professional activities.

## Connecticut Rules of Professional Conduct

**Rule 8.4.  Misconduct.**

It is professional misconduct for a lawyer to:

\*        \*        \*

(7)    Engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, color, ancestry, sex, pregnancy, religion, national origin, ethnicity, disability, status as a veteran, age, sexual orientation, gender identity, gender expression or marital status in conduct related to the practice of law.  This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation, or to provide advice, assistance or advocacy consistent with these Rules.

## Delaware Rules of Professional Conduct

**Rule 8.4.  Misconduct.**

\*        \*        \*

Comment:

\*        \*        \*

[3]    A lawyer who, in the course of representing a client, knowingly manifests by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, violates paragraph (d) when such actions are prejudicial to the administration of justice.  Legitimate advocacy respecting the foregoing factors does not violate paragraph (d).  A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of this rule.

\*        \*        \*

## District of Columbia Rules of Professional Conduct

### Rule 8.4.  Misconduct.

*       *       *

Comment:

*       *       *

[3]     A lawyer violates paragraph (d) by offensive, abusive, or harassing conduct that seriously interferes with the administration of justice. Such conduct may include words or actions that manifest bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status.

### Rule 9.1.  Discrimination in Employment.

A lawyer shall not discriminate against any individual in conditions of employment because of the individual's race, color, religion, national origin, sex, age, marital status, sexual orientation, family responsibility, or physical handicap.

## Florida Rules of Professional Conduct

### Rule 4-8.4.  Misconduct.

A lawyer shall not:

*       *       *

(d)     engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic[.]

*       *       *

## Hawaiʻi Rules of Professional Conduct

## Rule 8.4.  Misconduct.

\*      \*      \*

(h)    In a professional capacity, a lawyer shall not engage in sexual harassment.

"Professional capacity" under this Rule means acts, including communications, occurring in

    (1)    the course of a client representation;

    (2)    interactions with coworkers, court personnel, jurors, and witnesses;

    (3)    the operation or management of a law firm, law practice, or organization with which the lawyer is employed, including acts at events sponsored by the law firm, law practice, or organization; and/or

    (4)    bar association, bar organization, legal education conferences or events.

"Sexual harassment" under this Rule means unwelcome sexual advances, requests for sexual favors, and/or other verbal or physical harassment of a sexual nature which a reasonable lawyer would know are offensive.

## Idaho Rules of Professional Conduct

## Rule 4.4.  Respect for Rights of Third Persons.

(a)    In representing a client, a lawyer shall not:

    (1)    use means that have no substantial purpose other than to embarrass, delay, or burden a third person, including conduct intended to appeal to or engender bias against a person on account of that person's gender, race, religion, national origin, or sexual preference, whether that bias is directed to other counsel, court personnel, witnesses, parties, jurors, judges, judicial officers, or any other participants[.]

\*      \*      \*

Add.11

**Rule 8.4.  Misconduct.**

\*      \*      \*

Commentary:

\*      \*      \*

[3]    A lawyer who, in the course of representing a client, knowingly manifests by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, violates paragraph (d) when such actions are prejudicial to the administration of justice.  Legitimate advocacy respecting the foregoing factors does not violate paragraph (d).  A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of this rule.

\*      \*      \*

**<u>Illinois Rules of Professional Conduct</u>**

**Rule 8.4.  Misconduct.**

It is professional misconduct for a lawyer to:

\*      \*      \*

(j)    violate a federal, state or local statute or ordinance including, but not limited to, the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.*) that prohibits discrimination based on race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status by conduct that reflects adversely on the lawyer's fitness as a lawyer.  Whether a discriminatory act reflects adversely on a lawyer's fitness as a lawyer shall be determined after consideration of all the circumstances, including:  the seriousness of the act; whether the lawyer knew that the act was prohibited by statute or ordinance; whether the act was part of a pattern of prohibited conduct; and whether the act was committed in connection with the lawyer's professional activities.  No charge of professional misconduct may be brought pursuant to this paragraph until a court or administrative agency of competent jurisdiction has found that the lawyer has engaged in an unlawful discriminatory act, and the finding of the court or administrative agency has become final and enforceable and any right of judicial review has been exhausted.

Add.12

\*    \*    \*

Comment:

\*    \*    \*

[3]    A lawyer who, in the course of representing a client, knowingly manifests by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, violates paragraph (d) when such actions are prejudicial to the administration of justice.  Legitimate advocacy respecting the foregoing factors does not violate paragraph (d).  A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of this Rule.

\*    \*    \*

## Indiana Rules of Professional Conduct

### Rule 8.4.  Misconduct.

It is professional misconduct for a lawyer to:

\*    \*    \*

(g)    engage in conduct, in a professional capacity, manifesting, by words or conduct, bias or prejudice based upon race, gender, religion, national origin, disability, sexual orientation, age, socioeconomic status, or similar factors.  Legitimate advocacy respecting the foregoing factors does not violate this subsection.  A trial judge's finding that preemptory challenges were exercised on a discriminatory basis does not alone establish a violation of this Rule.

## Iowa Rules of Professional Conduct

### Rule 32:8.4.  Misconduct.

It is professional misconduct for a lawyer to:

\*    \*    \*

(g)    engage in sexual harassment or other unlawful discrimination in the practice of law or knowingly permit staff or agents subject to the lawyer's direction and control to do so.

Add.13

Comment:

\*    \*    \*

[3]    A lawyer who, in the course of representing a client, knowingly manifests, by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, violates paragraph (d) when such actions are prejudicial to the administration of justice.  Legitimate advocacy respecting the foregoing factors does not violate paragraph (d).  A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of this rule.  For another reference to discrimination as professional misconduct, see paragraph (g).

\*    \*    \*

## Maine Rules of Professional Conduct

### Rule 8.4.  Misconduct.

It is professional misconduct for a lawyer to:

\*    \*    \*

(g)    engage in conduct or communication related to the practice of law that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, or gender identity.

(1)    "Discrimination" on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, or gender identity as used in this section means conduct or communication that a lawyer knows or reasonably should know manifests an intention: to treat a person as inferior based on one or more of the characteristics listed in this paragraph; to disregard relevant considerations of individual characteristics or merit because of one or more of the listed characteristics; or to cause or attempt to cause interference with the fair administration of justice based on one or more of the listed characteristics.

(2)    "Harassment" on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, or gender identity as used in this section means derogatory or demeaning conduct or

Add.14

communication and includes, but is not limited to, unwelcome sexual advances, or other conduct or communication unwelcome due to its implicit or explicit sexual content.

(3)    "Related to the practice of law" as used in the section means occurring in the course of representing clients; interacting with witnesses, coworkers, court personnel, lawyers, and others while engaged in the practice of law; or operating or managing a law firm or law practice.

(4)    Declining representation, limiting one's practice to particular clients or types of clients, and advocacy of policy positions or changes in the law are not regulated by Rule 8.4(g).

## Maryland Rules of Professional Conduct

### Rule 19-308.4.  Misconduct.

It is professional misconduct for an attorney to:

\*        \*        \*

(e)    knowingly manifest by words or conduct when acting in a professional capacity bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status when such action is prejudicial to the administration of justice, provided, however, that legitimate advocacy is not a violation of this section[.]

\*        \*        \*

## Massachusetts Rules of Professional Conduct (effective October 1, 2022)

### Rule 3.4.  Fairness to Opposing Party and Counsel.

A lawyer shall not:

\*        \*        \*

(i)    in appearing in a professional capacity before a tribunal, engage in conduct manifesting bias or prejudice based on race, sex, religion, national origin, disability, age, or sexual orientation against a party, witness, counsel, or other person.  This paragraph does not preclude legitimate advocacy when race, sex, religion, national origin, disability, age, or sexual orientation, or another similar factor is an issue in the proceeding.

**Rule 4.4.  Respect for the Rights of Third Persons.**

(a)    In representing a client, a lawyer shall not

(1)    use means that have no substantial purpose other than to embarrass, harass, delay, or burden a third person,

(2)    use methods of obtaining evidence that violate the legal rights of such a person, or (3) engage in conduct that manifests bias or prejudice against such a person based on race, sex, marital status, religion, national origin, disability, age, sexual orientation, or gender identity.  This clause (3) does not preclude legitimate advice or advocacy otherwise consistent with these Rules.

\*        \*        \*

## Michigan Rules of Professional Conduct

**Rule 6.5.  Professional Conduct.**

(a)    A lawyer shall treat with courtesy and respect all persons involved in the legal process.  A lawyer shall take particular care to avoid treating such a person discourteously or disrespectfully because of the person's race, gender, or other protected personal characteristic.  To the extent possible, a lawyer shall require subordinate lawyers and nonlawyer assistants to provide such courteous and respectful treatment.

