No. 22-1733

In the United States Court of Appeals for the Third Circuit

**ZACHARY GREENBERG**
*Plaintiff-Appellee*

v.

**JERRY M. LEHOCKY, in his official capacity as Board Chair of the Disciplinary Board of the Supreme Court of Pennsylvania, et al.**

*Defendants-Appellants*

On Appeal from the United States District Court for the Eastern District of Pennsylvania, No. 2:20-cv-03822

**BRIEF OF AMICUS CURIAE PENNSYLVANIA BAR ASSOCIATION, PHILADELPHIA BAR ASSOCIATION, ALLEGHENY COUNTY BAR ASSOCIATION AND INTERBRANCH COMMISSION FOR RACIAL, GENDER AND ETHNIC FAIRNESS IN SUPPORT OF REVERSAL**

Jay N. Silberblatt
President
Pennsylvania Bar Association
100 South Street
Harrisburg, PA 17101

Thomas G. Wilkinson, Jr.
Daniel Q. Harrington
Deborah A. Winokur
Cozen O'Connor
1650 Market Street - Suite 2800
Philadelphia, PA 19103-7395
(215) 665-2000
*Attorneys for Amicus Curiae*
*Pennsylvania Bar Association*
*Philadelphia Bar Association*
*Allegheny County Bar Association and*
*Interbranch Commission for Racial,*
*Gender and Ethnic Fairness*

## CORPORATE DISCLOSURE STATEMENT

*Amici* have no parent companies, and no publicly-owned corporation owns

10% or more of their stock.

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF INTEREST ..............................................................1

INTRODUCTION ............................................................................5

SUMMARY OF ARGUMENT ..............................................................6

ARGUMENT ..................................................................................10

    A.    Harassment and Discrimination in the Practice of Law Reflect Adversely on the Legal Profession and Impairs the Fair Administration of Justice..........................................................10

    B.    Greenberg's Proposed Conduct Does Not Violate Rule 8.4(g) and He Therefore Lacks Standing to Challenge the Rule's Enforcement ......11

    C.    Rule 8.4(g) Does Not Prohibit Protected Speech ....................................16

    D.    The Injunction Should be Vacated and the Rule Reinstated....................22

CONCLUSION ................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Borden v. School Dist. of East Brunswick*, 523 F.3d 153 (3d Cir. 2008) ...................................................................................16

*Bostock v. Clayton Cty.*, 590 U.S. __, 140 S. Ct. 1731 (2020)...........…...…………21

*Cerame v. Bowler*, No. 3:2021cv01502, 2022 WL 3716422 (D. Conn. Aug. 29, 2022)………...……………………………………………...15

*Clapper v. Amnesty Intern. USA*, 569 U.S. 398 (2013) ...........................................14

*In re: Ambry Nichole Scheussler*, 578 S.W.3d 762 (Mo. 2019)…………………..19

*ODC v. TM*, No. 159 DB 2019 (D. Bd. Order Oct. 2, 2019)……………………...11

*ODC v. Kolcharno*, No. 106 DB 2022 (Pa. Aug. 22, 2022)…………...…………11

*Principe v. Assay Partners*, 586 N.Y.S.2d 182 (N.Y. Sup. Ct. 1992)....................10

*Reilly v Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011), *cert. denied*, 566 U.S. 989 (2012)........................................................................14

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ....................................23

*Saxe v. v. State College Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001) ...................18

*Stretton v. Disciplinary Bd. of Supreme Ct. of Pa.*, 944 F.2d 137 (3d Cir. 1991) ...............................................................................13, 20

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).......................................14

*U.S. v. Ackell*, 907 F.3d 67 (1st Cir. 2018), *cert. denied*, 139 S. Ct. 2012 (2019).........................................................................23

**Statutes and Rules**

204 Pa. Code § 99.3(7) (2005)..................................................................................22

Model R. Prof. Cond. 8.4(d) .................................................................................6, 19

Fed. R. App. P. 29(a)(4)(E) ...................................................................4

Model R. Prof. Cond. 8.4(g) .............................................................16

N.Y. Ct. Rule 8.4(g), Pt. 1200 ..........................................................22

Pa. R. Prof. Cond. 8.2 .......................................................................18

Pa. R. Prof. Cond. Preamble ............................................................21

Pa. Code of Judicial Cond. 2.3 (2017) .........................................19, 22

Pennsylvania Constitution, Article V, Section 10(c) .........................11

Pa. R. Prof. Cond. 8.4(g) .............................................................*passim*

## Other Authorities

Am. Bar Ass'n Formal Opinion 493: *Purpose, Scope, and Application*
(July 15, 2020) ............................................................................17

Rebecca Aviel, *Rule 8.4(g) and the First Amendment: Distinguishing
Between Discrimination and Free Speech,* 31 Georgetown J. of
Legal Ethics 31, 36-38 (2018) .....................................................18

Ellen Brotman & Amy Coco, *Pennsylvania Lawyers Behaving Badly:
Is 8.4(g) A Solution*?, 50 Hostra L. Rev. 521, 539-40 (2022) ...........11

Stephen Gillers, *A Rule to Forbid Bias and Harassment in Law
Practice: A Guide for State Courts Considering Model Rule 8.4(g)*,
30 Geo. J. Legal Ethics 195 (2017) ..............................................11

