**No. 22-1733**

IN THE
United States Court of Appeals
for the Third Circuit

_____

ZACHARY GREENBERG,

*Plaintiff-Appellee*,

v.

JERRY M. LEHOCKY, IN HIS OFFICIAL CAPACITY AS BOARD CHAIR OF THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA, ET AL.,

*Defendants-Appellants*.

_____

On Appeal from an Order of the United States District Court
for the Eastern District of Pennsylvania, No. 2:20-cv-03822-CFK
(Honorable Chad F. Kenney)

_____

**BRIEF FOR *AMICI CURIAE* HISPANIC NATIONAL BAR ASSOCIATION, NATIONAL ASIAN PACIFIC AMERICAN BAR ASSOCIATION, ASIAN PACIFIC AMERICAN BAR ASSOCIATION OF PENNSYLVANIA, NATIONAL BAR ASSOCIATION, NATIONAL NATIVE AMERICAN BAR ASSOCIATION, NATIONAL LGBTQ+ BAR ASSOCIATION, AND NATIONAL ASSOCIATION OF WOMEN LAWYERS IN SUPPORT OF APPELLANTS**

_____

GERMAN A. GOMEZ
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
german.gomez@hoganlovells.com
BRITTANY C. ARMOUR
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
(267) 675-4600
brittany.armour@hoganlovells.com

*Counsel for Amici Curiae Hispanic National Bar Association, National Asian Pacific American Bar Association, Asian Pacific American Bar Association of Pennsylvania, National Bar Association, National Native American Bar Association, National LGBTQ+ Bar Association, and National Association of Women Lawyers*

September 13, 2022

## CORPORATE DISCLOSURE STATEMENT

Each of the *amici* joining this brief—Hispanic National Bar Association, National Asian Pacific American Bar Association, Asian Pacific American Bar Association of Pennsylvania, National Bar Association, National Native American Bar Association, National LGBTQ+ Bar Association, and National Association of Women Lawyers—states that it has no parent corporation and that no publicly held corporation owns more than ten percent of its stock.

/s/ German A. Gomez
GERMAN A. GOMEZ
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
german.gomez@hoganlovells.com

September 13, 2022

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ....................................................... ii

TABLE OF AUTHORITIES ................................................................. iii

INTERESTS OF *AMICI CURIAE* ........................................................... 1

INTRODUCTION ......................................................................... 5

ARGUMENT ............................................................................. 9

    I.     A LEGACY OF DISCRIMINATION AND THE RESULT-
ING UNDER-REPRESENTATION OF WOMEN AND MI-
NORITY GROUPS IN THE LEGAL PROFESSION RE-
MAINS A SIGNIFICANT PROBLEM. .................................................... 9

    II.    ATTORNEY DISCIPLINE PROCEEDINGS DEMON-
STRATE THE BREADTH AND DEPTH OF HOSTILITY
TOWARD UNDER-REPRESENTED POPULATIONS IN
THE LEGAL PROFESSION. ......................................................... 17

        A. In the Courtroom ........................................................ 17

        B. In Court Filings and Depositions ......................................... 18

        C. In Chambers ............................................................. 19

        D. Workplace and Client Contact ............................................ 20

        E. Social Media and Other Public Speech .................................... 22

    III.   CONTINUED DISCRIMINATION, HARASSMENT, AND
BIAS IN THE LEGAL WORKPLACE DEMONSTRATES
THE NEED FOR RULE 8.4(g) ...................................................... 23

    IV.   LAWYERS ARE OFFICERS OF THE COURT AND
SHOULD BE ACCOUNTABLE FOR DISCRIMINATORY
STATEMENTS AND ACTIONS, UNDER RULES OF PRO-
FESSIONAL CONDUCT. ........................................................... 27

**TABLE OF CONTENTS—Continued**

Page

CONCLUSION .......................................................................................................35

CERTIFICATE OF BAR MEMBERSHIP

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abrams*,
   488 P.3d 1043 (Colo. 2021).................................................................31

*Att'y Grievance Comm'n v. Maiden*,
   --- A.3d ---, 2022 WL 2977055 (Md. July 28, 2022) .........................20

*Att'y Grievance Comm'n v. Markey*,
   230 A.3d 942 (Md. 2020) ....................................................................20

*Att'y Grievance Comm'n v. Sanderson*,
   213 A.3d 122 (Md. 2019) ....................................................................18

*In re Campiti*,
   937 N.E.2d 340 (Ind. 2009) ................................................................20

*Chisholm v. Bd. of Pub. Educ.*,
   240 F. Supp. 862 (E.D. Pa 1965).........................................................10

*Cruz-Aponte v. Caribbean Petrol. Corp.*,
   123 F. Supp. 3d 276 (D.P.R. 2015) .....................................................19

*In re Davies*,
   93 Pa. 116 (1880).................................................................................28

*In re DeLadurantey*,
   976 N.W.2d 844 (Wis. 2022)...............................................................22

*In re Disciplinary Procs. Against Beatse*,
   722 N.W.2d 385 (Wis. 2006)...............................................................18

*Florida Bar v. Krapacs*,
   No. SC19-277, 2020 WL 3869584 (Fla. July 8, 2020) .......................22

*Gonzalez v. Comm'n on Jud. Performance*,
   657 P.2d 372 (Cal. 1983).....................................................................19

## TABLE OF AUTHORITIES—Continued

Page(s)

*Greenberg v. Goodrich*,
    No. 20-cv-03822 (E.D. Pa. Nov. 16, 2021) ............................................. 8

*In re Griffith*,
    838 N.W.2d 792 (Minn. 2013) .......................................................... 21

*Hoots v. Commonwealth of Pa.*,
    359 F. Supp. 807 (W.D. Pa. 1973) ...................................................... 10

*In re Krapacs*,
    138 N.Y.S.3d 290 (N.Y. App. Div. 2020) ............................................ 22

*In re Kratz*,
    851 N. W.2d 219 (Wis. 2014) ........................................................... 21

*Laddcap Value Partners, LP v. Lowenstein Sandler P.C.*,
    No. 600973-2007, 2007 WL 4901555 (N.Y. Sup. Ct. Dec. 5, 2007) ............... 18

*In re McGrath*,
    280 P.3d I 091 (Wash. 2012) (*en banc*) .............................................. 19

*In re Moothart*,
    860 N.W.2d 598 (Iowa 2015) ........................................................... 21

*Mullaney v. Aude*,
    730 A.2d 759 (Md. Ct. Spec. App. 1999) ............................................. 18

*Off. of Disciplinary Counsel v. Glass*,
    694 A.2d 1098 (Pa. 1997) ............................................................... 28

*Off. of Disciplinary Counsel v. Lewis*,
    426 A.2d 1138 (Pa. 1981) ............................................................... 28

*People v. Frazier*,
    No. 19PDJ053, 2019 WL 7604760 (Colo. O.P.D.J. Dec. 30, 2019) ............... 21

*People v. Gilbert*,
    No. 10PDJ067 (Colo. O.P.D.J. Jan. 14, 2011) ...................................... 20

vi

# TABLE OF AUTHORITIES—Continued

Page(s)

*People v. Malouff*,
    No. 20PDJ055, 2020 WL 5629838 (Colo. O.P.D.J. Aug. 25, 2020) ................20

*People v. Wareham*,
    No. 17PDJ021, 2017 WL 4173661 (Colo. O.P.D.J. Sept. 13, 2017) ................21

*Principe v. Assay Partners*,
    586 N.Y.S.2d 182 (Sup. Ct. 1992).......................................................................19

*In re Schlossberg*,
    137 N.Y.S.3d 44 (N.Y. App. Div. 2020) .............................................................22

*In re Stevens*,
    645 P.2d 99 (Cal. 1982) ......................................................................................19

*Sweatt v. Painter*,
    339 U.S. 629 (1950)...............................................................................................9

*In re Thomsen*,
    837 N.E.2d 1011 (Ind. 2005) ..............................................................................17

*In re Traywick*,
    860 S.E.2d 358 (S.C. 2021) ...........................................................................22, 30

*In re Valcarcel Mulero I*,
    142 D.P.R. 41 (1996) ..........................................................................................17

*In re Vincenti*,
    554 A.2d 470 (N.J. 1989) ....................................................................................17

*In re Williams*,
    414 N.W.2d 394 (Minn. 1987) ............................................................................19

**Statutes**

204 Pa. Code 8.4 ....................................................................................5, 8, 22, 34

204 Pa. Code 8.4§ (c)...................................................................................................34

