NO. 22-1733

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

ZACHARY GREENBERG,
*Appellee*

v.

JERRY M. LEHOCKY, in his official capacity as Board Chair of the Disciplinary Board of the Supreme Court of Pennsylvania, *et al.*,
*Appellants*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania, No. 20-cv-03822

# AMICUS BRIEF OF PATRICK G. GOULD AS *AMICUS CURIAE* SUPPORTING APPELLEE ZACHARY GREENBERG'S PETITION FOR PANEL REHEARING OR REHEARING *En Banc*

PATRICK G. GOULD, Esq.
Professor
Handong International Law School
558 Handongro, Heuhae-eup, Buk-gu
Pohang, Gyeongbuk
Republic of Korea
Tel. 82-54-1713-7
Email: gould@handong.edu

*Amicus Curiae*

LAWRENCE G. PALADIN, JR., Esq
Paladin Law Offices, PC
850 Walnut St. #934
McKeesport, PA 15134-0934
Pa Bar 44799
Tel. 412/244-0826
Email:lpaladin@PaladinLawOffices.com
(Member of Third Circuit Bar)

*Counsel for Amicus Curiae*

# Table of Contents

Table of Contents … …………………………………………………….i

Table of Authorities ………………………………………………………..ii

Identity and Interest of Amicus Curiae……………………………………………1

Summary of Argument ……………………………………………………………2

Argument ……………………………………………………………………………3

**I.** Rule 8.4(g) Censors First Amendment Free Speech and Expression of Every Attorney in the Commonwealth, and Due to the Government's Unbridled Discretion to Interpret the Rule, Coupled with the Rule's Pervasive Vagueness, Appellee Suffers a Current and Fully Concretized Article III Harm Thereby Conferring Standing on Appellee to Facially Challenge the Rule in Federal Court, and to Potentially Invalidate the Rule *in toto,* while Disabling the Rule and Its Application for All Attorneys in the Commonwealth of Pennsylvania. ………………………..3

Conclusion......................................................................................................12

Certifications ...................................................................................................13

## Table of Authorities

Cases

*City of Lakewood v. Plain Dealer Publishing Co.*,
486 U.S. 750, 757 (1988)....................2, 7, 8

*US v. Davis*,
139 S. Ct. 2319 (2019)....................8

Constitutional Provisions

U.S. CONST., AMEND I....................*Passim*

Other Authorities

ABA,
Model Rule 8.4(g).................... *Passim*

## IDENTITY AND INTEREST OF AMICUS CURIAE

Amicus is a Professor of Law with the Handong International School of Law in Pohang, Gyeongbuk, South Korea, and supports efforts to advance correct interpretation of important constitutional rights along with preservation of a form of government dictated by the Constitution of the United States of America.

Amicus states that in accordance with L.A.R.29.1(a), that Amicus has considered the briefs of both the Appellee and Appellants in this matter, and has written the amicus brief with a view to avoiding any unnecessary repetition or restatement of those arguments in the amicus brief.

Amicus states that in accordance with L.A.R. 32.1(d), that Amicus formatted the brief in PDF format, and that the entire brief is contained in one electronic file.

Amicus states that in accordance with L.A.R.29.1(a), F.R.A.P. 29(4) that this brief was not authored in whole or in part by counsel, and no person or entity other than Amicus made a monetary contribution intended to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

In order to forward a claim in federal court, Appellee must establish Article III standing. Various documents in this litigation to date, have focused on the concept of imminent injury in a pre-enforcement as-applied context. This analysis is misguided. The proper focus regarding standing in this litigation is on Rule 8.4(g) (hereinafter, 'the Rule') itself. The Rule is a prior restraint on speech and expression which chills constitutionally protected speech and expression. The Rule gives Appellants unbridled interpretive discretion to censor the content and viewpoint-based speech and expression of every Attorney in the Commonwealth in an ongoing fashion. The Rule is also pervasively vague. The Rule's blatant unconstitutional infirmities "engender identifiable risks to free expression that can be effectively alleviated only through a facial challenge." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757 (1988).