\*        \*        \*

## Minnesota Rules of Professional Conduct

**Rule 8.4.  Misconduct.**

It is professional misconduct for a lawyer to:

\*        \*        \*

(g)    harass a person on the basis of sex, race, age, creed, religion, color, national origin, disability, sexual orientation, status with regard to public assistance, ethnicity, or marital status in connection with a lawyer's professional activities;

(h)    commit a discriminatory act, prohibited by federal, state, or local statute or ordinance that reflects adversely on the lawyer's fitness as a lawyer.

Whether a discriminatory act reflects adversely on a lawyer's fitness as a lawyer shall be determined after consideration of all the circumstances, including:

(1)    the seriousness of the act;

(2)    whether the lawyer knew that the act was prohibited by statute or ordinance;

(3)    whether the act was part of a pattern of prohibited conduct; and

(4)    whether the act was committed in connection with the lawyer's professional activities[.]

\*        \*        \*

## Missouri Rules of Professional Conduct

### Rule 4-8.4.  Misconduct.

It is professional misconduct for a lawyer to:

\*        \*        \*

(g)    manifest by words or conduct, in representing a client, bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, gender identity, religion, national origin, ethnicity, disability, age, sexual orientation, or marital status.  This Rule 4-8.4(g) does not preclude legitimate advocacy when race, sex, gender, gender identity, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, or other similar factors, are issues.  This paragraph does not limit the ability of a lawyer to accept, decline, or withdraw from a representation in accordance with Rule 4-1.16.

## Nebraska Rules of Professional Conduct

### Rule 3-508.4.  Misconduct.

It is professional misconduct for a lawyer to:

\*        \*        \*

(d)    engage in conduct that is prejudicial to the administration of justice.  Once a lawyer is employed in a professional capacity, the lawyer shall not, in the course of such employment, engage in adverse discriminatory

treatment of litigants, witnesses, lawyers, judges, judicial officers or court personnel on the basis of the person's race, national origin, gender, religion, disability, age, sexual orientation or socio-economic status. This subsection does not preclude legitimate advocacy when these factors are issues in a proceeding.

\*    \*    \*

## New Hampshire Rules of Professional Conduct

### Rule 8.4. Misconduct.

It is professional misconduct for a lawyer to:

\*    \*    \*

(g)    take any action, while acting as a lawyer in any context, if the lawyer knows or it is obvious that the action has the primary purpose to embarrass, harass or burden another person, including conduct motivated by animus against the other person based upon the other person's race, sex, religion, national origin, ethnicity, physical or mental disability, age, sexual orientation, marital status or gender identity. This paragraph shall not limit the ability of the lawyer to accept, decline, or withdraw from representation consistent with other Rules of Professional Conduct, nor does it preclude a lawyer from engaging in conduct or speech or from maintaining associations that are constitutionally protected, including advocacy on matters of public policy, the exercise of religion, or a lawyer's right to advocate for a client.

## New Jersey Rules of Professional Conduct

### Rule 8.4. Misconduct.

It is professional misconduct for a lawyer to:

\*    \*    \*

(g)    engage, in a professional capacity, in conduct involving discrimination (except employment discrimination unless resulting in a final agency or judicial determination) because of race, color, religion, age, sex, sexual orientation, national origin, language, marital status, socioeconomic status, or handicap where the conduct is intended or likely to cause harm.

## New Mexico Rules of Professional Conduct

### Rule 16-804.  Misconduct.

It is professional misconduct for a lawyer to:

\*     \*     \*

G.    engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, or marital status in conduct related to the practice of law.  This paragraph does not limit the ability of a lawyer to accept, decline, or withdraw from a representation in accordance with Rule 16-116 NMRA.  This paragraph does not preclude legitimate advice or advocacy consistent with these rules.

## New York Rules of Professional Conduct

### Rule 8.4.  Misconduct.

A lawyer or law firm shall not:

\*     \*     \*

(g)    unlawfully discriminate in the practice of law, including in hiring, promoting or otherwise determining conditions of employment on the basis of age, race, creed, color, national origin, sex, disability, marital status, sexual orientation, gender identity, or gender expression.  Where there is a tribunal with jurisdiction to hear a complaint, if timely brought, other than a Departmental Disciplinary Committee, a complaint based on unlawful discrimination shall be brought before such tribunal in the first instance.  A certified copy of a determination by such a tribunal, which has become final and enforceable and as to which the right to judicial or appellate review has been exhausted, finding that the lawyer has engaged in an unlawful discriminatory practice shall constitute prima facie evidence of professional misconduct in a disciplinary proceeding[.]

\*     \*     \*

## North Carolina Rules of Professional Conduct

### Rule 8.4.  Misconduct.

*     *     *

Comment:

*     *     *

[5]     Threats, bullying, harassment, and other conduct serving no substantial purpose other than to intimidate, humiliate, or embarrass anyone associated with the judicial process including judges, opposing counsel, litigants, witnesses, or court personnel violate the prohibition on conduct prejudicial to the administration of justice.  When directed to opposing counsel, such conduct tends to impede opposing counsel's ability to represent his or her client effectively.  Comments "by one lawyer tending to disparage the personality or performance of another … tend to reduce public trust and confidence in our courts and, in more extreme cases, directly interfere with the truth-finding function by distracting judges and juries from the serious business at hand."  State v. Rivera, 350 N.C. 285, 291, 514 S.E.2d 720, 723 (1999).  See Rule 3.5, cmt. [10] and Rule 4.4, cmt. [2].

*     *     *


## North Dakota Rules of Professional Conduct

### Rule 8.4.  Misconduct.

It is professional misconduct for a lawyer to:

*     *     *

(f)     engage in conduct that is prejudicial to the administration of justice, including to knowingly manifest through words or conduct in the course of representing a client, bias or prejudice based upon race, sex, religion, national origin, disability, age, or sexual orientation, against parties, witnesses, counsel, or others, except when those words or conduct are legitimate advocacy because race, sex, religion, national origin, disability, age, or sexual orientation is an issue in the proceeding[.]

*     *     *

Add.20

## Ohio Rules of Professional Conduct

**Rule 8.4.  Misconduct.**

It is professional misconduct for a lawyer to do any of the following:

*        *        *

(g)    engage, in a professional capacity, in conduct involving discrimination prohibited by law because of race, color, religion, age, gender, sexual orientation, national origin, marital status, or disability[.]

*        *        *

## Oregon Rules of Professional Conduct

**Rule 8.4.  Misconduct.**

(a)    It is professional misconduct for a lawyer to:

*        *        *

(7)    in the course of representing a client, knowingly intimidate or harass a person because of that person's race, color, national origin, religion, age, sex, gender identity, gender expression, sexual orientation, marital status, or disability.

*        *        *

## Rhode Island Rules of Professional Conduct

**Rule 8.4.  Misconduct.**

It is professional misconduct for a lawyer to:

*        *        *

(d)    engage in conduct that is prejudicial to the administration of justice, including but not limited to, harmful or discriminatory treatment of litigants, jurors, witnesses, lawyers, and others based on race, national origin, gender, religion, disability, age, sexual orientation or socioeconomic status[.]

## South Carolina Rules of Professional Conduct

**Rule** 8.4.  **Misconduct.**

*　　*　　*

Comment:

*　　*　　*

[3]    A lawyer who, in the course of representing a client, knowingly manifests by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, violates paragraph (e) when such actions are prejudicial to the administration of justice.  Legitimate advocacy respecting the foregoing factors does not violate paragraph (e).  A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of this rule.

*　　*　　*

## South Dakota Rules of Professional Conduct

**Rule** 8.4.  **Misconduct.**

*　　*　　*

Comment:

*　　*　　*

[3]    A lawyer who, in the course of representing a client, knowingly manifests by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, violates paragraph (d) when such actions are prejudicial to the administration of justice.  Legitimate advocacy respecting the foregoing factors does not violate paragraph (d).  A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of this rule.

*　　*　　*

## Tennessee Rules of Professional Conduct

### Rule 8.4.  Misconduct.

\*    \*    \*

Comment:

\*    \*    \*

[3]    A lawyer who, in the course of representing a client, knowingly manifests, by words or conduct, bias or prejudice based on race, sex, religion, national origin, disability, age, sexual orientation, or socio-economic status violates paragraph (d) when such actions are prejudicial to the administration of justice.  Legitimate advocacy respecting the foregoing factors does not violate paragraph (d).

\*    \*    \*

## Texas Rules of Professional Conduct

### Rule 5.08.  Prohibited Discriminatory Activities.

(a)    A lawyer shall not willfully, in connection with an adjudicatory proceeding, except as provided in paragraph (b), manifest, by words or conduct, bias or prejudice based on race, color, national origin, religion, disability, age, sex, or sexual orientation towards any person involved in that proceeding in any capacity.