Patrick Smith, *'No Consequences': Sexual Harassment Persists in Law Firm
Culture*, Am. Law. (Sept. 1, 2022)…………………………………10

The Supreme Court of Pennsylvania: Life and Law in the Commonwealth,
1684-2017, J. Hare, editor (Penn State Univ. Press 2018) ......... 1, 11

Robert N. Weiner, *Nothing to See Here: Model Rule of Professional
Conduct 8.4(g) and the First Amendment*, 41 Harv. J.L. & Pub.
Pol'y 125 (2018) ..........................................................................23

## STATEMENT OF INTEREST

The Pennsylvania Bar Association (PBA) has been recognized by the Supreme Court of Pennsylvania as the association most representative of members of the Bar of this Commonwealth.[1] The PBA also is a longstanding accredited provider of continuing legal education programs through its educational arm, the Pennsylvania Bar Institute. The PBA closely followed the extensive process leading to the ABA's adoption of Model Rule 8.4(g) in August 2016.

Although the iterative process that produced Pennsylvania's Rule 8.4(g) consumed four years, the bar amici's support for an anti-discrimination rule reaches back over a quarter century. In 1996 the PBA's Women in the Profession and the PBA/Conference of State Trial Judges Joint Task Force to Ensure Gender Fairness in the Courts proposed an addition to Rule 8.4 that would expressly prohibit sexual harassment in the practice of law. The PBA shortly thereafter urged the Supreme Court to extend this prohibition to racial discrimination. The Philadelphia Bar Association approved a similar recommendation in February 1997. The Court did not act on these proposals. The Supreme Court of Pennsylvania: Life and Law in the Commonwealth, 1684-2017, J. Hare, editor (Penn State Univ. Press 2018), Ch. 5: Supervising and Regulating the Practice of Law, at 71. Nor did the Court act on organized bar recommendations to adopt the 1998 Model Rule Comment [3] to 8.4,

---

[1]  No. 198, Supreme Court Rules Docket No. 1 (June 2, 1998).

*Misconduct*, applying when a lawyer "knowingly manifests, by words or conduct, bias or prejudice based upon race, sex [and other protected status]." (JA233)

In November 2016, the PBA Board of Governors and House of Delegates approved a joint recommendation of its Legal Ethics and Professional Responsibility and Women in the Profession Committees to urge the Pennsylvania Supreme Court to adopt Rule 8.4(g) to prohibit knowing harassment and discrimination in the practice of law.[2] In September 2019, the PBA Board of Governors voted to support the Disciplinary Board's Rule recommendation that was thereafter adopted by the Pennsylvania Supreme Court in June 2020. Following the Supreme Court's approval of Rule 8.4(g) as amended on July 26, 2021, PBA leadership authorized the submission of this amicus brief in support of revised Rule 8.4(g).

The Philadelphia Bar Association is the oldest metropolitan bar in the United States and the largest bar association in eastern Pennsylvania, and an accredited CLE provider. The Association, with the support of its Professional Responsibility and Professional Guidance Committees, actively participated in the Disciplinary Board's rulemaking process. The Association supported adoption of Rule 8.4(g),[3] and its Board of Governors unanimously authorized the filing of an amicus brief.

---

[2] JA233.
[3] JA268.

The Allegheny County Bar Association (ACBA) is the largest metropolitan bar in western Pennsylvania, and is an accredited CLE provider. The ACBA participated in the Disciplinary Board's rulemaking process, and supported the Rule proposed by the Board and approved by the Supreme Court.[4] The ACBA Board of Governors unanimously authorized participation in an amicus brief in support of the implementation of the rule.

The members of the amici bar associations comprise approximately one half of the licensed attorneys in the Commonwealth, and are all subject to the disciplinary authority of the Disciplinary Board of the Supreme Court of Pennsylvania. The amici have a vital interest in the rules that govern lawyer conduct in the practice of law and in promoting the rule of law. The amici bar associations routinely either initiate or submit comments concerning proposed amendments to the Pennsylvania Rules of Professional Conduct and other court rules. The amici bar associations also sponsor bench bar conferences offering CLE programs. The amici are committed to ensuring access to justice, enhancing diversity and eliminating bias in the legal profession and the justice system. The amici maintain that implementation of  Rule 8.4(g) prohibiting knowingly engaging in conduct, in the practice of law, constituting harassment or discrimination helps advance those objectives, and also addresses serious misconduct that has no place in the practice of law. The Interbranch

---

[4] JA273.

Commission for Racial, Gender and Ethnic Fairness ("Interbranch Commission") was established by the Pennsylvania Supreme Court and the other two branches of Pennsylvania government in 2005. Its mission is to implement recommendations from a 2003 study by the Supreme Court Committee on Racial and Gender Bias in the Justice System, including one directed to the Court to amend the judicial and attorney Codes of Conduct to prohibit harassment and discrimination in the practice of law. The Interbranch Commission has conducted its own efforts and supported the amici bar associations' efforts to urge adoption of Rule 8.4(g), while simultaneously continuing to work more generally to eliminate bias and invidious discrimination within the legal profession and all three branches of government in the Commonwealth of Pennsylvania. The Commission members authorized the filing of this brief.