204 Pa. Code 8.4§(g)............................................................................................*passim*

## TABLE OF AUTHORITIES—Continued

Page(s)

**Other Authorities**

2020 Partner Compensation Survey, Major Lindsey & Africa (Dec. 15, 2020), https://www.mlaglobal.com/en/insights/research/2020-partner-compensation-report ..............................................................24

2021 Minority Corporate Counsel Association (MCCA) Law Firm Diversity Survey (2021), https://mcca.com/wp-content/uploads/2021/12/2021-MCCA-Law-Firm-Diversity-Survey-Report.pdf .................................................................13

2022 ABA Profile of the Legal Profession (July 2022), https://www.americanbar.org/content/dam/aba/administrative/news/2022/07/profile-report-2022.pdf ......................................11, 12, 13, 16

*A Field Experiment on Labor Market Discrimination* (Sept. 2004), https://cos.gatech.edu/facultyres/Diversity_Studies/Bertrand_LakishaJamal.pdf .............................................................................23

American Bar Association - Commission on Women in the Profession *A Current Glance at Women in the Law* (January 2018), https://www.pbi.org/docs/default-source/default-document-library/10569_a-current-glance-at-women-in-the-law-jan-2018-(1).pdf?sfvrsn=0 .................................................................14

Anne E. Phillips, *A History Of The Struggle For School Desegregation In Philadelphia, 1955–1967*, Pennsylvania History: A Journal of Mid-Atlantic Studies, Vol. 72, No. 1, at 51 (2005) .......................................10

Arin N. Reeves, *Written in Black & White Exploring Confirmation Bias in Racialized Perceptions of Writing Skills*, Nextions (Apr. 1, 2014), https://nextions.com/insights/perspectives/written-in-black-white-exploring-confirmation-bias-in-racialized-perceptions-of-writing-skills/ ...............................................................24

# TABLE OF AUTHORITIES—Continued

Page(s)

Carl Singley, *Standing on the Shoulders: The Black Philadelphia Lawyer*, The Philadelphia Lawyer, Vol. 82 No. 2, at 22 (July 10, 2019), http://cdn.coverstand.com/7683/601526/57d26f2e1a54eaa95954d80c14147af48164917b.15.pdf .................................................................................10

Charles Mitchell, *The Black Philadelphia Lawyer*, 20 Vill. L. Rev. 371 (1974) https://digitalcommons.law.villanova.edu/cgi/viewcontent.cgi?article=2078&context=vlr ...................................................11

Chung, E., Dong, S., Hu, X. A., Liu, G., and Kwon, C.A, *Portrait of Asian Americans in the Law*, (2017) https://www.apaportraitproject.org/ ............................................12, 16

Deborah L. Rhode, *Law is the least diverse profession in the nation. And lawyers aren't doing enough to change that,* Washington Post (May 27, 2015 8:25am), https://www.washingtonpost.com/posteverything/wp/2015/05/27/law-is-the-least-diverse-profession-in-the-nation-and-lawyers-arent-doing-enough-to-change-that/ .........................................................................12

Debra Cassens Weiss, *Second state adopts ABA model rule barring discrimination and harassment by lawyers,* ABA Journal (June 13, 2019), https://www.abajournal.com/news/article/second-state-adopts-aba-model-rule-barring-discrimination-by-lawyers ...............................35

Destiny Peery, Paulette Brown, and Eileen Letts, *Left Out and Left Behind: The Hurdles, Hassles, and Heartaches of Achieving Long-Term Legal careers for Women of Color* (June 22, 2020), https://www.americanbar.org/content/dam/aba/administrative/women/leftoutleftbehind-int-f-web-061020-003.pdf ..................................26

Elizabeth Katz, Kyle Rozema, and Sarath Sanga, *Women in U.S. Law Schools, 1948-2021* (Aug. 16, 2022), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4194210 ........................14

# TABLE OF AUTHORITIES—Continued

Page(s)

Elizabeth Olson, *Women Lawyers Held to Tougher Standard When It Comes to Anger,* Bloomberg Law (Apr. 13, 2018), https://news.bloomberglaw.com/business-and-practice/women-lawyers-held-to-tougher-standard-when-it-comes-to-anger ...............................24

The Gavel Gap, https://gavelgap.org/ ....................................................16

Institute for Women's Policy Research, Pay Equity & Discrimination, https://iwpr.org/?s=pay+wage+gap .....................................24

Joan C. Williams, Marina Multhaup, Su Li, and Rachel Korn, *You Can't Change What You Can't See* (2018), https://mcca.com/wp-content/uploads/2018/09/You-Cant-Change-What-You-Cant-See-Executive-Summary.pdf .............................................15, 25

Joanna Andrade Lehmann, *The Ongoing Struggle of Latina Women in Law*, The Daily Business Review (May 19, 2022), https://www.law.com/dailybusinessreview/2022/05/19/the-ongoing-struggle-of-latina-women-in-law/ ...........................................12, 13, 25

LawProfBlawg, *Are Law Review Articles A Waste Of Time?* Above the Law (Apr.17, 2018), https://abovethelaw.com/2018/04/are-law-review-articles-a-waste-of-time ..........................................25

Legal Week, *Most Female Lawyers Have Experienced or Seen Work-place Sexual Harassment*, Law.com (Sept. 2019), https://www.law.com/international-edition/2019/09/11/most-fe-male-lawyers-have-experienced-or-seen-workplace-sexual-harass-ment/ .........................................................................................................26

Letter from Marsha L. Anastasia, President, National Association of Women Lawyers, to Myles V. Lynk, Chair, ABA Standing Committee on Ethics and Professional Responsibility (July 21, 2016), https://www.americanbar.org/content/dam/aba/administrative/profe ssional_responsibility/nawl_letter_support_resolution_109.pdf .................6, 7, 8

x

# TABLE OF AUTHORITIES—Continued

Page(s)

Letter from National Diverse Bar Association to Myles V. Lynk,
Chair, ABA Standing Committee on Ethics and Professional
Responsibility (July 22, 2016),
https://www.americanbar.org/content/dam/aba/administrative/profe
ssional_responsibility/national_affinity_bars_letter_support_model
_rule_8_4.pdf ...................................................................................................6

Marianne Bertrand and Sendhil Mullainathan, *Are Emily and Greg
More Employable Than Lakisha and Jamal? A Field Experiment
on Labor Market Discrimination* (Sept. 2004),
https://cos.gatech.edu/facultyres/Diversity_Studies/Ber-
trand_LakishaJamal.pdf .................................................................................23

Materials surrounding the adoption of Resolution 109, Model Rule of
Professional Conduct 8.4 (Aug. 18, 2018),
https://www.americanbar.org/groups/professional_responsibility/c
ommittees_commissions/ethicsandprofessionalresponsibility/modr
uleprofconduct8_4/ ..........................................................................................5

MCCA, LGBTQ+ Article III Judges,
https://mcca.com/resources/reports/federal-judiciary/lgbt-judges/ ...................16

MCCA's 18th Annual General Counsel Survey: Breaking Through the
Concrete Ceiling, One Woman at a Time. Minority Corporate
Counsel Association, Winter 2017, https://www.pbi.org/docs/de-
fault-source/default-document-library/10569_a-current-glance-at-
women-in-the-law-jan-2018-(1).pdf?sfvrsn=0 ..................................................25

Meghann Cunnif, *Judge to Refer Male Attorney for Possible Disci-
pline After Discovering 'See You Next Tuesday' Is 'Covert Insult'
to Women*, Law & Crime (July 25, 2022),
https://lawandcrime.com/awkward/judge-to-refer-male-attorney-
for-possible-discipline-after-discovering-see-you-next-tuesday-is-
covert-insult-to-women/ ...................................................................................18

## TABLE OF AUTHORITIES—Continued

Page(s)

National Native American Bar Association, *The Pursuit of Inclusion: An In-Depth Exploration of the Experiences and Perspectives of Native American Attorneys in the Legal Profession*, (Feb. 11, 2015) 2015-02-11-final-NNABA_report_pp6.pdf ......................................13, 27

New York State Bar Association, If Not Now, When? Attorneys in the Courtroom and in ADR (2017), https://nysba.org/NYSBA/Practice%20Resources/Substantive%20 Reports/PDF/Com%20Fed%20Women%20Initiatives%20Report% 20Amended.pdf...................................................................................14

PACLE, Rules & Regulations, Preamble: Statement of Purpose, https://www.pacle.org/rules-and-regulations#reg_preamble ......................27, 33