Appellee's constitutional injury became real and concretized on the day that the Pennsylvania Supreme Court activated Rule 8.4(g) as applicable to Attorneys in the Commonwealth. The Rule – itself – is unconstitutional. The Rule's activation, alone, and its immedate and attendant chilling of speech, constitutes the constitutional harm. Due to the Rule's pervasive and irredeemable unconstitutionality, an as applied analysis of standing is inapplicable to this action. Rather, a facial analysis for standing is applicable to this action due to Appellants unconstitutional, unilateral, unquestionable,

unchallengeable, and unbridled discretion to interpret the Rule, coupled with the Rule's pervasive vagueness, which act in tandem to massively chill Appellee's speech and expression. As a facial challenge, if successful, this claim will invalidate the Rule for all Attorneys in the Commonwealth.

## ARGUMENT I

### Rule 8.4(g) Censors First Amendment Free Speech and Expression of Every Attorney in the Commonwealth, and Due to the Government's Unbridled Discretion to Interpret the Rule, Coupled with the Rule's Pervasive Vagueness, Appellee Suffers a Current and Fully Concretized Article III Harm Thereby Conferring Standing on Appellee to Facially Challenge the Rule in Federal Court, and to Potentially Invalidate the Rule *in toto,* while Disabling the Rule and Its Application for All Attorneys in the Commonwealth of Pennsylvania.

The so-called Farrell declaration has been used in this action to challenge standing within an as-applied pre-enforcement context. However, the proper lens to view standing in this case is through a facial challenge due to Appellants' prior restraint of constitutionally protected viewpoint and content-based speech and expression through a regulatory regime which is replete with unbridled discretion by the government, coupled with a rule which suffers from pervasive vagueness.

## A. THE GOVERNMENT HAS UNBRIDLED DISCRETION.

The briefs and discovery materials in this action reveal that the actions of Appellants regarding Rule 8.4(g) are highly unpredictable and ever-changing, thereby giving defendants unilateral, unquestionable, unchallengeable, and unbridled discretion to interpret the Rule and to censor Appellee's viewpoint and content-based speech.

For example:

- Mr. Farrell admitted that he has unbridled discretion to pursue action against Appellee pursuant to the Rule.
- The State Supreme Court made minor changes to the Rule which did not change the Rule from interpretive or constitutional angles, but Appellants nevertheless leapt upon the changes to urge a different application of the Rule.
- The minor changes in the Rule were made without proper due process notice to the Attorneys or to the People of the Commonwealth.
- The minor changes in the Rule were made without a proper due process comment period for the Attorneys or for the People of the Commonwealth.
- The minor changes made to the Rule by the State Supreme Court indicate the evasive and ever-changing nature of the Rule, and that it can be changed without even a scintilla of procedural due process. For example, Appellants have provided no material to indicate who initiated the process of modification of the

Rule, how and when the process took place, who was present at the discussion, what the discussion consisted of, or who voted in favor of modification or against modification. Lack of these basic components of procedural due process concerning the Rule indicate that it suffers from an ongoing process of unilateral, and unbridled governmental discretion.

- There is nothing to stop the State Supreme Court from unilaterally changing the Rule many times in the future. For example, the State Supreme Court could add five or ten more censored content areas to the already robust and confusing list of censored content areas.
- Appellants admitted that they cannot provide guidance on how to interpret even a simple potential situation which may arise under the Rule.
- Appellants admitted that they have minimal amounts of concretized guidance or stable materials from which to teach each other how to interpret the Rule. This indicates that they apparently intend to interpret the Rule in a makeshift manner.
- Appellants admitted that they plan to use random and non-disclosed legal materials from random and non-disclosed jurisdictions outside of the Commonwealth of Pennsylvania in order to interpret the Rule.
- Appellants admitted that the rationale supporting the Rule comes from an Illinois-based not-for-profit corporation named the American Bar Association,

yet Appellants do not explain how a random corporate decision of a non-Pennsylvanian corporation can, in a constitutional sense, validate the unconstitutional prior restraint and censorship of the viewpoint and content-based First Amendment free speech and expression of every Attorney in the Commonwealth. Nor have Appellants disavowed seeking further guidance from the Illinois corporation, (said corporation is generally not bound by the laws of the Commonwealth), in Appellants' future implementation of the Rule.