(b)    Paragraph (a) does not apply to a lawyer's decision whether to represent a particular person in connection with an adjudicatory proceeding, nor to the process of jury selection, nor to communications protected as "confidential information" under these Rules.  See Rule l.05(a), (b).  It also does not preclude advocacy in connection with an adjudicatory proceeding involving any of the factors set out in paragraph (a) if that advocacy:

(i)    is necessary in order to address any substantive or procedural issues raised by the proceeding; and

(ii)    is conducted in conformity with applicable rulings and orders of a tribunal and applicable rules of practice and procedure.

## Utah Rules of Professional Conduct

**Rule 8.4.  Misconduct.**

\*        \*        \*

Comment:

\*        \*        \*

[3]    A lawyer who, in the course of representing a client, knowingly manifests by words or conduct bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, violates paragraph (d) when such actions are prejudicial to the administration of justice.  Legitimate advocacy respecting the foregoing factors does not violate paragraph (d).  A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of this rule.

\*        \*        \*

## Vermont Rules of Professional Conduct

**Rule 8.4.  Misconduct.**

It is professional misconduct for a lawyer to:

\*        \*        \*

(g)    engage in conduct related to the practice of law that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, color, sex, religion, national origin, ethnicity, ancestry, place of birth, disability, age, sexual orientation, gender identity, marital status or socioeconomic status, or other grounds that are illegal or prohibited under federal or state law.  This paragraph does not limit the ability of a lawyer to accept, decline, or withdraw from a representation in accordance with Rule 1.16.  This paragraph does not preclude legitimate advice or advocacy consistent with these rules.

## Washington Rules of Professional Conduct

**Rule** 8.4.  **Misconduct.**

It is professional misconduct for a lawyer to:

\*      \*      \*

(g)    commit a discriminatory act prohibited by state law on the basis of sex, race, age, creed, religion, color, national origin, disability, sexual orientation, honorably discharged veteran or military status, or marital status, where the act of discrimination is committed in connection with the lawyer's professional activities.  In addition, it is professional misconduct to commit a discriminatory act on the basis of sexual orientation if such an act would violate this Rule when committed on the basis of sex, race, age, creed, religion, color, national origin, disability, honorably discharged veteran or military status, or marital status.  This Rule shall not limit the ability of a lawyer to accept, decline, or withdraw from the representation of a client in accordance with Rule 1.16;

(h)    in representing a client, engage in conduct that is prejudicial to the administration of justice toward judges, lawyers, or LLLTs, other parties, witnesses, jurors, or court personnel or officers, that a reasonable person would interpret as manifesting prejudice or bias on the basis of sex, race, age, creed, religion, color, national origin, disability, sexual orientation, honorably discharged veteran or military status, or marital status.  This Rule does not restrict a lawyer from representing a client by advancing material factual or legal issues or arguments[.]

\*      \*      \*

## West Virginia Rules of Professional Conduct

**Rule** 8.4.  **Misconduct.**

\*      \*      \*

Comment:

\*      \*      \*

[3]    A lawyer who, in the course of representing a client, knowingly manifests by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status,

violates paragraph (d) when such actions are prejudicial to the administration of justice. Legitimate advocacy respecting the foregoing factors does not violate paragraph (d). A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of this Rule.

## Wisconsin Rules of Professional Conduct

**Rule 8.4. Misconduct.**

It is professional misconduct for a lawyer to:

*     *     *

(i)   harass a person on the basis of sex, race, age, creed, religion, color, national origin, disability, sexual preference or marital status in connection with the lawyer's professional activities. Legitimate advocacy respecting the foregoing factors does not violate par. (i)

*     *     *

## Wyoming Rules of Professional Conduct

**Rule 8.4. Misconduct.**

*     *     *

Comment:

*     *     *

[3]   A lawyer who, in the course of representing a client, knowingly manifests by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, violates paragraph (d) when such actions are prejudicial to the administration of justice. Legitimate advocacy respecting the foregoing factors does not violate paragraph (d). A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of this rule.

*     *     *

## American Samoa High Court Rules

### Rule 104.  Attorney's and Legal Practitioner's Conduct.

The conduct of attorneys and legal practitioners shall be governed by the American Bar Association Model Rules of Professional Conduct. Violations of the Model Rules shall result in an appropriate disciplinary action.

## Northern Mariana Island Rules of Attorney Discipline and Procedure

### Rule 3.  Grounds for Discipline.

An attorney is subject to discipline for any of the following causes occurring within or outside in the Commonwealth:

(1)    Any act or omission that violates the most recent version of the Model Rules of Professional Conduct of the American Bar Association, except that a lawyer may counsel or assist a client regarding the CNMI's marijuana and cannabis-related laws.  If CNMI law differs from federal law, the lawyer shall also advise the client regarding federal law and policy.

\*       \*       \*

## U.S. Virgin Islands Supreme Court Rules

### Rule 203.  Professional Responsibility and Discipline.

(a)    Power and responsibility.  The Supreme Court, in furtherance of its inherent and statutory powers and responsibility to supervise the conduct of all attorneys who are admitted to practice before it, hereby adopts the ABA's Rules of Professional Conduct and Rules of Disciplinary Enforcement, superseding all of its other rules pertaining to disciplinary enforcement heretofore promulgated. In addition to other forms of discipline, the successful completion of the current Multi-State Professional Responsibility Examination (MPRE) may be required as a form of disciplinary sanction, where appropriate.

\*       \*       \*

## CODES OF JUDICIAL CONDUCT

**Code of Conduct for United States Judges**

**Canon 3:  A Judge Should Perform the Duties of the Office Fairly, Impartially and Diligently.**

The duties of judicial office take precedence over all other activities.  The judge should perform those duties with respect for others, and should not engage in behavior that is harassing, abusive, prejudiced, or biased.  The judge should adhere to the following standards:

(A)    Adjudicative Responsibilities.

*        *        *

(3)    A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity. A judge should require similar conduct by those subject to the judge's control, including lawyers to the extent consistent with their role in the adversary process.

*        *        *

Commentary:

Canon 3A(3).  The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court.  Courts can be efficient and businesslike while being patient and deliberate.

The duty under Canon 2 to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary applies to all the judge's activities, including the discharge of the judge's adjudicative and administrative responsibilities.  The duty to be respectful includes the responsibility to avoid comment or behavior that could reasonably be interpreted as harassment, prejudice or bias.

*        *        *

**American Bar Association Model Code of Judicial Conduct**

**Rule 2.3:  Bias, Prejudice, and Harassment.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

Add.28

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]   Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1. Extrajudicial Activities in General.**

\*   \*   \*

[3]   Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.   Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.   For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.   See Rule 3.6.

\*   \*   \*

**Alaska Code of Judicial Conduct**

**Canon 3.   A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.**

\*   \*   \*

B.   Adjudicative Responsibilities.

\*   \*   \*

(5)   In the performance of judicial duties, a judge shall act without bias or prejudice and shall not manifest, by words or conduct, bias or prejudice based upon race, color, sex, religion, national origin, disability, age, marital status, changes in marital status, pregnancy, parenthood, sexual orientation, or social or economic status.   A judge shall not permit court staff and others subject to the judge's direction and control to deviate from these standards in their duties.

\*   \*   \*

(6)   A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, color, sex, religion, national origin, disability, age, marital status, changes

in marital status, pregnancy, parenthood, sexual orientation, or social or economic status. This Section 3B(6) does not preclude legitimate advocacy when race, color, sex, religion, national origin, disability, age, marital status, changes in marital status, pregnancy, parenthood, sexual orientation or social or economic status, or other similar factors, are issues in the proceeding.

\*    \*    \*

C.    Administrative Responsibilities.

(1)    A judge shall maintain professional competence in judicial administration, and should cooperate with other judges and court staff in the administration of court business. A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice.

\*    \*    \*

(2)    A judge shall take reasonable steps to ensure that court staff and others subject to the judge's direction and control observe the standards of fidelity to the law and diligence in the performance of their duties that apply to the judge and refrain from manifesting bias or prejudice in the performance of their official duties.

\*    \*    \*

**Canon 4.  A Judge Shall So Conduct the Judge's Extra-Judicial Activities as To Minimize the Risk of Conflict with Judicial Obligations.**

\*    \*    \*

Commentary:

\*    \*    \*

Even outside the judicial role, a judge who expresses bias or prejudice may cast reasonable doubt on the judge's capacity to act impartially as a judge. Such expressions include jokes or other remarks demeaning individuals on the basis of their race, color, sex, religion, national origin, disability, age, marital status, changes in marital status, pregnancy, parenthood, sexual orientation, or social or economic status. See Section 2C and accompanying Commentary.