The amici state that (i) no party's counsel authored this brief in whole or in part; (ii) no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and (iii) no other person contributed money that was intended to fund preparing or submitting this brief other than the amici and their counsel. *See* Fed. R. App. P. 29(a)(4)(E). All parties have consented to the filing of this amicus brief.

## INTRODUCTION

Knowing harassment and discrimination against persons on the basis of sex, race, religion and other characteristics enumerated in Pennsylvania Rule of Professional Conduct 8.4(g) have no place in the practice of law. The Supreme Court of Pennsylvania and the Disciplinary Board recognized that such misconduct should be directly addressed in the disciplinary rules by bringing Pennsylvania's rules in line with the vast majority of other federal and state judiciary that already prohibit harassment and discrimination in their respective codes of conduct. Pennsylvania's version of the rule addresses a persistent and pervasive problem in the legal profession.

The district court erred in concluding that appellee Greenberg satisfied the Article III standing requirements to mount a facial challenge to Rule 8.4(g) because Greenberg did not and does not face a credible threat of prosecution. To the contrary, there was an utter lack of good faith basis for Greenberg to fear that he would or might face discipline for the conduct he has described in his complaint as amended.

The district court also erred in facially invalidating Rule 8.4(g) on First Amendment grounds, largely because the rule will apply in the context of continuing legal education programming. In doing so, the court failed to give due recognition to the fact that all such programming is both mandated and conducted under the auspices of the Continuing Legal Education Board of the Supreme Court of

Pennsylvania, and that the legal precedents involving public university speech codes plaintiff relies upon do not control the contours of lawyer professional regulation.

Finally, the district court unduly downplayed the importance of providing for the potential for lawyer discipline under the rule for intentional harassment and discrimination in contexts beyond the narrow confines of litigation under the direct supervision of trial judges. The Supreme Court of Pennsylvania is vested with constitutional authority over lawyer regulation in all aspects of the practice of law in this Commonwealth, including in law firm settings and during bench bar conferences where continuing legal education is offered.

## SUMMARY OF ARGUMENT

Pennsylvania's Rule 8.4(g) is an important and much needed prohibition on lawyer misconduct that is not directly addressed by any other disciplinary rule. The rule grew out of a longstanding antidiscrimination provision in Comment [3] to ABA Model Rule 8.4(d) that the amici bar associations supported but was never adopted in Pennsylvania. The majority of states already had some form of anti-harassment rule before the Model Rule was adopted by the ABA House of Delegates in 2016.[5] None of those rules has been struck down on First Amendment grounds.

---

[5] JA232; JA251 & n. 11 (listing jurisdictions); JA269.

Zachary Greenberg mounts a facial attack on the rule, claiming it will prevent him from speaking freely about controversial court cases and other law at CLE programs regulated by the Supreme Court of Pennsylvania through its CLE Board. In the alternative, he asserts that, even if the rule does not forbid what he desires to say at CLE programs – and the Disciplinary Board confirms it does not – nevertheless he worries that a CLE attendee might take umbrage at his remarks and file a disciplinary complaint, which might in turn require him to respond and set in motion a process whose effect will be to chill his speech, whatever the outcome. (JA162) The stipulated facts do not quote Greenberg's remarks at any of the several CLE programs where he was a presenter or what he intends to say at any future seminar. Instead, we are simply told that he has presented several CLE programs, and that unidentified attendees at three events (two of which were held prior to Greenberg's admission to the bar) expressed the opinion that certain content in his presentations was "offensive." (JA225)

Greenberg lacks standing because his contemplated speech is not prohibited by the rule he attacks, as acknowledged by the Disciplinary Board in briefs, in oral argument, and in the declarations of its Chief Disciplinary Counsel. His alternative claim – speculation that an audience member might file a meritless complaint anyway, thereby chilling his speech – is also insufficient to confer Article III standing. Even if Greenberg's speech were chilled by the highly conjectural

7

sequence of events he predicts, and even if that chill were sufficient to confer standing despite the position of the Board (which it is not), his injury would at most allow an "as applied" challenge. Greenberg seeks instead to leverage his claim of a personal chill into a facial attack on the rule's application in all circumstances, no matter how remote from his own and no matter how compelling and constitutionally valid the Pennsylvania Supreme Court's reasons for adopting the Rule in the circumstances it describes. Decisions of this Court and the Supreme Court do not allow that facial attack.

On the merits, Rule 8.4(g) as amended is narrower in scope than the first rule adopted by the Pennsylvania Supreme Court and narrower than Greenberg claims. The rule only forbids "conduct" consisting of "knowing" (a) harassment or discrimination, (b) "in the practice of law," (c) as those terms are defined in the two supporting comments, (d) on the basis "race, sex" and other expressly identified attributes. The Rule is also more narrowly tailored than the Model Rule which applies to conduct that the lawyer "knows or reasonably should know" is harassment or discrimination. The amended rule also no longer contains the challenged phrase "knowingly manifest bias or prejudice, or engage in" language that the district court faulted in its initial order.  Now, more specific and limited definitions of harassment and discrimination appear in the supporting comments. Lawyer communication outside of the practice--of-law setting is expressly excluded from the amended rule's

scope. As narrowed by its specific definitions and its practice-of-law setting, the rule should rarely if ever present First Amendment issues and never facial ones. In contrast to what the rule actually does forbid, Greenberg merely wishes to speak at CLEs about the law. Such speech has never been the basis for discipline under rules similar to Rule 8.4(g) in any jurisdiction.