Paulette Brown, ABA President, Remarks at Public Hearing on Amendments to ABA Model Rule 8.4 (Feb. 7, 2016), https://www.americanbar.org/content/dam/aba/administrative/profe ssional_responsibility/aba_model_rule%208_4_comments/februar y_2016_public_hearing_transcript.pdf ...............................................................5

R.H. Woody, *Jonathan Jasper Wright, Associate Justice of the Supreme Court of South Carolina, 1870–1877*, The Journal of Ne-gro History, Vol. 18 No. 2 (Apr. 1933) ...........................................................10

Report on the Participation of Women Lawyers as Lead Counsel and Trial Counsel in Litigation (2015), https://www.americanbar.org/content/dam/aba/administrative/wom en/first_chairs_final.pdf...................................................................................15

Sam Hananel, Release: *New CAP Report Shows Stunning Lack of Di-versity in Federal Judiciary*, American Progress Report *New CAP Report Shows Stunning Lack of Diversity in Federal Judiciary,* American Progress Report (Oct. 3, 2019), https://www.americanprogress.org/press/release/2019/10/03/47534 6/release-new-cap-report-shows-stunning-lack-diversity-federal-judiciary/ ...........................................................................................16

# TABLE OF AUTHORITIES—Continued

Page(s)

Stephanie A. Scharf & Roberta D. Liebenberg, ABA Commission on
Women in the Profession, First Chairs at Trial: More Women Need
Seats at the Table–A Research Report on the Participation of
Women Lawyers as Lead Counsel and Trial Counsel in Litigation
(2015), https://www.americanbar.org/content/dam/aba/administra-
tive/women/first_chairs_final.pdf.................................................................14, 15

Stephen Worthington, *Eluding Equity: School Segregation in
Pennsylvania*, Penn State Law Review (Apr. 4, 2014)
https://www.pennstatelawreview.org/the-forum/eluding-equity-
school-segregation-in-pennsylvania/ ................................................................10

Supreme Court of Pennsylvania Continuing Legal Education Board,
https://www.pacle.org/about.................................................................................32

Susan Hagen-Rochester, *Is American Bar Association Biased Against
Women and Minority Judges*? (Feb. 28, 2018),
https://www.futurity.org/aba-biased-women-minority-judicial-
nominees/ ...........................................................................................................25

Theresa Beiner, *Not All Lawyers Are Equal: Difficulties That Plague
Women and Women of Color*, 58 Syracuse L. Rev. 317 (2007-
2008) ....................................................................................................................14

Todd Burroughs, *The Current State of Black Lawyers, In and Out of
the Civil Rights Arena* (Jan./Feb. 2007), https://mcca.com/mcca-
article/current-state-of-black-lawyers/.................................................................11

Tonja Jacobi and Dylan Schweers, *Female Supreme Court Justices
Are Interrupted More by Male Justices and Advocates*, Harvard
Business Review (Apr. 11, 2017) https://hbr.org/2017/04/female-
supreme-court-justices-are-interrupted-more-by-male-justices-and-
advocates..............................................................................................................24

U.S. Department of Labor's Bureau of Labor Statistics,
https://www.bls.gov/cps/cpsaat11.htm ................................................................12

**TABLE OF AUTHORITIES—Continued**

Page(s)

Understanding Implicit Bias, The Kirwan Institute for the Study of
Race and Ethnicity, The Ohio State University (2015)
https://kirwaninstitute.osu.edu/sites/default/files/pdf/2015-implicit-
bias-review.pdf ................................................................................23

Understanding Implicit Bias, The Kirwan Institute for the Study of
Race and Ethnicity, The Ohio State University (2016),
https://kirwaninstitute.osu.edu/sites/default/files/pdf/2016-implicit-
bias-review.pdf ................................................................................23

US Census Bureau,
https://www.census.gov/quickfacts/fact/table/philadelphiacountype
nnsylvania/AGE775221 ....................................................................11

Women Lawyers On Guard Inc. and Nextions, *Still Broken: Sexual
Harassment and Misconduct in the Legal Profession* (July 2020)
https://womenlawyersonguard.org/wp-content/up-
loads/2020/03/Still-Broken-Full-Report-FINAL-3-14-2020.pdf .......................26

## INTERESTS OF *AMICI CURIAE*[1]

*Amici*, Hispanic National Bar Association (HNBA), National Asian Pacific American Bar Association (NAPABA), Asian Pacific American Bar Association of Pennsylvania (APABA-PA), National Bar Association (NBA), National Native American Bar Association (NNABA), National LGBTQ+ Bar Association (LGBTQ+ Bar), and National Association of Women Lawyers (NAWL), are some of the largest affinity bars serving under-represented members of the legal profession across the United States. They are among those named in Pennsylvania Rule of Professional Conduct 8.4(g) as protected from discrimination, harassment and bias in the practice of law and they aim to assist the Court by bringing an added perspective to the issues presented in this case that is not represented directly by the parties.

The HNBA is a non-profit organization that represents the interests of Hispanic legal professionals in the United States and its territories. The HNBA has members across the U.S., including in Pennsylvania. The HNBA is committed to advocacy on issues of importance to the Hispanic community living in the United States.

---

[1] All parties consent to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amici* state that no party's counsel authored this brief in whole or in part, and that no party or person other than *amici* or their counsel contributed money toward the preparation or filing of this brief.

1

The NAPABA is the nation's largest Asian Pacific American membership organization, representing the interest of 60,000 attorneys, judges, law professors, and law students.  NAPABA serves as the national voice for the Asian Pacific American legal profession.  It promotes justice, equity, and opportunity for Asian Pacific Americans and fosters professional development, legal scholarship, advocacy, and community involvement toward achieving those goals.

The APABA-PA is a non-profit organization that represents the interests of Asian Pacific American attorneys, judges, law professors, and law students  in Pennsylvania, Northern Delaware and Southern New Jersey.  Its mission is to support the advancement of Asian Pacific American attorneys and to promote justice, equity, and legal access, especially for all Asian Pacific American communities.

The NBA is the nation's largest national network of predominantly African-America attorneys and judges.  Its mission is to advance the science of jurisprudence; improve the administration of justice; preserve the independence of the judiciary and uphold the honor and integrity of the legal profession; to promote professional and social intercourse among the members of the American and the international bars; to promote legislation that will improve the economic condition of all American citizens, regardless of race, sex or creed in their efforts to secure a free and untrammeled use of the franchise guaranteed by the Constitution of the United States; and

to protect the civil and political rights of the citizens and residents of the United States.

The NNABA is the nation's largest national network of predominantly Native-America attorneys and judges and serves to raise the visibility of Native American attorneys in the legal profession. Although the NNABA shares many of the same goals of diversity and increased understanding of our communities' unique cultural and legal issues with other minority bar associations, most of its members are both U.S. citizens and citizens of their respective Tribal nations and, therefore, also share the communal responsibility, either directly or indirectly, of protecting the governmental sovereignty of the more than 560 independent Native American Tribal governments in the United States.

The LGBTQ+ Bar is a non-profit organization with more than 10,000 members and subscribers including lawyers, judges, legal academics, law students, and affiliated legal organizations supportive of lesbian, gay, bisexual, transgender, and queer rights. The LGBTQ+ Bar and its members work to promote equality for all people regardless of sexual orientation or gender identity or expression, and fight discrimination against LGBTQ+ people as legal advocates.

The NAWL has been empowering women in the legal profession since 1899, cultivating a diverse membership dedicated to equality, mutual support, and collective success. The mission of the NAWL is to provide leadership, a collective voice,

and essential resources to advance women in the legal profession and advocate for the equality of women under the law. the NAWL represents the interests of thousands of women lawyers, judges, law professors, and law students, including hundreds in Pennsylvania.

# INTRODUCTION

> *"Lawyers have a unique position in society as professionals responsible for making our society better. Our rules of professional conduct require more than mere compliance with the law. Because of our unique position as licensed professionals and the power that it brings, we are the standard by which all should aspire. Discrimination and harassment . . . is, and unfortunately continues to be, a problem in our profession and in society. Existing steps have not been enough to end such discrimination and harassment."*[2]

Equality and respect for all individuals lie at the heart of our legal system. Discrimination and harassment by lawyers, including conduct manifesting bias or prejudice towards others, undermine confidence in the legal profession and the legal system.

In furtherance of these unassailable principles, in August 2016 the ABA House of Delegates approved Resolution 109 to amend Model Rule of Professional Conduct 8.4 to include an anti-harassment and anti-discrimination provision.[3] Pre-

---

[2] Paulette Brown, ABA President, Remarks at Public Hearing on Amendments to ABA Model Rule 8.4 (Feb. 7, 2016), https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/aba_model_rule%208_4_comments/february_2016_public_hearing_transcript.pdf.