- Appellants are not judges, and thus do not have the power under either the State or Federal Constitutions to interpret constitutional doctrine. Nevertheless, Appellants admitted that they will make legal determinations regarding situations dealing with complex freedom of speech and expression issues.
- Uniquely, the State Supreme Court and the Appellants have set up a system whereby it is almost impossible to challenge the constitutionality of the Rule, because it would be futile to initiate a State-based claim challenging the constitutionality of the Rule when the highest court in the State has already expressly validated the Rule as constitutional from their perspective when they approved and activated the Rule to apply to all Attorneys in the Commonwealth. This awkward situation effectively requires that every Attorney in the Commonwealth must express fealty aforethought to the Rule, because there

exists no reasonable in-state means for an aggrieved Attorney to seek redress for their grievance of suffering under an unconstitutional rule. In other words, the Rule is unchallengeable in the entire court system of the Commonwealth. The entire regulatory system evinces promulgation of rules which are unconstitutional due to the fact that the rules are effectively unquestionable and unchallengeable throughout the entire court system of the Commonwealth.

The above examples of unconstitutional, unilateral, unquestionable, unchallengeable, and unbridled governmental discretion over Appellee's viewpoint and content-based free speech and expression require this court to confer Article III standing under a facial challenge, because when "[r]ecognizing the explicit protection accorded speech and the press in the text of the First Amendment, our cases have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially…" *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 756 (1988).

The rationale supporting the necessity of a facial challenge in this situation is that "[a]t the root of this long line of precedent is the time-tested knowledge that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in

censorship." Id. at 757.

This court must confer standing to Appellee due to the pervasive regime of unfettered discretion wielded by Appellants. The above examples indicate that the combined actions of Appellants give Appellants unlimited and unfettered discretion to interpret and apply the Rule through whim and caprice, and that "these evils engender identifiable risks to free expression that can be effectively alleviated only through a facial challenge… [T]he mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." Id.

## B. THE RULE IS PERVASIVELY VAGUE.

"In our constitutional order, a vague law is no law at all." *US v. Davis*, 139 S. Ct. 2319, 2321 (2019). When a vague rule such as Rule 8.4(g) is promulgated, "the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity…" Id.

The Rule is intrinsically mercurial. Try and pick up a single blob of mercury on the floor. Good luck! The blob will divaricate. The mercury will ramify, generating many new tiny little blobs of mercury. The entire process of picking up the mercury on the floor is highly unpredictable. Likewise, the entire licensing framework connected with

Rule 8.4(g) and its potential application in the Commonwealth is highly unpredictable, and therefore pervasively vague.

Much has been written about the pervasive vagueness of the terms harassment, discrimination and bias. Therefore, this short amicus will not add to that discussion.

However, little has been written on the fact that the censored content areas themselves are intrinsically vague. The Rule currently consists of eleven to twelve censored content areas, including gender. Today, if you were to ask ten people to discuss what gender means, you could receive ten different responses. For example, gender is considered by some people as a fluid, ever-changing concept which is incapable of solid description. Yet, Appellants desire to hold Appellee accountable to the censored concept area of gender, even though modernly gender is considered by many to be an ever-changing concept which cannot be suitably captured by definition except through each individual person's own self-definition in real-time. This is why, for instance, some emails include preferred pronouns – because many people consider that each individual – and only that individual person -- is capable of delineating their gender in any amount of concretized detail. Yet, Appellants include gender as a censored concept area, irrespective of its current massively mercurial definitional context, which directly invites a huge amount of ambiguity and vagueness into any analysis of a situation regarding gender under the Rule.

Additionally, consider for a moment multiplying the incredibly vague censored content area of gender by each and every single one of the other ten to eleven vague censored content areas, and you are left with a grand multitude of permutations and perspectives which boggles and befuddles the reasonably intelligent mind. In short, it is well nigh impossible to extract or understand what any of the censored content areas actually entail or reference. The copious list of censored content areas each individually exhibit inherent and ever-changing natures, which renders the Rule not just vague, but literally impossible to interpret or apply!

In a constitutional arena, such pervasive and complex ambiguity is called impermissible vagueness which destroys due process protections, and unconstitutionally deprives Appellee of his viewpoint and content-based speech and expression rights by chilling his speech and expression, thus rendering the Rule void for vagueness. And, since the Rule is void for vagueness, the Rule itself is unenforceable *ab initio* (from its inception).