\*    \*    \*

**Arizona Code of Judicial Conduct**

**Rule 2.3.  Bias, Prejudice, and Harassment.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

1.    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

2.    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics.  Facial expressions and body language may convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

3.    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity,

disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

4.    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.  See Arizona Supreme Court Administrative Order 92-33 (Oct. 19, 1992), for the judiciary's sexual harassment policy.

**Rule 3.1.  Extrajudicial Activities in General.**

\*        \*        \*

Comment:

\*        \*        \*

3.    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.   Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, political affiliation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

\*        \*        \*


**<u>Arkansas Code of Judicial Conduct</u>**

**Rule 2.3.  Bias, Prejudice, and Harassment.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to personal characteristics when they are relevant lo an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics.  Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on the basis of personal characteristics.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

## Rule 3.1.  Extrajudicial Activities in General.

\*        \*        \*

Comment:

\*        \*        \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.  Examples include jokes or other remarks that demean individuals based upon their personal characteristics.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

\*        \*        \*

Add.34

## California Code of Judicial Ethics

## Canon 3.  A Judge Shall Perform the Duties of Judicial Office Impartially, Competently, and Diligently.

\*        \*        \*

B.    Adjudicative Responsibilities

\*        \*        \*

(5)    A judge shall perform judicial duties without bias or prejudice.  A judge shall not, in the performance of judicial duties, engage in speech, gestures, or other conduct that would reasonably be perceived as (a) bias, prejudice, or harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, gender identity, gender expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, or (b) sexual harassment.

(6)    A judge shall require lawyers in proceedings before the judge to refrain from (a) manifesting, by words or conduct, bias, prejudice, or harassment based upon race, sex, gender, gender identity, gender expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, or (b) sexual harassment against parties, witnesses, counsel, or others.  This canon does not preclude legitimate advocacy when race, sex, gender, gender identity, gender expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, political affiliation, or other similar factors are issues in the proceeding.

\*        \*        \*

C.    Administrative Responsibilities

(1)    A judge shall diligently discharge the judge's administrative responsibilities impartially, on the basis of merit, without bias or prejudice, free of conflict of interest, and in a manner that promotes public confidence in the integrity of the judiciary.  A judge shall not, in the performance of administrative duties, engage in speech, gestures, or other conduct that would reasonably be perceived as (a) bias, prejudice, or harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, gender identity, gender expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, or (b) sexual harassment.

Add.35

*      *      *

(3)    A judge shall require staff and court personnel under the judge's direction and control to observe appropriate standards of conduct and to refrain from (a) manifesting bias, prejudice, or harassment based upon race, sex, gender, gender identity, gender expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, or (b) sexual harassment in the performance of their official duties.

*      *      *

## Canon 4.    A Judge Shall So Conduct the Judge's Quasi-Judicial and Extrajudicial Activities as To Minimize the Risk of Conflict with Judicial Obligations.

A.    Extrajudicial Activities in General

*      *      *

Advisory Committee Commentary:

Complete separation of a judge from extrajudicial activities is neither possible nor wise; a judge should not become isolated from the community in which he or she lives.  Expressions of bias or prejudice by a judge, even outside the judge's judicial activities, may cast reasonable doubt on the judge's capacity to act impartially as a judge.  Expressions that may do so include inappropriate use of humor or the use of demeaning remarks.  See Canon 2C and accompanying Commentary.

*      *      *

## Colorado Code of Judicial Conduct

## Rule 2.3.  Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court

staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall not engage in retaliation for reporting of misconduct under this Code or other legal authority.  The duty to refrain from retaliation includes retaliation against current and former Judicial Branch personnel as well as attorneys and other members of the public.

(D)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(E)    The restrictions of paragraphs (B) and (D) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics.  Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (D), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

Add.37

## Rule 3.1.  Extrajudicial Activities in General.

*     *     *

Comment:

*     *     *

[3]     Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.  Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

## Connecticut Code of Judicial Conduct

## Rule 2.3.  Bias, Prejudice, and Harassment.

(a)     A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(b)     A judge shall not, in the performance of judicial duties, by words or conduct, manifest bias or prejudice or engage in harassment including, but not limited to, bias, prejudice, or harassment based on race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation and shall not condone such conduct by court staff, court officials, or others subject to the judge's direction and control.

(c)     A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice or engaging in harassment, based on attributes including, but not limited to, race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation against parties, witnesses, lawyers, or others.

(d)     The restrictions of subsections (b) and (c) do not preclude judges or lawyers from making legitimate reference to the listed factors or similar factors when they are relevant to an issue in a proceeding.

Add.38

Comment:

(1)    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

(2)    Examples of manifestations of bias or prejudice include, but are not limited to, epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based on stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and criminality; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

(3)    Harassment, as referred to in subsections (b) and (c), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

(4)    Sexual harassment includes, but is not limited to, sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome

## Rule 3.1.  Extrajudicial Activities in General.

\*    \*    \*

Comment:

\*    \*    \*

(3)    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear lo a reasonable person to call into question the judge's integrity and impartiality.  Examples include jokes or other remarks that demean individuals based on their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices unlawful discrimination.  See Rule 3.6.

\*    \*    \*

**<u>Delaware Judges' Code of Judicial Conduct</u>**

**Rule 2.3.  Bias, Prejudice and Impropriety.**

(A)    A judge should perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge should avoid impropriety and the appearance of impropriety in all activities.

Comment:

A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics.  Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge should avoid conduct that may reasonably be perceived as prejudiced or biased.

\*       \*       \*

**Rule 2.8.  Decorum, Demeanor, and Communication with Jurors.**

\*       \*       \*

(B) A judge should be patient, dignified, respectful and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and should require similar conduct of the judge's staff, court officials, and others subject to the judge's direction and control, including lawyers to the extent consistent with their role in the adversary process.

Comment:

The duty to be respectful of others includes the responsibility to avoid comment or behavior that can reasonably be interpreted as manifesting prejudice or bias towards another on the basis of personal characteristics like race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status.

\*       \*       \*

## District of Columbia Code of Judicial Conduct

### Rule 2.3: Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B) A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics.  Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender (including gender identity and

expression), religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]   Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

[5]   A judge's obligation not to engage in bias, prejudice, or harassment in the performance of judicial duties applies to conduct toward court personnel.  A judge should not engage in, or tolerate, any such conduct. Consistent with Rule 2.12(A) concerning a judge's supervisory duties, a judge should hold court personnel supervised by the judge to similar standards. Consistent with Rule 2.16(B), a judge may not retaliate or threaten retaliation against current or former court personnel for reporting judicial misconduct.

## Rule 3.1.  Extrajudicial Activities in General.

\*        \*        \*

Comment:

\*        \*        \*

[3]   Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.  Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

\*        \*        \*


## <u>Florida Code of Judicial Conduct</u>

## Canon 3.  A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.

\*        \*        \*

B.     Adjudicative Responsibilities.

\*        \*        \*

(5)    A judge shall perform judicial duties without bias or prejudice.  A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, and shall not permit staff, court officials, and others subject to the judge's direction and control to do so.  This section does not preclude the consideration of race, sex, religion, national origin, disability, age, sexual orientation, socioeconomic status, or other similar factors when they are issues in the proceeding.

(6)    A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words, gestures, or other conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, against parties, witnesses, counsel, or others.  This Section 3B(6) does not preclude legitimate advocacy when race, sex, religion, national origin, disability, age, sexual orientation, socioeconomic status, or other similar factors are issues in the proceeding.

*       *       *

C.    Administrative Responsibilities

(1)    A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.

(2)    A judge shall require staff, court officials, and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

*       *       *

**Canon 5.  A Judge Shall Regulate Extrajudicial Activities To Minimize the Risk of Conflict with Judicial Duties.**

*       *       *

Commentary:

*       *       *

Expressions of bias or prejudice by a judge, even outside the judge's judicial activities, may cast reasonable doubt on the judge's capacity to act

impartially as a judge and may undermine the independence and integrity of the judiciary. Expressions which may do so include jokes or other remarks demeaning individuals on the basis of their race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status. See Canon 2C and accompanying Commentary.

*    *    *

## Georgia Code of Judicial Conduct

### Rule 2.3.  Bias, Prejudice, and Harassment.

(A)    Judges shall perform judicial duties without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon age, disability, ethnicity, gender or sex, marital status, national origin, political affiliation, race, religion, sexual orientation, or socioeconomic status. Judges shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    Judges shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including, but not limited to, age, disability, ethnicity, gender or sex, marital status, national origin, political affiliation, race, religion, sexual orientation, or socioeconomic status, against parties, witnesses, lawyers, or others.