Pennsylvania has a compelling state interest in prohibiting attorney misconduct involving knowing discrimination and harassment in the practice of law. The longstanding problems with harassment and discrimination in the legal profession are well documented in cases, studies and surveys, and the misconduct addressed by Rule 8.4(g) harms the victim, the legal system and the administration of justice.

The district court erred in concluding that Rule 8.4(g) constitutes impermissible "viewpoint discrimination." Pennsylvania's Rule 8.4(g) as amended neither suppresses particular viewpoints nor manipulates the public's perception of what is socially or politically acceptable speech.  Rather, the Disciplinary Board will apply a uniform standard applying to all lawyers equally and within defined parameters. Because lawyers, in the practice of law, have no free speech right to intentionally harass or discriminate against persons based on their sex, race or other characteristics recognized by the rule, the preliminary injunction should therefore be vacated.

## ARGUMENT

**A.    Harassment and Discrimination in the Practice of Law Reflect Adversely on the Legal Profession and Impair the Fair Administration of Justice**

While acknowledging that "the government is acting with beneficent intentions" (JA41), the district court did not recognize that Rule 8.4(g) promotes a well-established state interest in prohibiting conduct that harms victims' legal careers, reflects adversely on the profession and, in turn, reflects adversely on the legal system and impairs the administration of justice.[6] National and statewide lawyer surveys reveal the scope of this problem.[7] In a recent New York survey of 5,000 attorneys, nearly half of female attorneys reported that they were subjected to unwelcome contact, one quarter of them suffered unwelcome physical contact and 44 percent sometimes experienced verbal or nonverbal harassment, all from their fellow attorneys.[8] A shocking 77 percent of respondents to a survey by the Association of National Legal Administrators stated that sexual harassment occurred

---

[6] Pervasive harassment and discrimination have been characterized as the "dirty little secret" of the legal profession. *Principe v. Assay Partners*, 586 N.Y.S.2d 182, 185 (N.Y. Sup. Ct. 1992).

[7] *E.g.*, Patrick Smith, *'No Consequences': Sexual Harassment Persists in Law Firm Culture*, Am. Law. (Sept. 1, 2022)(reporting on 2020 Women Lawyers on Guard national study entitled *Still Broken: Sexual Harassment and Misconduct in the Legal Profession*).

[8] New York State Jud. Comm. on Women in the Courts, Gender Survey 2020, at 7-8, 22-24.

at their law firms.[9] In Pennsylvania, however, there is typically no disciplinary

consequence for such harassment unless it results in a criminal conviction.[10]

**B.    Greenberg's Proposed Conduct Does Not Violate Rule 8.4(g) and He Therefore Lacks Standing to Challenge the Rule's Enforcement**

The Supreme Court is vested under the Pennsylvania Constitution, Article V,

Section 10(c) with the exclusive authority to regulate the legal profession, including

adoption of the rules governing "admission to the bar and to practice law."[11]

---

[9] Gayle Cinquegrani, *Heal Thyself: Law Firms Grapple With Harassment Claims,* Bloomberg Law (July 1, 2016). *See also,* Stephen Gillers, *A Rule to Forbid Bias and Harassment in Law Practice: A Guide for State Courts Considering Model Rule 8.4(g)*, 30 Geo. J. Legal Ethics 195, 199-200 (2017)(noting that women are "overwhelmingly" the targets of harassing and discriminatory conduct).

[10] *See*, *e.g.*, *ODC v. TM*, No. 159 DB 2019 (Pa Oct. 2, 2019)(lawyer publicly reprimanded for misdemeanor harassment conviction due to making unwanted physical advances toward multiple women during a county bench bar conference). In the absence of the criminal conviction, the harassing conduct would not have triggered any disciplinary rule. *See also* E. Brotman & A. Coco, *Pennsylvania Lawyers Behaving Badly: Is 8.4(g) A Solution?*, 50 Hostra L. Rev. 521, 539-40 (2022)(reviewing several recent Pennsylvania disciplinary cases involving sexual harassment before Rule 8.4(g) was adopted). *See also ODC v. Kolcharno*, No. 106 DB 2022 (Pa. Aug. 22, 2022)(temporary suspension of defense attorney charged with four counts of promoting prostitution for exploiting vulnerable clients by demanding sexual services from them or in exchange for payment).

[11] Pa. Const. art. V, § 10(c); The Supreme Court of Pennsylvania: Life and Law in the Comm., *supra*, at 86 & n. 133. The Board, through its Office of Disciplinary Counsel ("ODC"), receives and investigates complaints, and determines whether to pursue disciplinary proceedings due to rule violations. Nearly 90 percent of all complaints lodged against attorneys by former clients and others result in dismissal. (JA202, ¶ 31) In every disciplinary case the ODC bears the burden of proof, and the respondent attorney is entitled to due process.