[3] *See generally* Materials surrounding the adoption of Resolution 109, Model Rule of Professional Conduct 8.4 (Aug. 18, 2018), https://www.americanbar.org/groups/professional_responsibility/committees_commissions/ethicsandprofessionalresponsibility/modruleprofconduct8_4/.

existing rules focused on discrimination and harassment in the context of the administration of justice; the amendment to ABA Model Rule 8.4(g) expanded the scope to include all areas related to the practice of law.

*Amici*, the Hispanic National Bar Association (HNBA), the National Asian Pacific American Bar Association (NAPABA), the National Bar Association (NBA), the National Native American Bar Association (NNABA), the National LGBTQ+ Bar, and the National Association of Women Lawyers (NAWL) joined other affinity bar groups to express strong support for Resolution 109.[4] *Amici*'s highest priority in supporting the resolution was to assure an end to discrimination and harassment in the legal profession, promoting the equal representation of and opportunity for diverse attorneys: "[I]t is time for our profession to unequivocally demand that discrimination and harassment in conduct relating to the practice of law is unethical, and that all lawyers have the right to function in a profession that is free from such conduct."[5] Citing "real life examples from our experiences," *Amici* showed

---

[4] *See* Letter from National Diverse Bar Association to Myles V. Lynk, Chair, ABA Standing Committee on Ethics and Professional Responsibility (July 22, 2016), https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/national_affinity_bars_letter_support_model_rule_8_4.pdf. (NDBA Letter); Letter from Marsha L. Anastasia, President, National Association of Women Lawyers, to Myles V. Lynk, Chair, ABA Standing Committee on Ethics and Professional Responsibility (July 21, 2016), https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/nawl_letter_support_resolution_109.pdf (NAWL Letter).

[5] NDBA Letter at 2, *supra* note 4.

the direct link from discrimination and harassment to persistent under-representation of many minority groups in the legal profession.[6] This included "a constant state of 'otherness' that requires our members to justify their right to simply be an equal member at the bar or at the table" with concerns playing out "in situations including, but not limited to, pay disparities and exclusion from case assignments, opportunities, development, sponsorship, or resources" while "[s]tudy after study has shown stagnant progress of women and diverse attorneys in the profession, against the backdrop of an America, and of a profession, that is becoming increasingly diverse."[7] *Amici* urged the adoption of the proposed rule as "a mechanism for removing barriers to advancement for women and minorities in a profession that is charged with providing justice for all." The amended rule was "necessary because explicit and implicit discrimination is still pervasive in our institutions as well as across a counsel table."[8] *Amici's* letter concluded:

> Our members experience unequal pay for equal work, misogynistic comments and actions by opposing counsel, limited access to decision-makers, sexual harassment and objectification, inequitable reviews that lead to inequitable compensation, diminishing comments and behavior in meetings, and mistaken assumptions that undermine earned progression in the profession. Those who have experienced these instances of discrimination and harassment are the ones whose careers are derailed, stalled or halted

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

> while the perpetrators continue to climb the ladder of success un-
> impeded in what is essentially an endorsement of their behavior.[9]

After the ABA adopted the amendment to Model Rule 8.4, the Supreme Court of Pennsylvania made its own determination whether to similarly amend Pennsylvania Rule of Professional Conduct 8.4 and its corresponding comments. The Court concluded that Pennsylvania has a compelling interest in "eradicating discrimination and harassment, ensuring that the legal profession functions for all participants, maintaining the public confidence in the legal system's impartiality, and its trust in the legal profession as a whole."[10] It amended Rule 8.4(g) to allow Pennsylvania to regulate the attorneys it licenses to ensure "the efficient and law-based resolution of disputes and guaranteeing that its judicial system is equally accessible to all."[11]

The district court blocked that Rule because it apparently infringes speech protected under the First Amendment and it is too vague under the Fourteenth Amendment's Due Process Clause. That legal conclusion rests on a long string of contingencies and hypotheticals: Appellee *could* make an unspecified (and apparently offensive) statement about a controversial topic at a future CLE event, that someone in attendance *may* complain about that statement, and that Disciplinary

---

[9] NAWL Letter at 1, *supra* note 4.

[10] Defendants' Motion for Summary Judgment at 32, *Greenberg v. Goodrich*, No. 20-cv-03822 (E.D. Pa. Nov. 16, 2021), ECF No. 61.

[11] *Id.* at 2.

Counsel *might* investigate the incident and file a disciplinary complaint against Appellee. That was despite the last "might" in the string being entirely negated by a sworn declaration by Disciplinary Counsel that none of the situations hypothesized by Appellee would involve a violation of the rule.

We urge this Court to reverse the decision below. The text and goals of Pennsylvania Rule of Professional Conduct 8.4(g) are not only legal as Appellants' opening brief explains in careful detail—but also, as explained below, important and necessary to our legal profession.

## ARGUMENT

### I.    A LEGACY OF DISCRIMINATION AND THE RESULTING UNDER-REPRESENTATION OF WOMEN AND MINORITY GROUPS IN THE LEGAL PROFESSION REMAINS A SIGNIFICANT PROBLEM.

The history of discrimination, harassment, and bias against the groups protected by Rule 8.4(g) is well documented. It took a ruling by the Supreme Court in *Sweatt v. Painter*, 339 U.S. 629 (1950), to mandate the admission of the first African American to the University of Texas Law School. Like many states, Pennsylvania struggled with desegregation in the public school system in the decades following

the Supreme Court's decision in *Brown v. Board of Education*.  Indeed, in Philadelphia, school segregation *increased* in the ten years following the decision.[12]  Successful Pennsylvania school desegregation cases continued to be filed in the 1960s and 1970s, against strong opposition.  *See, e.g.*, *Chisholm v. Bd. of Pub. Educ.*, 240 F. Supp. 862 (E.D. Pa 1965); *Hoots v. Commonwealth of Pa.*, 359 F. Supp. 807, 813 (W.D. Pa. 1973).  Resolution of the cases lingered as late as the early 2000s.[13]

Minority candidates sought admission to law school and the Pennsylvania Bar against this forbidding historical backdrop.  The first Black lawyer in Pennsylvania, Jonathan Jasper Wright, was denied admission to the Pennsylvania bar until 1865, after passage of the post-Civil War Civil Rights Acts.[14]  Between 1955 to 1970, a mere 83 Black lawyers were admitted to the Pennsylvania Bar.[15]  Even by the 1970s,

---

[12] Anne E. Phillips, *A History Of The Struggle For School Desegregation In Philadelphia, 1955–1967*, Pennsylvania History: A Journal of Mid-Atlantic Studies, Vol. 72, No. 1, at 51 (2005).

[13] Stephen Worthington, *Eluding Equity: School Segregation in Pennsylvania*, Penn State Law Review (Apr. 4, 2014), https://www.pennstatelawreview.org/the-forum/eluding-equity-school-segregation-in-pennsylvania/.

[14] R.H. Woody, *Jonathan Jasper Wright, Associate Justice of the Supreme Court of South Carolina, 1870 – 1877*, The Journal of Negro History, vol. 18 no. 2 (April 1933).

[15] Carl Singley, *Standing on the Shoulders: the Black Philadelphia Lawyer*, The Philadelphia Lawyer, vol. 82 no. 2 (July 10, 2019), http://cdn.coverstand.com/7683/601526/57d26f2e1a54eaa95954d80c14147af48164917b.15.pdf.

there still were only 4,000 Black lawyers in the United States[16] – and fewer than 300 of them were in Pennsylvania.[17]

Because Black lawyers were not granted full access in the profession due to discrimination, they could not realize their potential as attorneys. Even as of 2021, Philadelphia – the nation's sixth-largest city, with a population that is 43% Black[18] – still fares poorly for law firm diversity; only 7% of all law firm partners in Philadelphia are lawyers of color. *See* 2022 ABA Profile of the Legal Profession, at 28 (July 2022), https://www.americanbar.org/content/dam/aba/administrative/news/2022/07/profile-report-2022.pdf.

The pace of appointment of Hispanic, Asian American, Black, Native American, and other historically discriminated against groups to the bench has also been late and slow. The glacial pace of change in the legal profession is not Pennsylvania's problem alone. As recently as 2021, the U.S. Department of Labor's Bureau of Labor Statistics reported that 87.9% of lawyers are White, a higher percentage

---

[16] Todd Burroughs, *The Current State of Black Lawyers, In and Out of the Civil Rights Arena* (Jan./Feb. 2007), https://mcca.com/mcca-article/current-state-of-black-lawyers/.