Furthermore, the complaint process itself consists of a hair-trigger process which activates the considerable punitive machinery of the State directly against the viewpoint and content-based speech of an Attorney upon the simple filing of a random person, without any pre-qualification due process procedures which would weed out frivolous complaints based upon fraud or malicious intent.

In total, the Rule itself, its unilateral approval and activation by the State Supreme Court, its random and unregulated modification without due process, its impossibly vague language, its pervasively mercurial interpretation, its reliance on unnamed sources and jurisdictions for interpretation, its massive amount of inherently vague censored content areas, its lack of protection against frivolous complaints, its interpretation by those who are not sanctioned under the Constitution to provide intricate analysis of First Amendment Rights, and more, render the Rule void for vagueness.

Appellants' unbridled discretion in implementation of the Rule, coupled with the Rule's pervasive vagueness, operate in tandem to exert a massive chilling effect upon Appellee's viewpoint and content-based speech and expression.

Appellee suffered a concretized unconstitutional chilling of his viewpoint and content-based speech and expression when the Pennsylvania Judiciary approved of and activated the Rule. The Rule's chilling effect on Appellee's speech and expression directly confers Article III standing upon Appellee in this action under a facial challenge to the Rule. The Rule itself is void *ab initio*, and is effectively and legally no rule at all.

Since the Rule is no rule at all, the Rule does not, in fact, exist. Appellee cannot be held to a pre-enforcement requirement in order to establish standing for a Rule which does not exist. The Rule's activation by the Commonwealth, and the immediate and resultant chilling of Appellee's speech and expression, constitutes the constitutional

harm. Thus, the activation of the Rule by the Commonwealth is the cognizable and concretized Article III injury in this case. Therefore, standing must be conferred facially due to the Rule's pernicious and irreconcilable unconstitutionality.

## CONCLUSION

This Court should grant panel or en banc rehearing.

s/Lawrence G. Paladin, Jr.
*for Patrick G. Gould*

PATRICK G. GOULD, Esq.
Professor
Handong International Law School
558 Handongro, Heuhae-eup, Buk-gu
Pohang, Gyeongbuk
Republic of Korea
Tel. 82-54-1713-7
Email: gould@handong.edu

*Amicus Curiae*

LAWRENCE G. PALADIN, JR., Esq
Paladin Law Offices, PC
850 Walnut St. #934
McKeesport, PA 15134-0934

Tel. 412/244-0826
Email:lpaladin@PaladinLawOffices.com

*Counsel for Amicus Curiae*

## CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Rule 28.3 of the Rules of the Third Circuit Court of Appeals, undersigned counsel, Lawrence G. Paladin, Jr. does hereby certify that he is a member in good standing of the bar of the Third Circuit Court of Appeals, having been admitted on October 1, 1987.

## CERTIFICATION OF IDENTITY STATEMENT

Undersigned counsel for the *Amicus Curiae* hereby certifies that the electronic submission of the Appellee's Reply Brief and the hard copy paper brief are identical.

## CERTIFICATION OF VIRUS SCAN

Undersigned counsel certifies that a virus program known as Avast One has been run against the final PDF version of this *Amicus Curiae* Brief, and no virus was detected.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing *Amicus Curiae* Brief of Patrick Gould was served on the following individuals via the Court's ECF-Filing System and via U.S. Mail on this the 19th day of September, 2023:

**ADAM E. SCHULMAN**
Hamilton Lincoln Law Institute
Center for Class Action Fairness
1629 K Street NW
Suite 300
Washington, DC 20006
610-457-0856
Email: shuyande24@gmail.com

**MICHAEL DALEY, ESQ.**
SUPREME COURT OF PA
ADMINISTRATIVE OFFICE OF PA COURTS
1515 MARKET ST., STE 1414
PHILADELPHIA, PA 19102
215-560-6300
Email: legaldepartment@pacourts.us

**L. THEODORE HOPPE , JR.**
2 S. ORANGE ST STE 215
SOVEREIGN BANK BLDG
MEDIA, PA 19063
610-497-3579
Email: thoppe@thoppelaw.com

*/s/Lawrence G. Paladin, Jr.*