(D)    This Rule does not preclude legitimate advocacy when age, disability, ethnicity, gender or sex, marital status, national origin, political affiliation, race, religion, sexual orientation, or socioeconomic status, or other similar factors are issues in the proceeding.

Commentary:

*    *    *

[5]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial

Add.44

expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice.

## Hawaiʻi Revised Code of Judicial Conduct

### Rule 2.3.  Bias, Prejudice, and Harassment.

(a)    A judge shall perform the duties of judicial office without bias or prejudice.

(b)    A judge shall not, in the performance of the duties of judicial office, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, gender identity, gender expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(c)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes, including but not limited to race, sex, gender, gender identity, gender expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(d)    The restrictions of Rules 2.3 (b) and (c) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include, but are not limited to, epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice.

A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in Rules 2.3 (b) and (c), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, political affiliation, or personal characteristics.

Code Comparison

The Hawai'i Revised Code of Judicial Conduct modifies ABA Model Code Comment [3] by adding personal characteristics.

[4]    Sexual harassment includes, but is not limited to, sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

## Rule 3.1.  Extrajudicial Activities in General.

\*        \*        \*

Commentary:

\*        \*        \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the duties of judicial office, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality. Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, gender identity, gender expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, political affiliation, or personal characteristics. For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination. See Rule 3.6.

Code Comparison

The Hawai'i Revised Code of Judicial Conduct modifies ABA Model Code Comment [3] by adding marital status, political affiliation, and personal characteristics.

\*        \*        \*

**Idaho Code of Judicial Conduct**

**Rule 2.3.  Bias, Prejudice, and Harassment.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct, manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics.  Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity,

disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1.  Extrajudicial Activities in General.**

\*        \*        \*

Comment:

\*        \*        \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

\*        \*        \*

**Illinois Code of Judicial Conduct (effective January 1, 2023)**

**Rule 2.3.  Bias, Prejudice, and Harassment.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, gender identity, religion, national origin, ethnicity, pregnancy, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    Proceedings before the court shall be conducted without manifesting bias or prejudice or engaging in harassment, based upon attributes including but not limited to race, sex, gender, gender identity, religion, national origin, ethnicity, pregnancy, disability, age, sexual

orientation, marital status, socioeconomic status, or political affiliation, by or against lawyers, parties, witnesses, or others.

(D)     The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

(E)     A judge shall not retaliate against those who report violations of Rule 2.3.

(F)     A violation of the Supreme Court of Illinois Non-Discrimination and Anti-Harassment Policy is a violation of this Rule.

Comments:

[1]     A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]     Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]     Harassment is verbal, nonverbal, or physical conduct that denigrates or shows hostility or aversion toward a person based on the characteristics or classes identified in paragraphs (B) and (C).

[4]     Harassment based on sex includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

[5]     Rule 2.15 requires judges to take "appropriate action" when they learn of another judge's misconduct. In considering this obligation, judges should recognize that failing to inform court leadership of an incident may allow a pattern of misconduct to go undetected. Judges may have specific reporting obligations under the Supreme Court of Illinois Non-Discrimination and Anti-Harassment Policy.

[6]    Retaliation is an adverse action, performed directly or through others, that would deter a reasonable person from reporting or participating in the investigation of conduct prohibited by this Rule.  The duty to refrain from retaliation includes retaliation against former or current court personnel.

**Rule 3.1.  Extrajudicial Activities in General.**

\*      \*      \*

Comments:

\*      \*      \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.   Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, gender identity, religion, national origin, ethnicity, pregnancy, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

\*      \*      \*

## Indiana Code of Judicial Conduct

**Rule 2.3.  Bias, Prejudice, and Harassment.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status,

socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

## Rule 3.1.  Extrajudicial Activities in General.

\*      \*      \*

Comments:

\*      \*      \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality. Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin,

ethnicity, disability, age, sexual orientation, or socioeconomic status. For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination. See Rule 3.6.

\*    \*    \*

## Iowa Code of Judicial Conduct

### Rule 51:2.3.  Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; insensitive statements about crimes against women; and irrelevant

references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 51:3.1.  Extrajudicial Activities in General.**

\*      \*      \*

Comments:

\*      \*      \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality. Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status. For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination. See Rule 51:3.6

\*      \*      \*

**<u>Kansas Rules Relating to Judicial Conduct</u>**

**Rule 2.3.  Bias, Prejudice, and Harassment.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but

not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1.  Extrajudicial Activities in General.**

*      *      *

Comment:

*      *      *

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.    Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

## Kentucky Code of Judicial Conduct

**Rule 2.3.  Bias, Prejudice, and Harassment.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin; ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding

Add.55

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes, but is not limited to, sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1. Extrajudicial Activities in General.**

\*      \*      \*

Comment:

\*      \*      \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality. Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status. For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination. See Rule 3 .6.

\*      \*      \*

## Louisiana Code of Judicial Conduct

## Canon 3.  A Judge Shall Perform the Duties of Office Impartially and Diligently.

\*       \*       \*

### A.    Adjudicative Responsibilities

\*       \*       \*

(4)    A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, and shall not permit staff, court officials or others subject to the judge's direction and control to do so. A judge may make reasonable efforts, consistent with the law and court rules, to facilitate the abilities of all litigants, including self-represented litigants, to be fairly heard, provided, however, that in so doing, a judge should not give self-represented litigants an unfair advantage or create an appearance of partiality to the reasonable person.

(5)    A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice against parties, witnesses, counsel or others.

\*       \*       \*

### B.    Administrative Responsibilities

(1)    A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.

(2)    A judge shall require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

\*       \*       \*

## Maine Code of Judicial Conduct

### Rule 2.3.  Bias, Prejudice, and Harassment.

(A)   A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)   A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice for or against an individual or a party, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon, race, sex, gender, gender identity, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others, while subject to the judge's direction and control, to do so.

(C)   A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, gender identity, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation against parties, witnesses, lawyers, court staff, or others.

(D)   Sections B and C of this Rule do not preclude judges or lawyers from making legitimate reference to the listed factors or other similar factors when they are relevant to an issue in a proceeding.


## Maryland Code of Judicial Conduct

### Rule 18-102.3.  Bias, Prejudice, and Harassment.

(a)   A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(b)   In the performance of judicial duties, a judge shall not, by words or conduct, manifest bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.  A judge shall require attorneys in proceedings before the court, court staff, court officials, and others subject to the judge's direction and control to refrain from similar conduct.

(c)    The restrictions of section (b) of this Rule do not preclude judges or attorneys from making legitimate references to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    A judge must avoid conduct that may reasonably be perceived as prejudiced or biased. Examples of manifestations of bias or prejudice include epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and attorneys in the proceeding, jurors, the media, and others an appearance of bias or prejudice.

[3]    Harassment, as referred to in section (b) of this Rule, is verbal or physical conduct that denigrates or shows hostility or aversion toward an individual on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes sexual advances, requests for sexual favors, conduct of a sexual nature through the use of electronic communication that alarms or seriously annoys another, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 18-103.1.  Extra-Official Activities in General.**

\*       \*       \*

Comment:

\*       \*       \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality. Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status. For the same reason, a judge's extrajudicial activities must not be conducted in

connection or affiliation with an organization that practices invidious discrimination.  See Rule 18-103.6.

*    *    *

## Massachusetts Code of Judicial Conduct

### Rule 2.3.  Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias, prejudice, or harassment.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice or engage in harassment, including bias, prejudice, or harassment based upon a person's status or condition.  A judge also shall not permit court personnel or others subject to the judge's direction and control to engage in such prohibited behavior.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice or engaging in harassment against parties, witnesses, lawyers, or others, including bias, prejudice, or harassment based upon a person's status or condition.

(D)    This rule does not preclude judges or lawyers from making legitimate reference to a person's status or condition when it is relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice or engages in harassment in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.  A judge must avoid words or conduct that may reasonably be perceived as manifesting bias or prejudice or engaging in harassment.

[2]    As used in this Rule, examples of status or condition include but are not limited to race, color, sex, gender identity or expression, religion, nationality, national origin, ethnicity, citizenship or immigration status, ancestry, disease or disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[3]    As used in this Rule, examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; improper suggestions of connections between

status or condition and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey an appearance of bias or prejudice to parties and lawyers in the proceeding, jurors, the media, and others.

[4]    As used in this Rule, harassment is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as those listed in Comment [2].

[5]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1.  Extrajudicial Activities in General.**

\*    \*    \*

Comment:

\*    \*    \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's independence, integrity, or impartiality. Examples include jokes or other remarks that demean individuals based upon their race, color, sex, gender identity or expression, religion, nationality, national origin, ethnicity, citizenship or immigration status, ancestry, disease or disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation. For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination. See Rule 3.6.