Greenberg was admitted to the Pennsylvania bar in 2019, and he is employed by a nonprofit entity that advocates for free speech on college campuses. He has presented at several CLE programs concerning First Amendment cases, including hate speech. The record is devoid of the actual content of any remarks Greenberg has presented or proposes to present at any program.

Greenberg alleges that, in the course of "accurately citing and quoting precedent First Amendment cases," he would inevitably engage in speech that "some members of [the] audience will perceive as biased, prejudiced, offensive, and potentially hateful." (JA12) He also intends to discuss cases addressing "incendiary speech," "polarizing issues such as hate speech, regulation on college campuses or online, due process requirements for students accused of sexual misconduct, and campaign finance restrictions on monetary political contributions." (JA15) These topics are routinely covered in law school courses and CLE seminars and will not suddenly become off limits once Rule 8.4(g) is reinstated.

It is uncontroverted that Greenberg (1) has not been threatened, investigated or charged with any violation of Rule 8.4(g) in Pennsylvania or elsewhere; (2) has not been contacted by either the ODC or the Board concerning his speech at any event; (3) has not been the subject of a complaint by any seminar attendee asserting that his remarks violated any disciplinary rule or would violate Rule 8.4(g); (4) has not identified any discipline imposed in any state with an anti-harassment rule where

a lawyer was investigated, charged or disciplined for speech at a CLE seminar; and (5) has not cited any bar ethics guidance in any jurisdiction opining that "accurately citing and quoting First Amendment cases" (JA12) would violate the rule.

The Appellants expressly stated in each of their court filings and at oral argument that Greenberg's proposed "controversial" or "provocative" remarks about free speech would not violate Rule 8.4(g). Contrary to the district court's dramatic warning in its opinion likening the initial rule language to a proverbial "sword of Damocles" hanging over every lawyer's head (JA22), the interpretation of the amended rule provided by the Board and Chief Disciplinary Counsel Thomas J. Farrell in his declaration can be trusted because that interpretation is both reasonable and sound, and because the Board is legally bound by its repeated assurances on the record that Greenberg's proposed conduct would not violate the rule.[12]

Moreover, to establish Article III standing, a plaintiff must show (1) "an injury in fact," (2) a sufficient "causal connection between the injury and the conduct

---

[12] In *Stretton v. Disciplinary Bd. of Supreme Ct. of Pa.*, 944 F.2d 137, 143 (3d Cir. 1991), Stretton challenged a judicial canon restricting a judicial candidate's campaign speech, including a prohibition on announcing "views on disputed legal or political issues[.]" The Board maintained that Stretton's proposed campaign topics did not violate the canon, while, as Greenberg does here, Stretton sought to strike it down as overbroad. This Court vacated the district court's injunction, concluding that the lawyer was entitled to rely on the Board's interpretation of the Code in response to his facial challenge to the speech restriction. *See also Comm. v. Cosby*, 252 A.3d 1092, 1134 (Pa. 2021)("The law is clear that … prosecutors generally are bound by their assurances, particularly when defendants rely to their detriment upon those guarantees.").

complained of," and (3) that it is likely that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). "An injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 158 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).[13]

The parties' stipulated facts confirm Greenberg's lack of standing to mount a pre-enforcement challenge. The Board has consistently maintained that Greenberg's complaint was predicated on the highly speculative assertion that his anticipated speech *might* offend an audience member, who *might* thereafter submit a complaint to the ODC, which *might* give rise to an ODC investigation, and *might* lead to a disciplinary complaint charging a violation of Rule 8.4(g). (JA396-97) Even if any of the above events that Greenberg speculates "might" happen actually did happen, that would not give rise to a cognizable injury to his constitutional rights.[14] His

---

[13] *See Reilly v Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011), *cert. denied*, 566 U.S. 989 (2012)(no standing where plaintiff's injury "depends on an 'indefinite risk of future harms inflicted by unknown third parties"); *Clapper v. Amnesty Intern. USA*, 569 U.S. 398, 437 (2013)("[t]he party invoking federal jurisdiction bears the burden of establishing standing."). The *Clapper* Court pronounced: "We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Id.* at 414.

[14] *See also Blum v. Holder*, 744 F.3d 790, 798 (1st Cir. 2014)("In assessing the risk of prosecution as to particular facts, weight must be given to the lack of a history of enforcement of the challenged statute to like facts."). This further weakens Greenberg's contention that he has a real and imminent fear of discipline.

asserted anxiety over the risk of unwarranted grievances from other lawyers or members of the public, or even of an unwarranted disciplinary complaint from the ODC, is too speculative confer standing.[15] If it did, virtually any regulation could be invalidated, because virtually any regulation is capable of misapplication or misinterpretation.