[17] Charles Mitchell, *The Black Philadelphia Lawyer*, 20 Vill. L. Rev. 371 (1974), https://digitalcommons.law.villanova.edu/cgi/viewcontent.cgi?article=2078&context=vlr.

[18] *See* US Census Bureau, https://www.census.gov/quickfacts/fact/table/philadelphiacountypennsylvania/AGE775221.

than in any other profession including architects, accountants, and physicians.[19] This statistic has been stubbornly unchanged since 2015, when the *Washington Post* reported that the law is one of the least racially diverse professions in America, with 88% of lawyers being white.[20]

In fact, *all* people of color are under-represented in the legal profession. Only 4.5% of lawyers are Black, but 13.4% of Americans are Black.[21] Hispanics make up about 18% of the U.S. population; however, less than 6% of all lawyers in the U.S. are Hispanic.[22] Less than 5% of lawyers are Asian Americans compared to amounting to 6% of the U.S. population.[23] Latinas in the legal profession suffer the lowest representation of *any* racial or ethnic group as compared to their overall presence in the national population.[24] And Native American lawyers, for their part, have

---

[19] *See* U.S. Department of Labor's Bureau of Labor Statistics, https://www.bls.gov/cps/cpsaat11.htm.

[20] *See* Deborah L. Rhode, *Law is the least diverse profession in the nation. And lawyers aren't doing enough to change that,* Washington Post (May 27, 2015 8:25am), https://www.washingtonpost.com/posteverything/wp/2015/05/27/law-is-the-least-diverse-profession-in-the-nation-and-lawyers-arent-doing-enough-to-change-that/.

[21] *Id.*

[22] 2022 ABA Profile of the Legal Profession (July 2022), https://www.americanbar.org/content/dam/aba/administrative/news/2022/07/profile-report-2022.pdf.

[23] Chung, E., Dong, S., Hu, X. A., Liu, G., and Kwon, C.A, *Portrait of Asian Americans in the Law,* (2017) https://www.apaportraitproject.org/.

[24] Joanna Andrade Lehmann, *The Ongoing Struggle of Latina Women in Law*, The Daily Business Review (May 19, 2022), https://www.law.com/dailybusinessreview/2022/05/19/the-ongoing-struggle-of-latina-women-in-law/.

been largely excluded from the legal profession altogether.[25]  In 2010, for example, Native American lawyers comprised only 0.2% of all attorneys in the United States.[26]

This lack of racial diversity in the legal profession pervades the private practice of law.  According to the 2021 Minority Corporate Counsel Association (MCCA) Law Firm Diversity Survey, only 5% of associates and fewer than 2% of law firm partners are Black.[27]  Fewer than 1% of law firm partners are Black women.[28]  Only 6% of associates and fewer than 3% of partners are Latino.[29]  The numbers are even lower for Latina attorneys, with only 2.7% of associates and 0.8% of law firm partners being Latina.[30]  The attrition rate of attorneys from under-represented racial and ethnic groups who left law firms was much higher than for White attorneys.[31]

---

[25] National Native American Bar Association, *The Pursuit of Inclusion:  An In-Depth Exploration of the Experiences and Perspectives of Native American Attorneys in the Legal Profession*, (Feb. 11, 2015) 2015-02-11-final-NNABA_report_pp6.pdf. (NNABA).

[26] *Id.*

[27] 2021 Minority Corporate Counsel Association (MCCA) Law Firm Diversity Survey, https://mcca.com/wp-content/uploads/2021/12/2021-MCCA-Law-Firm-Diversity-Survey-Report.pdf.

[28] Lehmann, *supra* note 24.

[29] ABA Profile*, supra* note 22.

[30] *Id.*

[31] MCCA, *supra* note 27.

13

As for women in the legal profession, although they have represented on average almost 50% of all law school graduates since the mid-1990's[32] and make up 38% of all attorneys at surveyed firms, they still only represent roughly 20% of law firm partners. [33]  Indeed, men are five times more likely to make partner than women—and that is so, even controlling for other factors such as law school grades and time spent out of the workforce or on part-time schedules.[34]

The same is true for General Counsel positions: women only represent 26% of General Counsel in Fortune 500 companies;[35] and 23% of General Counsel in Fortune 501 to 1,000 companies.[36]  And women are consistently under-represented in lead counsel positions and in the role of trial attorney:[37]

---

[32] Elizabeth Katz, Kyle Rozema, and Sarath Sanga, *Women in U.S. Law Schools, 1948-2021* (Aug. 16, 2022), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4194210.

[33] *Id.*

[34] Theresa Beiner, *Not All Lawyers Are Equal: Difficulties That Plague Women and Women of Color*, 58 Syracuse L. Rev. 317 (2007-2008).

[35] American Bar Association - Commission on Women in the Profession , *A Current Glance at Women in the Law* (January 2018), https://www.pbi.org/docs/default-source/default-document-library/10569_a-current-glance-at-women-in-the-law-jan-2018-(1).pdf?sfvrsn=0.

[36] *Id.*

[37] *See* New York State Bar Association, If Not Now, When? Attorneys in the Courtroom and in ADR (2017), https://nysba.org/NYSBA/Practice%20Resources/Substantive%20Reports/PDF/Com%20Fed%20Women%20Initiatives%20Report%20Amended.pdf; Stephanie A. Scharf & Roberta D. Liebenberg, ABA Commission on Women in the Profession, First Chairs at Trial: More Women Need Seats

- In civil cases surveyed, 68% of all lawyers were men;[38]

- In civil cases surveyed, 76% of the lead counsel were men;[39]

- 87% of lead counsel in class actions are men;[40] and

- In criminal cases surveyed, 67% of lawyers were men.[41]

Once again, the reasons for the under-representation are not mysterious. A recent study found that 35% of female lawyers have been sexually harassed at work and 70% of female lawyers reported hearing sexist comments, stories, or jokes at work.[42] Of those harassment victims, 77% never reported the incident.[43]

A lack of gender and racial diversity also persists in the federal and state judiciary. On the federal bench, as of October 2019, 80% of all sitting federal judges

---

at the Table–A Research Report on the Participation of Women Lawyers as Lead Counsel and Trial Counsel in Litigation at 15 (2015), https://www.americanbar.org/content/dam/aba/administrative/women/first_chairs_final.pdf .

[38] *Id.* at 9.

[39] *Id.* at 10.

[40] *Id.* at 12.

[41] *Id.* at 13.

[42] Joan C. Williams, Marina Multhaup, Su Li, and Rachel Korn, *You Can't Change What You Can't See,* at 9 (2018), https://mcca.com/wp-content/uploads/2018/09/You-Cant-Change-What-You-Cant-See-Executive-Summary.pdf.

[43] *Id.*

were white; 73% were male.[44]  Less than half of one percent of all federal judges

identify as Native American.[45] [46]  Only 33% of active U.S. district court judges and

35% percent of federal courts of appeals judges are women.[47]  Asian Americans

comprise only 3% of federal judges.[48] Currently, there are only 11 openly LGBTQ+

judges.[49]  State courts are not immune.[50]  In state high courts, only 36% of judges

are women; in state intermediate appellate courts 39%; and in state trial courts

33%.[51]  Asian Americans comprise only 2% of state judges[52] and women of color

represent only 18% of all state court judges.[53]  This under-representation of women

and people of color in the legal profession has damaged the public's perception of

---

[44] Sam Hananel, Release: New CAP Report Shows Stunning Lack of Diversity in Federal Judiciary, (Oct. 3, 2019),  https://www.americanprogress.org/press/release/2019/10/03/475346/release-new-cap-report-shows-stunning-lack-diversity-federal-judiciary/.

[45] ABA Profile, *supra* note 22.

[46] On May 18, 2022, Sunshine Suzanne Sykes (Navajo Nation) was confirmed by the United States Senate as a federal district judge for the United States District Court for the Central District of California which may marginally change this number.

[47] *Id.*

[48] Chung, *supra* note 23.

[49] MCCA, LGBTQ+ Article III Judges, https://mcca.com/resources/reports/federal-judiciary/lgbt-judges/.

[50] *Id.*

[51] *Id.*

[52] Chung, *supra* note 23.

[53] The Gavel Gap, https://gavelgap.org/.

the profession, and the Pennsylvania Supreme Court wanted to prevent this conduct through its regulation of the bar and specifically Rule 8.4(g).