\*    \*    \*

**Michigan Code of Judicial Conduct**

**Canon 2.  A Judge Should Uphold the Integrity and Independence of the Judiciary.**

\*    \*    \*

B.    A judge should respect and observe the law. At all times, the conduct and manner of a judge should promote public confidence in the integrity and impartiality of the judiciary. Without regard to a person's race,

gender, or other protected personal characteristic, a judge should treat every person fairly, with courtesy and respect.

\*       \*       \*

## Canon 3.  A Judge Should Perform the Duties of Office Impartially and Diligently.

\*       \*       \*

A.      Adjudicative Responsibilities

\*       \*       \*

(14)   Without regard to a person's race, gender, or other protected personal characteristic, a judge should treat every person fairly, with courtesy and respect.   To the extent possible, a judge should require staff, court officials, and others who are subject to the judge's direction and control to provide such fair, courteous, and respectful treatment to persons who have contact with the court.

\*       \*       \*

## Minnesota Code of Judicial Conduct

## Rule 2.3.  Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, against parties, witnesses, lawyers, or others based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1 Extrajudicial Activities in General.**

*    *    *

Comment:

*    *    *

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.   Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in

connection or affiliation with an organization that practices unlawful discrimination.  See Rule 3.6.

## Mississippi Code of Judicial Conduct

### Canon 3.  A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.

\*        \*        \*

B.      Adjudicative Responsibilities

\*        \*        \*

(5)      A judge shall perform judicial duties without bias or prejudice.  A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status, and shall not permit staff, court officials and others subject to the judge's direction and control to do so.  A judge shall refrain from speech, gestures or other conduct that could reasonably be perceived as sexual harassment and shall require the same standard of conduct of others subject to the judge's direction and control.

(6)      A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status, against parties, witnesses, counsel or others.  This Section 3B(6) does not preclude legitimate advocacy when race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status, or other similar factors, are issues in the proceeding.

\*        \*        \*

C.      Administrative Responsibilities.

(1)      A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and shall cooperate with other judges and court officials in the administration of court business.

(2)      A judge shall require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence

that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

*    *    *

## Missouri Code of Judicial Conduct

### Rule 2-2.3.  Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, gender identity, religion, national origin, ethnicity, disability, age, sexual orientation, or marital status, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, including but not limited to race, sex, gender, gender identity, religion, national origin, ethnicity, disability, age, sexual orientation, or marital status, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C), do not preclude judges or lawyers from making legitimate reference to personal factors or characteristics, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice, or engages in harassment, in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Whether a judge's conduct violates Rule 2-2.3 can be determined only by a review of all the circumstances; e.g., the gravity of the acts and whether the acts are part of a pattern of prohibited conduct.  For purposes of Rule 2-2.3, "manifests bias or prejudice" means the use of words or conduct that the judge knew or should have known discriminate against, threaten, intimidate, or denigrate any individual or group.  Examples of manifestations of bias or prejudice include, but are not limited to, epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes;

threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics.  Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice.  A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that shows hostility or aversion toward a person based upon race, sex, gender, gender identity, religion, national origin, ethnicity, disability, age, sexual orientation, or marital status.  "Harassment" includes, but is not limited to, unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when:

(a)    Submission to that conduct is made, either explicitly or implicitly, a term or condition of the individual's employment;

(b)    Submission to or rejection of such conduct by an individual is used as a factor in decisions affecting such individual; or

(c)    Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or of creating an intimidating, hostile, or offensive environment.

## Montana Code of Judicial Conduct

### Rule 2.3.  Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national

origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include, but are not limited to, epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1.  Extrajudicial Activities in General.**

*        *        *

Comment:

*        *        *

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality. Examples include jokes or other remarks that demean

Add.67

individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status. For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination. See Rule 3.6.

\*     \*     \*

## Nebraska Revised Code of Judicial Conduct

### § 5-302.3.  Bias, prejudice, and harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality

and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

### § 5-303.1.  Extrajudicial activities in general.

\*       \*       \*

Comment:

\*       \*       \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.  Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

\*       \*       \*


## Revised Nevada Code of Judicial Conduct

### Rule 2.3.  Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including, but not limited to, race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics.  Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

## Rule 3.1.  Extrajudicial Activities in General.

*        *        *

Comment:

*        *        *

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.  Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

*        *        *

## New Hampshire Code of Judicial Conduct

## Rule 2.3.  Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status,

socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)   The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]   A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]   Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]   Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]   Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1.  Extrajudicial Activities in General.**

*       *       *

Comment:

*       *       *

[3]   Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality. Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin,

ethnicity, disability, age, sexual orientation, or socioeconomic status. For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination. See Rule 3.6.

*    *    *

## New Jersey Code of Judicial Conduct

## Rule 3.6.  Bias and Prejudice.

(A)    A judge shall be impartial and shall not discriminate because of race, creed, color, sex, gender identity or expression, religion/religious practices or observances, national origin/nationality, ancestry, language, ethnicity, disability or perceived disability, atypical hereditary cellular or blood trait, genetic information, status as a veteran or disabled veteran of, or liability for service in, the Armed Forces of the United States, age, affectional or sexual orientation, marital status, civil union status, domestic partnership status, socioeconomic status or political affiliation.

(B)    A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice on the bases specified in Rule 3.6(A), against parties, witnesses, counsel or others. This section does not preclude legitimate advocacy when the listed bases are issues in or relevant to the proceeding.

(C)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice or harassment on the bases specified in Rule 3.6(A), and shall not permit court staff, court officials or others subject to the judge's direction and control to do so. This section does not preclude reference to the listed bases when they are issues in or relevant to the proceeding.

Comment:

[1]    The prohibited bases in this rule are primarily drawn from the Law Against Discrimination, N.J.S.A. 10:5-1, et seq.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets, slurs, demeaning nicknames, negative stereotyping, attempted humor based on stereotypes, threatening, intimidating, or hostile acts, suggestions of connections between race, ethnicity, or nationality and

Add.73

crime and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on prohibited bases listed in Rule 3.6(A).

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature that is unwelcome.

## Rule 3.13.  Judicial Administration.

A judge shall diligently discharge the administrative responsibilities of the office without bias or prejudice, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.

## Rule 3.14.  Supervisory Duties.

A judge shall require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

## <u>New Mexico Code of Judicial Conduct</u>

## Rule 21-203.  Bias, Prejudice, and Harassment.

A.    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

B.    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, religion, color, national origin, ethnicity, ancestry, sex, sexual orientation, gender identity, marital status, spousal affiliation, socioeconomic status, political affiliation, age, physical or mental handicap or serious medical condition; and shall not permit court staff, court officials, or others subject to the judge's direction or control to do so.

C.    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including, but not limited to, race, religion, color, national origin, ethnicity, ancestry, sex, sexual orientation, gender identity, marital status, spousal affiliation, socioeconomic status, political affiliation, age, physical or mental handicap or serious medical condition, against parties, witnesses, lawyers, or others.

D.    The restrictions of Paragraphs B and C of this rule do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Committee Commentary:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include, but are not limited to, epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based on stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics.  Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in Paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, religion, color, national origin, ethnicity, ancestry, sex, sexual orientation, gender identity, marital status, spousal affiliation, socioeconomic status, political affiliation, age, physical or mental handicap or serious medical condition.  Judges are also subject to the New Mexico Judicial Branch harassment policy.

[4]    Sexual harassment includes, but is not limited to, sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 21-301.  Extrajudicial activities in general.**

*     *     *

Committee Commentary:

*     *     *

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.  Examples include jokes or other remarks that demean individuals based upon race, religion, color, national origin, ethnicity, ancestry, sex, sexual orientation, gender identity, marital status, spousal affiliation, socioeconomic status, political affiliation, age, physical or mental handicap or serious medical condition, or undermine the public's confidence in or perception of the judicial process.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 21-306 NMRA.

*     *     *

## New York Code of Judicial Conduct

**§ 100.3.  A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.**

*     *     *

(B)    Adjudicative Responsibilities

*     *     *

(4)    A judge shall perform judicial duties without bias or prejudice against or in favor of any person.  A judge in the performance of judicial duties shall not, by words or conduct, manifest bias or prejudice, including but not limited to bias or prejudice based upon age, race, creed, color, sex, sexual orientation, gender identity, gender expression, religion, national origin, disability, marital status or socioeconomic status, and shall require staff, court officials and others subject to the judge's direction and control to refrain from such words or conduct.