Greenberg's asserted threat of injury (*i.e.*, being subjected to potential discipline for violation of Rule 8.4(g)), is not concrete, particularized or imminent, and therefore the district court's finding that Greenberg satisfied his burden to establish standing was erroneous. This conclusion is consistent with the recent District of Connecticut decision dismissing for lack of standing a challenge by two outspoken practicing attorneys to that state's version of Rule 8.4(g). The court in *Cerame v. Bowler*, No. 3:2021cv01502, 2022 WL 3716422 (D. Conn. Aug. 29, 2022) applied the Article III standing standard and concluded that neither plaintiff attorney demonstrated "a well-founded fear that he will be the subject of a

---

[15] The district court gave undue weight to Greenberg's asserted fear that a grievant or the ODC *might* "misconstrue" or "misperceive" Greenberg's speech (JA0019). The court surmised that Greenberg's proposed conduct is "arguably proscribed" by Rule 8.4(g) (JA20), instead of focusing upon what is actually proscribed under the Rule: misconduct involving intentional discrimination or harassment. The court gave weight to the fact that the Appellants "cannot prevent a complaint and investigation" notwithstanding their disavowal of any intent to prosecute Greenberg under the Rule. (JA62 n. 13) However, the court failed to come to grips with the fact that any attorney can be the subject of an unwarranted disciplinary complaint by anyone for any real or imagined grievance. That is a reality faced by every practicing attorney and does not remotely confer standing here.

disciplinary proceeding and/or bar sanctions." *Id.* at *7. As here, the Connecticut plaintiffs offered nothing more than a "conjectural and hypothetical, rather than concrete and particularized" fear that a comment made in the course of his activities might be the basis for a disciplinary proceeding. *Id.*

Finally, as in any disciplinary action, the lawyer may either raise the defense that the conduct at issue is entitled to First Amendment protection or pursue an as applied rule challenge.[16]

## C.    Rule 8.4(g) Does Not Prohibit Protected Speech

Pennsylvania Rule 8.4(g) is drawn from the ABA Model Rule. The ABA formal ethics opinion reviewing the purpose, scope and application of the Model Rule addresses a scenario more extreme than Greenberg presents in which a lawyer speaking at a CLE program expresses views that may be perceived as "politically incorrect" or even racist:

> A lawyer participating as a speaker at a CLE program on affirmative action in higher education expresses the view that rather than using race-conscious process in admitting African-American students to highly-ranked colleges and universities, those students would be better off attending lower-ranked schools where they would be more likely to excel. Would the lawyer's remarks violate Rule 8.4(g)?

---

[16] *Borden v. School Dist. of East Brunswick*, 523 F.3d 153, 166 (3d Cir. 2008) ("any concern about overbreadth may be 'cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.'")(quotation omitted).

> No. While a CLE program would [constitute] 'conduct related to the practice of law,' the viewpoint expressed by the lawyer would not violate Rule 8.4(g). Specifically, the lawyer's remarks, without more, would not constitute 'conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of … race.' A general point of view, even a controversial one, cannot reasonably be understood as harassment or discrimination contemplated by Rule 8.4(g). The fact that others may find a lawyer's expression of social or political views to be inaccurate, offensive, or upsetting is not the type of 'harm' required for a violation.[17]

The ABA's detailed guidance on the scope and application of the model rule sheds significant light on its more narrow Pennsylvania counterpart. However, the district court did not acknowledge the ABA's guidance in its initial decision striking down Rule 8.4(g), and only addressed it in passing in its second decision, noting that "verbal or physical conduct" may be deemed to violate Model Rule 8.4(g). (JA93). From this, the court concluded that the rule "serves as a warning to Pennsylvania lawyers to self-censor during the course of their interactions that fall within the Board's broad interpretation of the practice of law." (JA78) The amici would not characterize avoiding overt harassment or discrimination on the basis of race, for example, as an undue constraint, nor do they agree that the rule or the Board's position concerning its application presents a "broad" interpretation of the practice of law. The district court apparently prioritized a lawyer's right to engage in discriminatory and harassing conduct over the other free-speech rights attorneys

---

[17] ABA Comm. on Ethics & Prof. Resp., Formal Op. 493, at 13 (2020).

must yield in other contexts, including but not limited to, the areas of legal advertising, civility, and candor toward the tribunal.[18]

The district court's critique of the rule as a "clear speech regulation," as opposed to a regulation of "conduct" (*e.g.*, JA31), misses the mark. Derogatory or demeaning verbal or physical conduct targeted at a racial minority, for example, may be sufficiently harassing or discriminatory within the meaning of the rule and supporting comments to warrant discipline, just as derogatory words in the workplace may produce a violation of Title VII or state law.[19] In such cases, the words employed comprise evidence of the discrimination.

In striking down the first version of Rule 8.4(g), the district court repeatedly referenced the rule's inclusion of a phrase drawn from Pennsylvania Code of Judicial

---

[18] Rebecca Aviel, *Rule 8.4(g) and the First Amendment: Distinguishing Between Discrimination and Free Speech,* 31 Georgetown J. of Legal Ethics 31, 36-38 (2018). *See also* Pa. R. Prof. Cond. 8.2 (prohibiting certain statements concerning the qualifications or integrity of a judge). The rules also prohibit, *inter alia*, communications directed to opposing represented parties and with jurors, providing legal advice to unrepresented persons, and false and dishonest statements, even when the speech is unrelated to the practice of law.

[19] Greenberg is employed by a nonprofit advocating for free speech on college campuses, Not surprisingly, Greenberg's declarations rely almost exclusively on campus speech cases where the public college or university speech code enforced against the faculty member or student was amorphous or the process employed lacked appropriate safeguards. *E.g.*, *Saxe v. v. State College Area Sch. Dist.*, 240 F.3d 200, 209 (3d Cir. 2001)(school district policy was overbroad in its application to unspecified "other personal characteristics"). While the amici support robust protection for campus speech, that "hot button" issue is not before this Court.