## II. ATTORNEY DISCIPLINE PROCEEDINGS DEMONSTRATE THE BREADTH AND DEPTH OF HOSTILITY TOWARD UNDER-REP-RESENTED POPULATIONS IN THE LEGAL PROFESSION.

There is no denying that the legal profession has a long way to go in the pro-motion of racial, gender, and sexual-identity equity. One need only look at recent discipline cases condemning lawyer conduct that Rule 8.4(g) prohibits.

### A. In the Courtroom

- In a domestic relations case, an attorney repeatedly referenced the wife's new boyfriend as "the black man" or "the black guy" and implied that his race was bad for the child;[54]

- Another lawyer made "racial innuendo," accusing prosecutor of "turn-ing black" during court recess;[55]

- One male attorney referred to female attorney as a "crazy chicken" and "girl" during hearing;[56]

---

[54] *In re Thomsen*, 837 N.E.2d 1011 (Ind. 2005).

[55] *In re Vincenti*, 554 A.2d 470 (N.J. 1989).

[56] *In re Valcarcel Mulero I*, 142 D.P.R. 41 (1996).

17

- Judge to referred male attorney for possible discipline after discovering "See You Next Tuesday" is "covert insult" to women.[57]

- Another lawyer approached a social worker who had just testified at a hearing and called her a "baby-snatching b[****];"[58]

- Another attorney "made offensive comments to court reporter about her breasts."[59]

## B.    In Court Filings and Depositions

- One lawyer called opposing counsel "babe" and made other derogatory sexual remarks;[60]

- Another male attorney addressed female attorney as "dear," "hon," and a "sorry girl," said she had a "cute little thing going on," and asked why she was not wearing her wedding ring during deposition;[61]

---

[57] Meghann Cunnif, Law & Crime (July 25, 2022), https://lawandcrime.com/awkward/judge-to-refer-male-attorney-for-possible-discipline-after-discovering-see-you-next-tuesday-is-covert-insult-to-women/.

[58] *Att'y Grievance Comm'n v. Sanderson*, 213 A.3d 122, 136, 159 (Md. 2019).

[59] *In re Disciplinary Procs. Against Beatse*, 722 N.W.2d 385, 388 (Wis. 2006).

[60] *Mullaney v. Aude*, 730 A.2d 759, 767 (Md. Ct. Spec. App. 1999).

[61] *Laddcap Value Partners, LP v. Lowenstein Sandler P.C.*, No. 600973-2007, 2007 WL 4901555 (N.Y. Sup. Ct. Dec. 5, 2007).

- Another male attorney joked about female attorney "getting menopause";[62]

- Another attorney unsuccessfully argued against discipline for making anti-Semitic remarks to opposing counsel in a deposition because he had a right to represent his client vigorously and zealously; [63]

- Another male attorney called opposing counsel "little lady," "young girl," and "little girl". [64]

## C.    In Chambers

- One judge was disciplined for a litany of "indelicate sexual and ethnic remarks";[65]

- One California judicial discipline case involved a raft of racist remarks, including "Mexican jumping bean" and "tamales" labels;[66]

- Another lawyer was disciplined for sending two ex parte communications to a trial judge asking whether the judge would believe an alien or a U.S. citizen;[67]

---

[62] *Cruz-Aponte v. Caribbean Petrol. Corp.*, 123 F. Supp. 3d 276 (D.P.R. 2015).

[63] *In re Williams*, 414 N.W.2d 394, 396 n.6 (Minn. 1987).

[64] *Principe v. Assay Partners*, 586 N.Y.S.2d 182 (Sup. Ct. 1992).

[65] *Gonzalez v. Comm'n on Jud. Performance*, 657 P.2d 372, 381-82 (Cal. 1983).

[66] *In re Stevens*, 645 P.2d 99, 99-100 (Cal. 1982).

[67] *In re McGrath*, 280 P.3d I 091 (Wash. 2012) (*en banc*).

- One lawyer representing a father at a child support hearing was disciplined for making repeated disparaging references to the mother's lack of U.S. citizenship and receipt of free legal services;[68]

- Another lawyer was sanctioned for making overtly sexual comments to a judge, clerk, and judicial assistant.[69]

### D.    Workplace and Client Contact

- In office emails, one lawyer referred to a Black female judge as "Ghetto Hippopotamus" and "a despicable impersonation of a human woman, who ought to [have] her cervix yanked out of her by the Silence of the Lamb[s] guy, and force[-]fed to her," among other remarks;[70]

- Another attorney sent a 20-page anti-Semitic screed to client;[71]

- Another lawyer was sanctioned for calling the judge as a "c***" while negotiating a plea deal for his client;[72]

---

[68] *In re Campiti*, 937 N.E.2d 340 (Ind. 2009).

[69] *People v. Malouff*, No. 20PDJ055, 2020 WL 5629838 (Colo. O.P.D.J. Aug. 25, 2020).

[70] *Att'y Grievance Comm'n v. Markey*, 230 A.3d 942, 944 (Md. 2020).

[71] *Att'y Grievance Comm'n v. Maiden*, --- A.3d ---, 2022 WL 2977055 (Md. July 28, 2022).

[72] *People v. Gilbert*, No. 10PDJ067, at 13-16 (Colo. O.P.D.J. Jan. 14, 2011).

- Another lawyer was sanctioned for telling a client's Black son that he was "behaving like some kid out of the ghetto";[73]

- Another lawyer was sanctioned for calling his client's mother a "c***" in a text message;[74]

- Another lawyer was disciplined for sexually harassing four female clients and one female employee;[75]

- A district attorney was disciplined for sending inappropriate texts to the victim of domestic abuse;[76]

- A lawyer acting as an adjunct professor and supervising law students in a clinic was disciplined for making unwelcome comments about the student's appearance and engaging in unwelcome physical contact of a sexual nature with the student;[77]

---

[73] *People v. Wareham*, No. 17PDJ021, 2017 WL 4173661, at *1 (Colo. O.P.D.J. Sept. 13, 2017).

[74] *People v. Frazier*, No. 19PDJ053, 2019 WL 7604760 (Colo. O.P.D.J. Dec. 30, 2019).

[75] *In re Moothart*, 860 N.W.2d 598 (Iowa 2015).

[76] *In re Kratz*, 851 N. W.2d 219 (Wis. 2014).

[77] *In re Griffith*, 838 N.W.2d 792 (Minn. 2013).

- Another attorney was disciplined for unwanted sexual advances on coworker, including physical contact plus offering her money to buy "lucky underwear" and telling her to wear makeup. [78]

### E.    Social Media and Other Public Speech

- One attorney was charged by the bar's Grievance Committee for engaging in a racist rant and threating to call immigration on Midtown Fresh Kitchen workers for speaking Spanish, and he agreed to submit to discipline for that misconduct;[79]

- Another attorney was disbarred for making disparaging remarks about a judge and two attorneys on social media;[80]

- Another lawyer was disciplined for violating Lawyer's Oath requiring lawyers to "maintain the dignity of the legal system" after posting offensive comments regarding George Floyd on Facebook.[81]

Without Rule 8.4 or its Pennsylvania equivalent, these scenarios may not subject lawyers to bar discipline.  That is what Rule 8.4 was designed to address.

---

[78] *In re DeLadurantey*, 976 N.W.2d 844, 846-47 (Wis. 2022).

[79] *In re Schlossberg*, 137 N.Y.S.3d 44 (N.Y. App. Div. 2020).

[80] *Florida Bar v. Krapacs*, No. SC19-277, 2020 WL 3869584 (Fla. July 8, 2020); *In re Krapacs*, 138 N.Y.S.3d 290 (N.Y. App. Div. 2020).

[81] *In re Traywick*, 860 S.E.2d 358 (S.C. 2021).

## III.   CONTINUED DISCRIMINATION, HARASSMENT, AND BIAS IN THE LEGAL WORKPLACE DEMONSTRATES THE NEED FOR RULE 8.4(g).

Discrimination, harassment, and bias persist in our profession *despite* federal and state anti-discrimination laws and still exist at all levels of society.[82] Workplace discrimination, harassment, and bias takes many forms, but a pattern persists:  certain demographic groups within the workforce are unfairly excluded from experiences and opportunities for which they are qualified.[83]  Studies repeatedly document that discrimination, harassment, and bias in the practice of law are not confined to the courtroom and, in fact, negatively impact the legal workplace from law school preparation to the Supreme Court:

- Resumes with "ethnic" names are disproportionately not selected for interviews;[84]

---

[82] *See* Understanding Implicit Bias, The Kirwan Institute for the Study of Race and Ethnicity, The Ohio State University, (2015) https://kirwaninstitute.osu.edu/sites/default/files/pdf/2015-implicit-bias-review.pdf;   Understanding Implicit Bias, The Kirwan Institute for the Study of Race and Ethnicity, The Ohio State University, (2016), https://kirwaninstitute.osu.edu/sites/default/files/pdf/2016-implicit-bias-review.pdf.