(5)    A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon

age, race, creed, color, sex, sexual orientation, gender identity, gender expression, religion, national origin, disability, marital status or socioeconomic status, against parties, witnesses, counsel or others. This paragraph does not preclude legitimate advocacy when age, race, creed, color, sex, sexual orientation, religion, national origin, disability, marital status or socioeconomic status, or other similar factors are issues in the proceeding.

\*    \*    \*

(C)    Administrative Responsibilities

(1)    A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.

(2)    A judge shall require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

\*    \*    \*

Commentary:

\*    \*    \*

[3.2]  A judge must perform judicial duties impartially and fairly. A judge who manifests bias on any basis in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute. Facial expression and body language, in addition to oral communication, can give to parties or lawyers in the proceeding, jurors, the media and others an appearance of judicial bias. A judge must be alert to avoid behavior that may be perceived as prejudicial. Prejudicial behavior includes addressing a lawyer for one of the parties by an honorific title, such as "judge," "senator," "mayor" or "ambassador" in open court. However, this rule[] does not prohibit addressing a lawyer who appears in his or her capacity as a public official by the title of the office in which he or she appears, such as "Attorney General," "District Attorney" or "Solicitor General."

[3.3]  A judge must refrain from speech, gestures or other conduct that could reasonably be perceived as harassment of any kind, including sexual harassment. The judge must require the same standard of conduct of others subject to the judge's direction and control.

\*    \*    \*

[4.2]  Expressions of bias or prejudice by a judge, even outside the judge's judicial activities, may cast reasonable doubt on the judge's capacity to act impartially as a judge.  Expressions which may do so include jokes or other remarks demeaning individuals on the basis of their age, race, creed, color, sex, sexual orientation, religion, national origin, disability, marital status or socioeconomic status.  See Section 2D and accompanying Commentary.

\*    \*    \*

## North Dakota Code of Judicial Conduct

### Rule 2.3.  Bias, Prejudice, and Harassment.

A.    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

B.    A judge shall not, in the performance of all duties of judicial office, including administrative duties, by words or conduct manifest bias or prejudice, or engage in harassment, including bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

C.    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

D.    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of

connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics.  Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice.  A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1.  Extrajudicial Activities in General.**

*        *        *

Comment:

*        *        *

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.  Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

*        *        *

**Ohio Code of Judicial Conduct**

**Rule 2.3.  Bias, Prejudice, and Harassment.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of divisions (B) and (C) of this rule do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include, but are not limited to: epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in divisions (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes, but is not limited to, sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1.  Extrajudicial Activities in General.**

\*        \*        \*

Comment:

\*        \*        \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.   Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

\*        \*        \*

**<u>Oklahoma Code of Judicial Conduct</u>**

**Rule 2.3.  Bias, Prejudice, and Harassment.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status,

socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)     The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]     A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]     Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[3]     Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]     Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1.  Extrajudicial Activities in General.**

*          *          *

Comment:

*          *          *

[3]     Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and

impartiality.    Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  See Rule 3.6.

\*       \*       \*

## Oregon Code of Judicial Conduct

### Rule 3.3.  Impartiality and Fairness.

(A)    A judge shall uphold and apply the law and perform all duties of judicial office, including administrative duties, fairly, impartially, and without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct, manifest bias or prejudice, or engage in harassment, against parties, witnesses, lawyers, or others based on attributes including but not limited to, sex, gender identity, race, national origin, ethnicity, religion, sexual orientation, marital status, disability, age, socioeconomic status, or political affiliation and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

\*       \*       \*

## Pennsylvania Code of Judicial Conduct

### Rule 2.3.  Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based

upon attributes including but not limited to race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

(1)    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

(2)    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

(3)    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

(4)    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

(5)    The Supreme Court's Rules and Policies, e.g., the Rules of Judicial Administration and the Unified Judicial System Policy on Non-Discrimination and Equal Employment Opportunity, have continued force and effect.

## Rule 3.1.  Extrajudicial Activities in General.

\*      \*      \*

Comment:

\*      \*      \*

(3)    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.   Examples include jokes or other remarks that demean individuals based upon their race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

\*      \*      \*

## Rhode Island Code of Judicial Conduct

## Rule 2.3.  Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice or the appearance of bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not knowingly permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1.  Extrajudicial Activities in General.**

\*       \*       \*

Comment:

\*       \*       \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality. Examples include actions or remarks that demean individuals based upon, by way of example, their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status. For the same reason, a judge's extrajudicial activities must not be conducted

in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

\*        \*        \*

## South Carolina Code of Judicial Conduct

### Canon 3.  A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.

\*        \*        \*

B.    Adjudicative Responsibilities

\*        \*        \*

(5)    A judge shall perform judicial duties without bias or prejudice.  A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability or age, and shall not permit staff, court officials and others subject to the judge's direction and control to do so.

Commentary:

A judge must refrain from speech, gestures or other conduct that could reasonably be perceived as sexual harassment and must require the same standard of conduct of others subject to the judge's direction and control.

A judge must perform judicial duties impartially and fairly.  A judge who manifests bias on any basis in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.  Facial expression and body language, in addition to oral communication, can give to parties or lawyers in the proceeding, jurors, the media and others an appearance of judicial bias.  A judge must be alert to avoid behavior that may be perceived as prejudicial.

(6)    A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability or age, against parties, witnesses, counsel or others.  This Section 3B(6) does not preclude legitimate advocacy when race, sex, religion, national origin, disability, age, or other similar factors, are issues in the proceeding.

Add.87

*       *       *

C.    Administrative Responsibilities

(1)    A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.

(2)    A judge shall require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

*       *       *

**Canon 4.  A Judge Shall So Conduct the Judge's Extra-Judicial Activities as To Minimize the Risk of Conflict with Judicial Obligations.**

*       *       *

Commentary:

*       *       *

Expressions of bias or prejudice by a judge, even outside the judge's judicial activities, may cast reasonable doubt on the judge's capacity to act impartially as a judge.  Expressions which may do so include jokes or other remarks demeaning individuals on the basis of their race, sex, religion, national origin, disability or age.  *See* Section 2C and accompanying Commentary.

*       *       *

**South Dakota Code of Judicial Conduct**

**Canon 3.  A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.**

*       *       *

B.    Adjudicative Responsibilities

*       *       *

(5)    A judge shall perform judicial duties without bias or prejudice.  A judge shall not, in the performance of judicial duties, by words or conduct

manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability or age, and shall not permit staff, court officials and others subject to the judge's direction and control to do so.

(6)    A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability or age, against parties, witnesses, counsel or others.  This Section 3B(6) does not preclude legitimate advocacy when race, sex, religion, national origin, disability or age, or other similar factors, are issues in the proceeding.

Commentary – B(6):

A judge must refrain from speech, gestures or other conduct that could reasonably be perceived as sexual harassment and must require the same standard of conduct of others subject to the judge's direction and control.  A judge must perform judicial duties impartially and fairly.  A judge who manifests bias on any basis in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute. Facial expression and body language, in addition to oral communication, can give to parties or lawyers in the proceeding, jurors, the media and others an appearance of judicial bias. A judge must be alert to avoid behavior that may be perceived as prejudicial.

\*       \*       \*

C.    Administrative Responsibilities

(1)    A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.

(2)    A judge shall require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

\*       \*       \*

Add.89

**Canon 4.  A Judge Shall So Conduct the Judge's Extra-Judicial Activities as To Minimize the Risk of Conflict with Judicial Obligations.**

A.    Extra-judicial Activities in General

*     *     *

Commentary

*     *     *

Expressions of bias or prejudice by a judge, even outside the judge's judicial activities, may cast reasonable doubt on the judge's capacity to act impartially as a judge.  Expressions which may do so include jokes or other remarks demeaning individuals on the basis of their race, sex, religion, national origin, disability or age.   See Section 2C and accompanying Commentary.


**<u>Tennessee Code of Judicial Conduct</u>**

**Rule 2.3.  Bias, Prejudice, and Harassment.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]     A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]     Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics.  Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]     Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]     Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1.  Extrajudicial Activities in General.**

*     *     *

Comment:

*     *     *

[3]     Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.  Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's personal and extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  *See* RJC 3.6.

*     *     *

**Texas Code of Judicial Conduct**

**Canon 3.  Performing the Duties of Judicial Office Impartially and Diligently.**

\*    \*    \*

B.    Adjudicative Responsibilities

\*    \*    \*

(6)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, and shall not knowingly permit staff, court officials and others subject to the judge's direction and control to do so.

(7)    A judge shall require lawyers in proceedings before the court to refrain from manifesting, by words or conduct, bias or prejudice based on race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status against parties, witnesses, counsel or others.  This requirement does not preclude legitimate advocacy when any of these factors is an issue in the proceeding.

\*    \*    \*

C.    Administrative Responsibilities

(1)    A judge should diligently and promptly discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.