18

Conduct 2.3 (Bias, Prejudice, and Harassment), "by words or conduct, knowingly manifest bias or prejudice," to buttress its finding that the Rule unduly infringes upon protected lawyer speech reflecting bias or prejudice. (JA20, 30, 38) In doing so, the court erroneously assumed that the comment to Rule 2.3 had been impliedly incorporated into Rule 8.4(g) when the Board had made clear it was not. (JA30) The district court also bypassed the fact that virtually the same wording it deemed "offending language" (JA30) appeared in former Comment [3] to Model Rule 8.4(d) for nearly two decades, and also can be found in other state formulations of Rule 8.4(g).[20]

The Board and Supreme Court excised the "manifest bias or prejudice" language from the rule the district court had found most "problematic" in its December 2020 Opinion. (JA30; 491 F. Supp. 3d at 30; ECF No. 31) However, the

---

[20] For example, Missouri Rule 8.4(g) directs that a lawyer shall not "manifest by words or conduct, … bias or prejudice, or engage in harassment[.]" *See, e.g., In re: Ambry Nichole Scheussler*, 578 S.W.3d 762, 774-75 (Mo. 2019)(prosecutor violated Missouri Rule 8.4(g) by making racist and homophobic comments concerning suspect assaulted in custody). By order dated July 13, 2022, the Massachusetts Supreme Judicial Court adopted Rule 4.4(a)(3), which prohibits conduct that "manifests bias or prejudice against such a person based on race, sex marital status, religion, national origin, disability, age, sexual orientation, or gender identity." Added comments include a "non-exhaustive, illustrative list" of examples of harassment. The court explained that "[l]awyer acts that manifest bias or prejudice "undermine confidence in the legal profession and strike at the heart of the legal system, under which all persons are to be treated equally and with equal dignity."

district court criticized Appellants for not also conceding that the first rule was unconstitutional. (JA69)

The district court's First Amendment analysis departed from the fundamental doctrine that, "[w]hen a statute or regulation is challenged, it should be interpreted to "avoid constitutional difficulties." *Stretton,* 944 F.2d at 144. "[T]he elementary rule is that every reasonable construction" must be used to "save the statute from unconstitutionality." *Id. (citations omitted).* The district court did just the opposite by misconstruing the Rule to impose "moral values on others by censoring all opposing viewpoints" and "legislating diplomatic speech" (JA39, 41), when it does no such thing.

It is well recognized, even by the most ardent First Amendment advocates, that courts have broad authority to regulate speech in advocacy, and especially in court, to promote the administration of justice. There are numerous reported court decisions expressing disapproval of, and frequently imposing sanctions for, uncivil, unprofessional, harassing or discriminatory lawyer conduct in the context of litigation. If court sanctions may be imposed for knowing harassing and discriminatory lawyer conduct, then it follows that lawyer discipline may also be imposed for such misconduct occurring in other areas of legal practice, such as at the negotiating table or in an arbitration proceeding.

Thirty years ago the Supreme Court of Pennsylvania directed that all

Pennsylvania licensed lawyers must participate in substantive and ethics legal education requirements on an annual basis to ensure that "certain standards of professional competence and ethical behavior" were satisfied "in the practice of law."[21] Pennsylvania's accredited CLE providers must comply with the rules administered by the CLE Board.[22] Bar conferences, including the Third Circuit Judicial Conference, largely consist of CLE seminars on substantive and procedural law developments and legal ethics. The district court opinion would effectively immunize from regulation all lawyer professional speech in CLE programs based on Greenberg's strained position that such conduct is somehow outside the bounds of "law practice." Wherever the CLE seminar is conducted, participants should expect that knowing harassment or discrimination targeting an attendee on account of her sex, race or other protected characteristic[23] will not be tolerated.[24]

---

[21] Pa.R.C.L.E. Reg. Preamble: Statement of Purpose.

[22] Pa.R.C.L.E. 105.

[23] The majority of the protected characteristics in the rule already appeared in former Comment [3] to Model Rule 8.4(g), and the inclusion of "gender identity" and "sexual orientation" are consistent with the U.S. Supreme Court's ruling in *Bostock v. Clayton Cty.*, 590 U.S. __ , 140 S. Ct. 1731 (2020), interpreting Title VII, as well as the Unified Judicial System of Pennsylvania's Policy on Non-Discrimination and Equal Employment Opportunity.

[24] On June 10, 2022, while this appeal was pending, New York's four Appellate Division departments adopted a more robust version of that state's Rule 8.4(g), nearly a year after receiving a detailed recommendation approved by the New York State Bar Association and supported by the in-depth study of its Committee on Standards of Attorney Conduct. Like Pennsylvania, the New York rule applies to conduct "in the practice of law," including interactions with other lawyers at CLE

Greenberg argued below that there are other, sufficient "tools" or remedies for lawyer harassment and discrimination in place, commending the Code of Judicial Conduct's direction in Rule 2.3 that judges should "require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment[.]"[25] He also credited the Code of Civility's provision urging attorneys to "refrain from acting upon or manifesting racial, gender or other bias or prejudice toward any participant in the legal process."[26] These salutary directives predate the adoption of Rule 8.4(g), and are fundamental expectations of all Pennsylvania judges and lawyers. However, the Code of Judicial Conduct does not apply to practicing lawyers and the Code of Civility is merely aspirational, and therefore, even an egregious violation may not serve as the basis for discipline. That is why it is crucial to provide for potential discipline when lawyers knowingly engage in harassment or discrimination in the practice of law as provided in the rule as adopted.