[83] *Id.*

[84] Marianne Bertrand and Sendhil Mullainathan, *Are Emily and Greg More Employable Than Lakisha and Jamal? A Field Experiment on Labor Market Discrimination* (Sept. 2004), https://cos.gatech.edu/facultyres/Diversity_Studies/Bertrand_LakishaJamal.pdf.

- Women on average receive lower starting pay than men;[85]

- Women law firm partners on average earn 30% less than male law partners;[86]

- Legal memos written by a Black associate may be evaluated more harshly than the identical memo presented by a White associate;[87]

- Female Supreme Court Justices are interrupted more often than male Justices;[88]

- Women lawyers cannot demonstrate anger in the same way as male lawyers without facing negative reactions;[89]

---

[85] Institute for Women's Policy Research, Pay Equity & Discrimination, https://iwpr.org/?s=pay+wage+gap.

[86] 2020 Partner Compensation Survey, Major Lindsey & Africa (Dec. 15, 2020), https://www.mlaglobal.com/en/insights/research/2020-partner-compensation-report.

[87] Dr. Arin N. Reeves, *Written in Black & White Exploring Confirmation Bias in Racialized Perceptions of Writing Skills*, Nextions (Apr. 1, 2014), https://nextions.com/insights/perspectives/written-in-black-white-exploring-confirmation-bias-in-racialized-perceptions-of-writing-skills/.

[88] Tonja Jacobi and Dylan Schweers, *Female Supreme Court Justices Are Interrupted More by Male Justices and Advocates*, Harvard Business Review (Apr. 11, 2017), https://hbr.org/2017/04/female-supreme-court-justices-are-interrupted-more-by-male-justices-and-advocates.

[89] Elizabeth Olson, *Women Lawyers Held to Tougher Standard When It Comes to Anger*, Bloomberg Law (Apr. 13, 2018), https://news.bloomberglaw.com/business-and-practice/women-lawyers-held-to-tougher-standard-when-it-comes-to-anger.

- Although women represent 50% of law school graduates since the mid-90s, the number of published women authors in the top ten law reviews in 2017 hovered around 20%;[90]

- Women only represent 32% of law school deans;[91]

- Women and minority judicial candidates receive lower qualification ratings from the ABA than do White males with identical qualifications;[92]

- Almost 70% of lawyer women of color say they were paid less than their colleagues with similar experience and seniority;[93]

- Lawyer women of color reported that they had been mistaken for administrative staff, court personnel, or janitorial staff at a level 50 percentage points higher than White males;[94]

---

[90] LawProfBlawg, *Are Law Review Articles A Waste Of Time?*, Above the Law (Apr. 17, 2018), https://abovethelaw.com/2018/04/are-law-review-articles-a-waste-of-time

[91] MCCA's 18th Annual General Counsel Survey: Breaking Through the Concrete Ceiling, One Woman at a Time. Minority Corporate Counsel Association, Winter 2017, https://www.pbi.org/docs/default-source/default-document-library/10569_a-current-glance-at-women-in-the-law-jan-2018-(1).pdf?sfvrsn=0.

[92] Susan Hagen-Rochester, *Is American Bar Association Biased Against Women and Minority Judges*?, (Feb. 28, 2018), https://www.futurity.org/aba-biased-women-minority-judicial-nominees/.

[93] Williams, *supra* note 42.

[94] *Id.*

- Women and lawyers of color reported higher levels of bias than White men regarding equal opportunities related to hiring, receiving fair performance evaluations, mentoring, receiving high-quality assignments, accessing networking opportunities, getting paid fairly, and getting promoted;[95]

- Most women lawyers report having experienced or witnessed sexual harassment in the workplace;[96]

- Sexual harassment still affects women lawyers at all levels, including judges, partners, general counsels and law professors;[97]

- Almost 70% of lawyer women of color report leaving or considering leaving the legal profession due to the challenges that they face;[98]

---

[95] *Id.*

[96] Legal Week, *Most Female Lawyers Have Experienced or Seen Workplace Sexual Harassment*, Law.com (Sept. 2019), https://www.law.com/international-edition/2019/09/11/most-female-lawyers-have-experienced-or-seen-workplace-sexual-harassment/.

[97]  Women Lawyers On Guard Inc. and Nextions, *Still Broken: Sexual Harassment and Misconduct in the Legal Profession* (July 2020) https://womenlawyersonguard.org/wp-content/uploads/2020/03/Still-Broken-Full-Report-FINAL-3-14-2020.pdf.

[98] Destiny Peery, Paulette Brown, and Eileen Letts, *Left Out and Left Behind: The Hurdles, Hassles, and Heartaches of Achieving Long-Term Legal careers for Women of Color* (June 22, 2020), https://www.americanbar.org/content/dam/aba/administrative/women/leftoutleftbehind-int-f-web-061020-003.pdf.

- 40% of Native American lawyers in one study reported experiencing demeaning comments or other types of harassment based on their tribal affiliation; [99]

- 33% of Native American lawyers reported experiencing one or more forms of discrimination based on their tribal affiliation; [100] and

- 30% of Native American lawyers reported that they felt they had been treated differently from their peers because of their tribal affiliation.[101]

Prohibiting Pennsylvania-licensed attorneys from discrimination and harassment in the practice of law is integral to promoting diversity in the state's legal profession, and eradicating conduct that is simply unacceptable.

## IV.   LAWYERS ARE OFFICERS OF THE COURT AND SHOULD BE ACCOUNTABLE FOR DISCRIMINATORY STATEMENTS AND ACTIONS, UNDER RULES OF PROFESSIONAL CONDUCT.

Members of the Pennsylvania bar  are representatives of clients, officers of the legal system, and  public citizens.  As such, they have a special responsibility for the quality of justice.[102]  The Pennsylvania Supreme Court has long looked to lawyers to maintain the integrity of the bar, for the benefit of the entire system of justice.

---

[99] NNABA, *supra* note 25.

[100] *Id.*

[101] *Id.*

[102] PA Rules of Professional Conduct Preamble ¶ 1

27

More than 140 years ago, the Court expressed that principle in *In re Davies*, 93 Pa. 116 (1880) when it stated, "[t]he position of a member of the bar is one of great responsibility. Good faith and integrity in his professional employments are essentially necessary. It is the duty of a court to see the proper standing is preserved." The disciplinary system is a crucial part of that process.[103] Pennsylvania's system of lawyer discipline is designed to protect the public from unfit attorneys and maintain the integrity of the legal system.[104] That is why the Pennsylvania Supreme Court has repeatedly emphasized the need to preserve public confidence in the legal profession and the judicial system.[105]

Appellee contends that lawyers could theoretically be subject to a bar complaint if they quote or repeat racist, homophobic, or sexist comments in a CLE program. He argues that, because those words might be taken personally or offensively by an individual in attendance, Rule 8.4(g) should be thrown out.

But Appellee is simply incorrect that a lawyer in Pennsylvania would be vulnerable to discipline just for quoting a case that in turn used offensive racial, gender or ethnic terms at a CLE. Among other things, Rule 8.4(g) was carefully drafted to

---

[103] *See, e.g., In Re Davies*, 93 Pa. 116 (1880) and its progeny.

[104] *See, e.g.*, *Off. of Disciplinary Counsel v. Glass,* 694 A.2d 1098 (Pa. 1997).

[105] *See Off. of Disciplinary Counsel v. Lewis*, 426 A.2d 1138, 1142 (Pa. 1981).

require "*intent*" to discriminate or harass.  That is why, for example, presenting of-

fensive racially biased content in a CLE seminar to explain how such content fac-

tored into a court decision or evidence in a trial concerning discrimination does not

violate Rule 8.4(g).

In fact, the Office of Disciplinary Counsel ("ODC"), which is responsible  for

investigating complaints against Pennsylvania-licensed attorneys for violating the

Pennsylvania Rules of Professional Conduct and charging and prosecuting attorneys

under the Pennsylvania Rules of Disciplinary Enforcement, has stated as much.[106]

The ODC receives complaints, determines whether complaints are frivolous or re-

quire further investigation, and whether the alleged conduct meets the standard re-

quired to pursue discipline.[107]  As Chief Disciplinary Counsel, Thomas J. Farrell has

authority to direct how ODC interprets the Rules of Professional Conduct, as well

as determining the ODC's policy on handling complaints, including those raising

First Amendment issues.[108]  All recommendations to the Disciplinary Board that

ODC pursue charges against an attorney require his review and express approval.[109]

---

[106] JA 275.