(2)    A judge should require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

\*    \*    \*

**Utah Code of Judicial Conduct**

**Rule 2.3.  Bias, Prejudice, Harassment, and Abusive Conduct.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

Add.92

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall take reasonable measures to require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

(E)    A judge shall not engage in abusive conduct.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Examples of sexual harassment include but are not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

## Rule 3.1.  Extrajudicial Activities in General.

\*       \*       \*

Comment:

\*       \*       \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.   Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

## <u>Vermont Code of Judicial Conduct</u>

## Rule 2.3.  Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, color, sex, religion, national origin, ethnicity, ancestry, place of birth, disability, age, sexual orientation, gender identity, marital status, socioeconomic status, or other grounds that are illegal or prohibited under federal or state law and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, color, sex, religion, national origin, ethnicity, ancestry, place of birth, disability, age, sexual orientation, gender identity, marital status, socioeconomic status, or other grounds that are illegal or prohibited under federal or state law against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics.  Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, color, sex, religion, national origin, ethnicity, ancestry, place of birth, disability, age, sexual orientation, gender identity, marital status, socioeconomic status, or other grounds that are illegal or prohibited under federal or state law.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1.  Extrajudicial Activities in General.**

*    *    *

Comment:

*    *    *

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.  Examples include jokes or other remarks that demean individuals based upon their race, color, sex, religion, national origin, ethnicity, ancestry, place of birth, disability, age, sexual orientation, gender identity,

marital status, socioeconomic status, or other grounds that are illegal or prohibited under federal or state law.  See Rules 2.3(B), (C), and Comment [3]; Rule 3.6(A).  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6.

*      *      *

## Virginia Canons of Judicial Conduct

### Canon 1H.  Bias or Prejudice.

A judge must perform judicial duties without bias or prejudice.  A judge must not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice toward any member of a protected class, and must not permit staff, court officials, and others subject to the judge's direction and control to do so in the performance of their official duties.  This does not preclude proper judicial consideration when characteristics related to membership in a protected class are at issue in the proceeding.

### Canon 2R.  Decorum in Courtroom.

A judge should require all persons appearing in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based on membership in any protected class against parties, witnesses, counsel, or others.  This does not preclude legitimate advocacy when membership in a protected class, or any similar factor, is at issue in the proceeding

## Washington Code of Judicial Conduct

### Rule 2.3.  Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

Add.96

(C)   A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, against parties, witnesses, lawyers, or others.

(D)   The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making reference to factors that are relevant to an issue in a proceeding.

Comment:

[1]   A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]   Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]   Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]   Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

[5]   "Bias or prejudice" does not include references to or distinctions based upon race, color, sex, religion, national origin, disability, age, marital status, changes in marital status, pregnancy, parenthood, sexual orientation, or social or economic status when these factors are legitimately relevant to the advocacy or decision of the proceeding, or, with regard to administrative matters, when these factors are legitimately relevant to the issues involved.

**Rule 3.1.  Extrajudicial Activities in General.**

*    *    *

Comment:

*    *    *

[2]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.  Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.

*    *    *

**West Virginia Code of Judicial Conduct**

**Rule 2.3.  Bias, Prejudice, and Harassment.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)   The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]   A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]   Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]   Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]   Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 3.1.  Extrajudicial Activities in General.**

*       *       *

Comment:

*       *       *

[4]   Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.  Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  This Rule should be read in conjunction with Rules 3.6 and 3.7.

*       *       *

<u>**Wisconsin Code of Judicial Conduct**</u>

**Rule 60.04.   A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.**

\*      \*      \*

(1)    In the performance of the duties under this section, the following apply to adjudicative responsibilities:

\*      \*      \*

(e)    A judge shall perform judicial duties without bias or prejudice.  A judge may not, in the performance of judicial duties, by words or conduct, manifest bias or prejudice, including bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status, and may not knowingly permit staff, court officials and others subject to the judge's direction and control to do so.

Comment:

A judge must refrain from speech, gestures or other conduct that could reasonably be perceived as sexual harassment and must require the same standard of conduct of others subject to the judge's direction and control.

A judge must perform judicial duties impartially and fairly.  A judge who manifests bias on any basis in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.  Facial expression and body language, in addition to oral communication, can give to parties or lawyers in the proceedings, jurors, the media and others an appearance of judicial bias.  A judge must be alert to avoid behavior that may be perceived as prejudicial.

(f)    A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status against parties, witnesses, counsel or others.  This subsection does not preclude legitimate advocacy when race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status or other similar factors are issues in the proceeding.

\*        \*        \*

(2)    In the performance of the duties under this section, the following apply to administrative responsibilities:

(a)    A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.

(b)    A judge shall require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

\*        \*        \*

**Rule 60.05.    A Judge Shall So Conduct the Judge's Extra-Judicial Activities as To Minimize the Risk of Conflict with Judicial Obligations.**

\*        \*        \*

Comment:

Complete separation of a judge from extra-judicial activities is neither possible nor wise; a judge should not become isolated from the community in which the judge lives.

Expressions of bias or prejudice by a judge, even outside the judge's judicial activities, may cast reasonable doubt on the judge's capacity to act impartially as a judge.  See SCR 60.03 (1) and (3).

\*        \*        \*


<u>**Wyoming Code of Judicial Conduct**</u>

**Rule 2.3.  Bias, Prejudice, and Harassment.**

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court

staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

## Rule 3.1.  Extrajudicial Activities in General.

\*       \*       \*

Comment:

\*       \*       \*

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.   Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 3.6

\*       \*       \*


## American Samoa High Court Rules

## Rule 103.  Judge's Conduct.

The conduct of all judges shall be governed by the Canons of Judicial Ethics.  Violations of the Canons shall result in an appropriate disciplinary action.


## 7 Guam Code Ann.

## § 6103.  Standards of Conduct Applicable to Justices and Judges.

In addition to the requirements of § 6104 and § 6105 of this Chapter, the standards of conduct prescribed by the American Bar Association's Canon of Judicial Ethics shall apply to and govern the conduct of the Justices of the Supreme Court of Guam and the Judges of the Superior Court of Guam.


## U.S. Virgin Islands Code of Judicial Conduct

## Rule 213.2.3.  Bias, Prejudice, and Harassment.

(A)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

Add.103

(B)    A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(C)    A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

(D)    The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Comment:

[1]    A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

[2]    Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics.  Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3]    Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

[4]    Sexual harassment includes but is not limited to sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome.

**Rule 213.3.1.  Extrajudicial Activities in General.**

*        *        *

Comment:

*        *        *

[3]    Discriminatory actions and expressions of bias or prejudice by a judge, even outside the judge's official or judicial actions, are likely to appear to a reasonable person to call into question the judge's integrity and impartiality.   Examples include jokes or other remarks that demean individuals based upon their race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, or socioeconomic status.  For the same reason, a judge's extrajudicial activities must not be conducted in connection or affiliation with an organization that practices invidious discrimination.  See Rule 213.3.6.

*        *        *

# CERTIFICATES OF BAR MEMBERSHIP

I, Lisa S. Blatt, counsel for appellants, hereby certify pursuant to Third Circuit Rule 28.3(d) that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

*/s/ Lisa S. Blatt*
LISA S. BLATT

I, Amy Mason Saharia, counsel for appellants, hereby certify pursuant to Third Circuit Rule 28.3(d) that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

*/s/ Amy Mason Saharia*
AMY MASON SAHARIA

I, Aaron Z. Roper, counsel for appellants, hereby certify pursuant to Third Circuit Rule 28.3(d) that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

*/s/ Aaron Z. Roper*
AARON Z. ROPER

I, Peter S. Jorgensen, counsel for appellants, hereby certify pursuant to Third Circuit Rule 28.3(d) that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

*/s/ Peter S. Jorgensen*
PETER S. JORGENSEN

## <u>CERTIFICATES OF COMPLIANCE WITH TYPEFACE, WORD-COUNT, ELECTRONIC-BRIEF, AND VIRUS-CHECK REQUIREMENTS</u>

I, Lisa S. Blatt, hereby certify that:

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f);

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Century Expanded BT, size 14;

3.  The text of the electronic copy of this brief filed using this Court's CM/ECF system is identical to the text in the paper copies filed with the Clerk; and

4.  The electronic copy of this brief filed using this Court's CM/ECF system was scanned for viruses using the Symantec Endpoint Protection version 14.2, and no viruses were detected.

/s/ <i>Lisa S. Blatt</i>
LISA S. BLATT

September 6, 2022

## CERTIFICATE OF SERVICE

I, Lisa S. Blatt, counsel for appellants and a member of the Bar of this Court, certify that, on September 6, 2022, a copy of the attached Brief of Appellants was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ *Lisa S. Blatt*
LISA S. BLATT

September 6, 2022