## D.    The Injunction Should be Vacated and the Rule Reinstated

Greenberg has proffered only subjective and highly speculative claims that his unspecified offensive speech will somehow be chilled by the rule's mere

---

programs, law firm or bar association events, recognizing that much of the misbehavior occurs in non-litigation contexts. Rule 8.4(g), N.Y. Ct. Rules, Pt. 1200.
[25] *See* Pa. Code Jud. Cond. R. 2.3 (2017). In May 2013, the PBA urged the Pennsylvania Supreme Court to adopt Rule 2.3 consistent with the recommendations of the PBA Task Force on the Code of Judicial Conduct. The rule was thereafter approved along with various other rule updates, effective July 1, 2014.
[26] 204 Pa. Code § 99.3(7) (2005).

existence. Lawyers discuss controversial legal issues on a daily basis, including in jurisdictions with antidiscrimination rules, and yet there are no reported cases of discipline in any jurisdiction arising from such discussions. Greenberg's contention that he might one day be the first is insufficient to satisfy his burden.[27]

Pennsylvania Rule 8.4(g) is neither vague nor overbroad, nor does it target unpopular "viewpoints." There is no First Amendment right for lawyers to knowingly harass or discriminate against others in the practice of law. This Court should decline Greenberg's invitation to speculate about potential scenarios involving as yet unidentified harassing lawyer speech.[28] Here, the lack of any credible threat of enforcement against Greenberg's proposed conduct and the absence of any injury, let alone irreparable injury, mandate that the preliminary injunction be vacated and judgment be entered in favor of Appellants.

## CONCLUSION

The district court mischaracterized Rule 8.4(g) as impermissible "government censorship," whereas the rule is a measured and necessary means to redress a lawyer's knowing harassment or discrimination in the practice of law. The long

---

[27] *Reilly v. City of Harrisburg*, 858 F.3d 173, 178 (3d Cir. 2017).
[28] *See U.S. v. Ackell*, 907 F.3d 67, 77 (1st Cir. 2018), *cert. denied*, 139 S. Ct. 2012 (2019)(Where the conduct is sufficiently expressive to implicate First Amendment rights, "we are confident that as-applied challenges will properly safeguard the rights that the First Amendment enshrines."); *see also* Robert N. Weiner, *Nothing to See Here: Model Rule of Professional Conduct 8.4(g) and the First Amendment*, 41 Harv. J.L. & Pub. Pol'y 125, 137 (2018).

awaited rule is an appropriate and commendable exercise of the Pennsylvania Supreme Court's supervisory authority over Pennsylvania lawyers. When and if the rule is subjected to an as applied challenge based upon conduct that is claimed to warrant First Amendment protection, the specific conduct may be assessed with a proper record from which to determine whether the rule has been properly applied and enforced.

Respectfully submitted,

/s/ Thomas G. Wilkinson, Jr.
Thomas G. Wilkinson, Jr.
Daniel Q. Harrington
Deborah A. Winokur
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2000

*Attorneys for Amici Curiae*
*Pennsylvania Bar Association*
*Philadelphia Bar Association*
*Allegheny County Bar Association*
*and Interbranch Commission for*
*Racial, Gender and Ethnic Fairness*

# CERTIFICATE OF SERVICE

The undersigned certifies that all parties required to be served have been served. Further, the foregoing Brief of Amicus Curiae was filed with the Clerk and served this date on counsel of record for all parties through the Court's Electronic Filing System and via email as follows:

Adam E. Schulman, Esquire
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
Adam.schulman@hlli.org
(610) 457-0856

Lisa S. Blatt
Amy Mason Saharia
Aaron Z. Roper
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
ASaharia@wc.com
(202) 434-5847

*Attorney for Plaintiff-Appellee*
ZACHARY GREENBERG

*Attorneys for Defendants-Appellants*
JERRY M. LEHOCKY, ET AL.

*/s/ Thomas G. Wilkinson, Jr.*
Thomas G. Wilkinson, Jr.

Dated:  September 13, 2022

## COMBINED CERTIFICATIONS

I, Thomas G., Wilkinson, Jr., hereby certify that:

1.      This brief complies with the type-volume limitation of FRAP 29(a)(5) because this brief contains 5,940 words, excluding the parts of the brief exempted by FRAP 32(f).  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

2.      At least one of the attorneys whose names appear on this brief is a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

3.      The text of the electronic copy of this brief filed using this Court's CM/ECF system is identical to the text in the paper copies filed with the Clerk.

4.      A virus detection program, Crowdstrike Falcon, Version 5.36, has been run on the electronic version of this brief, and no virus has been detected.

5.      By filing this brief, I will be causing all counsel of record to be served electronically through this Court's electronic filing system.


Dated:  September 13, 2022

                                        /s/ Thomas G. Wilkinson, Jr.
                                            Pa. ID 35082