[107] JA 276.

[108] *Id.*

[109] *Id.*

The ODC interprets Rule 8.4(g) as encompassing only conduct which targets individuals by harassing or discriminating against an identifiable person.[110]  The ODC does not interpret Rule 8.4(g) as prohibiting general discussions of case law or "controversial" positions or ideas.[111]

Mr. Farrell stated under oath that *all* of the hypothetical violations identified in the Amended Complaint at ¶¶ 17-23, 26-32, 92-94, 97, 99, and 101 for speech in presentations, speeches, writings, and similar activities do not violate Rule 8.4(g), and the ODC would not pursue discipline for them.[112]  Thus, an allegation that someone was offended by a speech or writing that does not target individuals by harassing or discriminating, does not come within Rule 8.4(g), and the ODC would not pursue discipline on that basis.[113]  Indeed, the egregious conduct described in *In re Traywick*, 860 S.E.2d 358 (S.C. 2021), would not violate Pennsylvania Rule 8.4(g), and the ODC would not pursue discipline under the Rule on this basis.[114]

Appellee admits that he is not aware that anyone has filed a complaint of unethical conduct or other misconduct with the Pennsylvania ODC against him based

---

[110] *Id.*

[111] *Id.*

[112] *Id.*

[113] JA 278.

[114] *Id.*

upon his CLE presentations,[115] and that he never has had and has no *intention* in the future to intimidate, denigrate, show aversion or hostility, treat a person as inferior, or disregard relevant considerations of individual characteristics or merit because of any of the twelve bases enumerated in Pa. Rule 8.4(g).[116]

Appellee nevertheless wants this Court to throw out the baby with the bathwater. Because he can imagine a hypothetical bar complaint based on hypothetical unhappiness with a hypothetical statement in a CLE that Disciplinary Counsel *non hypothetically would not pursue*, he asks this Court to hold that Rule 8.4(g) violates the First Amendment. And, in doing so, Appellee seek to put Pennsylvania in a place of its own—where, unlike other jurisdictions, discrimination or harassment by attorneys is immunized from bar discipline. *Cf. In re Abrams*, 488 P.3d 1043 (Colo. 2021) (involving lawyer disciplined under Rule 8.4(g) for describing a judge as "gay, fat, fag" to a client).

The District Court thus overreached when it concluded that Rule 8.4(g) does not contain "reasonable contextual limitations" because it applies to CLE and other

---

[115] JA 313.

[116] JA 314.

related educational seminars where legal credits are offered.[117]  Professional educa-
tion for attorneys is required in most States as a condition for maintaining one's
license to practice law.  According to the ABA, CLEs "assist in expanding the ap-
preciation and understanding of the ethical and professional responsibilities and ob-
ligations of lawyers' respective practices; in maintaining certain standards of ethical
behavior; and in upholding and elevating the standards of honor, integrity, and cour-
tesy in the legal profession."[118]

Pennsylvania does require lawyers to participate in CLE, [119] which was
adopted to assure that lawyers admitted to practice in the Commonwealth continue
to maintain the requisite knowledge and skill necessary to fulfill their professional
responsibilities.[120]  The Preamble Statement of Purpose for the regulations adopted
by the Pennsylvania Rules for Continuing Legal Education ("PACLE") explains that
"[t]he public properly expects that lawyers, in the practice of the law, will maintain

---

[117] JA 113.  Rule 8.4(g) applies to "participation in judicial boards, conferences, or
committees; continuing legal education seminars; bench bar conferences; and bar
association activities where legal credits are offered." Pa. R.P.C. 8.4 cmt. 3.

[118] *Id.*

[119] *See* Supreme Court of Pennsylvania Continuing Legal Education Board,
https://www.pacle.org/about.

[120] *Id.*

throughout their careers certain standards of professional competence and ethical behavior."[121]

The CLE requirement is governed under the auspices of the Supreme Court of Pennsylvania. The PACLE requires that CLE shall be on the subjects of: (i) substantive law, practice, and procedure, (ii) lawyer ethics and the rules of professional conduct, (iii) professionalism, (iv) substance abuse as it affects lawyers and the practice of law.[122] The "standards" for CLE activities that qualify for credit include that the activity shall have significant intellectual or practical content, the primary objective of which is to improve the participants' professional competence and ethical behavior.[123]

It thus is difficult to conclude that CLE programing is not related to the administration of justice and practice of law in Pennsylvania. It is required as a technical matter to remain a practicing lawyer because it expands each lawyer's competence and understanding of professional responsibilities. CLE speakers know full well that they are doing so to help those in attendance keep up their level of preparedness to practice. Any suggestion that those attending such programs can be subject to discrimination without a remedy in the Rules of Professional Conduct undermines

---

[121] PACLE, Rules & Regulations, Preamble: Statement of Purpose, https://www.pacle.org/rules-and-regulations#reg_preamble.

[122] Pa. R.C.L.E. 105.

[123] *Id.*

and harms the profession. Put simply, those required to attend CLE should not be required to do so without assurance that they are protected from discrimination or harassment there.

Appellee also cannot explain how hateful speech designed to denigrate individuals on the basis of characteristics such as gender, ethnicity or race is less odious than false statements, or fraud, or misrepresentations. "[D]ishonesty, fraud, deceit or misrepresentation" are prohibited by Rule 8.4(c) in Pennsylvania even if not connected with the practice of law. *See* Pa. R. D.E. 301(a). Rule 8.4(g) is far narrower in that it only applies to lawyers in certain professional contexts. But the Pennsylvania Supreme Court should not be blocked from regulating targeted, discriminatory speech and conduct prohibited by Rule 8.4(g) based on Appellee's imaginings that he might become some kind of victim. The intentionally discriminatory conduct prohibited by Rule 8.4(g) damages the public's perception of the profession in ways that the Pennsylvania Supreme Court has long sought to prevent through its regulation of the bar.

## CONCLUSION

The claim that the First Amendment "entitles lawyers to make racist, sexist and homophobic statements in connection with law practice is an embarrassment."[124] A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, public officials and the community at large.[125]

For the foregoing reasons, and those in the Appellants' brief, the District Court's judgment should be reversed.

Respectfully submitted,

/s/ German A. Gomez
GERMAN A. GOMEZ
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
german.gomez@hoganlovells.com

BRITTANY C. ARMOUR
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
(267) 675-4600
brittany.armour@hoganlovells.com

---

[124] Debra Cassens Weiss, *Second state adopts ABA model rule barring discrimination and harassment by lawyers,* ABA Journal (June 13, 2019), https://www.aba-journal.com/news/article/second-state-adopts-aba-model-rule-barring-discrimination-by-lawyers.

[125] *Id.*

*Counsel for Amici Curiae Hispanic National Bar Association, National Asian Pacific American Bar Association, Asian Pacific American Bar Association of Pennsylvania, National Bar Association, National Native American Bar Association, National LGBTQ+ Bar Association, and National Association of Women Lawyers*

September 13, 2022

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Local R. 28.3(d) and Local R. 46.1(e), I certify that I, German A. Gomez, am admitted as an attorney and counselor of the United States Court of Appeals for the Third Circuit.

/s/ German A. Gomez
GERMAN A. GOMEZ
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
german.gomez@hoganlovells.com

September 13, 2022

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify the following:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 6,500 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Times New Roman 14-point font using Microsoft Office Word for Office 365.

3. This brief complies with the electronic filing requirements of Local R. 31.1(c) because the text of the electronic brief is identical to the text of the paper copies and because Microsoft Defender for Endpoint was run on the file containing the electronic version of this brief and no viruses were detected.

/s/ German A. Gomez
GERMAN A. GOMEZ
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
german.gomez@hoganlovells.com

September 13, 2022

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on September 13, 2022.  All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

I further certify that on September 13, 2022, seven (7) true and correct copies of the Brief for *Amici Curiae* Hispanic National Bar Association, National Asian Pacific American Bar Association, Asian Pacific American Bar Association of Pennsylvania, National Bar Association, National Native American Bar Association, National LGBTQ+ Bar Association, and National Association of Women Lawyers were sent to the Clerk of Court via Federal Express.

/s/ German A. Gomez
GERMAN A. GOMEZ
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
german.gomez@hoganlovells.com

September 13, 2022